UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X

UNITED STATES OF AMERICA, : 25-CR-88 (HG)

v. : February 26, 2025

MANSURI MANUCHEKHRI, : Brooklyn, New York

Defendant.

------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: BREON PEACE, ESQ.
U.S. ATTORNEY
BY: ROBERT POLLACK, ESQ.
ANDREW REICH, ESQ.
ASSISTANT U.S. ATTORNEYS
271 Cadman Plaza East
Brooklyn, New York 11201

For the Defendant: JULLIAN HARRIS-CALVIN, ESQ.
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201

Court Transcriber: ARIA SERVICES, INC.
c/o Elizabeth Barron
274 Hovey Road
Milo, ME 04463
Aria@leinen.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK: Case number 25-MJ-64, United States v. Mansuri Manuchekhri.

Counsel, starting with the government, please state your appearances.

MR. POLLACK: Robert Pollack and Andrew Reich for the United States. Good afternoon, your Honor.

THE COURT: Good afternoon.

MS. REICH: Good afternoon.

MS. HARRIS-CALVIN: Good afternoon, your Honor. Jullian Harris-Calvin of Federal Defenders of New York on behalf of Mr. Manuchekhri. I'm joined at counsel table by interpreter Mr. Mamad Shirazi, who will be doing simultaneous interpretation in Taji (ph). Farsi, sorry, in Farsi.

THE COURT: In Farsi.

MS. HARRIS-CALVIN: Yes.

THE CLERK: Also present is Farsi interpreter Mamad Shirazi.

(Interpreter is sworn.)

THE COURT: You're proceeding by complaint, is that correct?

MR. POLLACK: That's correct, your Honor.

THE COURT: If you all would prefer to sit (ui).

Good afternoon, Mr. Manuchekhri.

THE DEFENDANT: Good afternoon, sir.

THE COURT: Do you understand some English?

THE DEFENDANT: I understand some English.

THE COURT: If there's anything I say that you don't understand, feel free to ask me and I'm happy to explain.

THE DEFENDANT: Okay.

THE COURT: I'm going to advise you that you have the right to remain silent. Anything you say here today could be used against you. If you've made statements to the government, you don't have to say anything else. You're sitting next to your lawyer, who has been appointed by the Court to help you. Everything you say to her is private and confidential. You can consult with her privately at any time if you wish to.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Have you had a chance to read the complaint or have it translated into Farsi for you?

THE DEFENDANT: Yes, I did read it.

THE COURT: And were you able to ask your lawyer questions about it?

THE DEFENDANT: Yes.

THE COURT: Do you understand the charges?

THE DEFENDANT: Yes.

THE COURT: Counsel, are you satisfied that your client understands his rights and the charges against him?

MS. HARRIS-CALVIN: Yes, your Honor.

THE COURT: Does the government have a position on bail?

MR. POLLACK: Your Honor, the government moves for a permanent order of detention for the reasons stated at length in the detention memorandum that was filed earlier this morning and which has been shared with defense counsel. In short, based on the nature and circumstances of the offense, the weight of the evidence, the defendant's history and characteristics, the government's view is that there is no condition or combination of conditions that will reasonably assure his appearance at the trial or the safety of the community.

Naturally, any terrorism offense, an offense for providing materials to foreign terrorist organizations is one that is a presumption -- creates a presumption of detention. In this case, I think that is heightened by the combination with the firearm

offense, the fact that the defendant was not only sending financial support to the tune of tens of thousands of dollars to a foreign terrorist organization but was also engaged in regular firearms training and reporting his readiness to a foreign terrorist organization overseas combined with the immigration offenses here, his efforts to remain in the United States under fraudulent pretenses, all strongly suggest that his presence in the community poses a danger to the community and that he poses a risk of flight if he were to be released. So for all of those reasons, we ask for a permanent order of detention.

THE COURT: Thank you.

Could I hear from the defense?

MS. HARRIS-CALVIN: Yes, your Honor. Without conceding any of the points made by the government, we are going to reserve a bail application at this time so that we can have more time to put together a bail package.

THE COURT: Mr. Manuchekhri, do you understand what your lawyer said?

THE DEFENDANT: Yes, I do understand.

THE COURT: So I understand you're not making a bail application today, so I issue an order of detention. But you have the right to come back to

court at any time to make a bail application.

Do you understand that?

THE DEFENDANT: Yes.

MS. HARRIS-CALVIN: Your Honor --

THE COURT: And preliminary hearing?

MS. HARRIS-CALVIN: I'm sorry, your Honor.

THE COURT: I was going to ask if you wanted a preliminary hearing.

MS. HARRIS-CALVIN: I would like the Court to set a date, yes.

THE CLERK: Preliminary hearing two weeks from today will be March 10th at 11:00. I'm sorry, I got my dates wrong. Make it March 5th at 11:00.

THE COURT: Was there anything else from the defense?

MS. HARRIS-CALVIN: Your Honor, I know that the Court is going to advise the government pursuant to Rule 5 with respect to Brady and Giglio.

THE COURT: Yes.

MS. HARRIS-CALVIN: Obviously, we want to make a generalized demand in addition to the Court's discussion with the government today. We also would like to make a specific demand that we'd like to put on the record right now based on some of the information that we learned from the complaint and the detention

memo. In the complaint, the government speaks to individuals 1 and 2. And with respect to both of those individuals, it seems that they either misunderstood something that Mr. Manuchekhri said or conflated Mr. Manuchekhri’s conduct with other people’s conduct. And we’re grateful that the government did note that in footnotes on page 5 and 6 of the complaint, but I think it also makes it clear that there is some specific information that should be disclosed pursuant to Brady that would allow the defense to understand why the government came to those conclusion.

The evidence that we would like to see in addition to whatever is required under Brady and its progeny should be evidence that speaks to the context or the root of individual 1's misunderstanding, if there are any inconsistent statements, either internally inconsistent or externally inconsistent statements made by individual 1. Also, the same with respect to individual 2 about what other person’s conduct was being conflated with Mr. Manuchekhri’s potential conduct. We would like to know that information and receive the underlying evidence that speaks to that.

THE COURT: Mr. Pollack?

MR. POLLACK: I understand and appreciate

the request. That specificity is helpful when we're doing our own analysis and looking for Brady material and so on. We certainly are aware of and will follow our discovery obligations and we will keep those particular demands in mind as we do so.

THE COURT: Okay.

MS. HARRIS-CALVIN: Thank you.

THE COURT: All right. So I'm going to give the Rule 5(f) warning, which it sounds like you've internalized already. Pursuant to Federal Rule of Criminal Procedure 5(f), I remind the prosecution of its obligation under Brady v. Maryland and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or innocence or punishment, and known to the prosecution. The prosecution must make good-faith efforts to disclose such information to the defense as soon as reasonably possible. I will be entering a written order more fully describing this obligation and the possible consequences of failing to meet it, and I direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands its obligations and will fulfil them?

MR. POLLACK: Yes, we do, your Honor.

THE COURT: Okay, thank you. Anything else from the government?

MR. POLLACK: Not from the government, thank you, Judge.

THE COURT: Defense?

MS. HARRIS-CALVIN: I have one more thing, your Honor.

THE COURT: Okay.

MS. HARRIS-CALVIN: With respect to the conditions at the Metropolitan Detention Center, I do not have a medical request but I do want to note for the record and have it relayed to the MDC that Mr. Manuchekhri is Muslim and therefore can only eat hilal food and be allowed the ability to pray five times a day aligned with his religious beliefs and customs.

THE COURT: Does the government have any --

MR. POLLACK: Of course we have no objection to that, your Honor.

THE COURT: All right. So, Mr. Manuchekhri.

THE DEFENDANT: Yes.

THE COURT: You heard what your lawyer said.

THE DEFENDANT: Yes.

THE COURT: If you are not receiving the meals that you need and the opportunity to pray, contact your lawyer.

THE DEFENDANT: Yes.

THE COURT: And she will bring it to the attention of the Court.

THE DEFENDANT: I understand.

THE COURT: Okay.

MS. HARRIS-CALVIN: Thank you.

THE COURT: All right, thank you.

THE CLERK: Let me clarify. I think I said preliminary hearing on March 5th. It should be March 12th at 11:00.

MR. POLLACK: Thank you, Felix.

MS. HARRIS-CALVIN: Thank you.

THE CLERK: Thank you.

* * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON November 5, 2025