UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

MANSURI MANUCHEKHRI,

      Defendant.
--------------------------------------------------------X

NOTICE OF MOTION
TO DISMISS COUNTS TWO
AND THREE

25-cr-88

PLEASE TAKE NOTICE, that the defendant **Mansuri Manuchekhri**, by his attorneys **Jullian Harris-Calvin** and **Allegra Glashausser**, of the Federal Defenders of New York, and upon the accompanying memorandum of law, will move the Court, before the Honorable Hector Gonzalez, United States District Judge for the Eastern District of New York, for an Order:

1.     Dismissing counts two and three, charges relating to Mr. Manuchekhri possessing guns as a person prohibited from possessing guns under 18 U.S.C. 922(g)(5); and,

2.     Granting such other relief as the Court may deem just and proper.

DATED:        December 15, 2025
                 Brooklyn, NY

                       Jullian Harris-Calvin & Allegra Glashausser
                       Federal Defenders of New York, Inc
                       1 Pierrepont Plaza, 16th Floor
                       Brooklyn, N.Y. 11201
                       (212) 417-8739

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-


MANSURI MANUCHEKHRI,                                      <u>MEMORANDUM OF LAW</u>
          Defendant.                                   25-cr-88
--------------------------------------------------------X




**Memorandum of Law in Support of Motion
to Dismiss Counts Two and Three on Second Amendment Grounds**

Jullian Harris-Calvin
Allegra Glashausser
Federal Defenders of New York
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(212) 417-8739

# Table of Contents

Argument

Immigrants illegally or unlawfully present in the United States are
among "the people," it is presumptively lawful for them to "keep and
bear arms," and Section 922(g)(5) is not consistent with this Nation's
history and tradition of firearm regulation……………………………………………1

I.    People who are unlawfully present are among "the people" protected by the
Second Amendment………………………………………………………………4

II.   Section 922(g)(5) is unconstitutional under *Bruen*…………………………….9

A.    There is no "distinctly similar" historical tradition of disarming people
without lawful immigration status………………………………………..11

B.    There is no "relevantly similar" historical tradition of disarming
immigrants who are in the country unlawfully………………………...14

i.    Oath and allegiance laws and 18 U.S.C. § 922(g)(5) are similar only
in that they are premised on the impermissibly vague notion of
presumptive "untrustworthiness."……………………………..20

Conclusion………………………………………………………………………….23

# Table of Authorities

<u>Cases</u>

*Bridges v. Wixon,*
    326 U.S. 135 (1945)...................................................................................4, 6

*Commonwealth v. Patsone,*
    231 Pa. 46 (1911)........................................................................................13

*Cotzojay v. Holder,*
    725 F.3d 172 (2d Cir. 2013).....................................................................7-8

*District of Columbia v. Heller,*
    554 U.S. 570 (2008).............................................................................Passim

*Dred Scott v. Sanford,*
    60 U.S. 393 (1857).........................................................................................8

*IBP, Inc. v. Alvarez,*
    546 U.S. 21 (2005).........................................................................................6

*INS v. Lopez-Mendoza,*
    468 U.S. 1032 (1984)..................................................................................4, 7

*Kanter v. Barr,*
    919 F.3d 437 (7th Cir. 2019)......................................................................16

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010).......................................................................................1

*Millan-Hernandez v. Barr,*
    965 F.3d 140 (2d Cir. 2020).........................................................................7

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    597 U.S. 1 (2022).................................................................................Passim

*Obergefell v. Hodges,*
    576 U.S. 644 (2015).....................................................................................19

*Patsone v. Pennsylvania,*
    232 U.S. 138 (1914).........................................................................13, 16, 17

*Plyler v. Doe*,
  457 U.S. 202 (1982)........................................................................................5, 8

*Ragbir v. Homan*,
  923 F.3d 53 (2d Cir. 2019).........................................................................6

*Rodriguez v. Barr*,
  943 F.3d 134 (2d Cir. 2019).......................................................................7

*Turkmen v. Hasty*,
  789 F.3d 218 (2d Cir. 2015).......................................................................7

*United States v. Bass*,
  404 U.S. 336 (1971)................................................................................21

*United States v. Carbajal-Flores*,
  143 F.4th 877 (7th Cir. 2025)..........................................................Passim

*United States v. Jimenez*,
  895 F.3d 228 (2d Cir. 2018).......................................................................5

*United States v. Meza-Rodriguez*,
  798 F.3d 664, 672 (7th Cir. 2015)……………………......................8, 9, 11

*United States v. Perez*,
  6 F.4th 448 (2d Cir. 2021).....................................................................2, 5

*United States v. Pierret-Mercedes*,
  731 F. Supp. 3d 284 (D.P.R. 2024).........................................................14

*United States v. Portillo-Munoz*,
  643 F.3d 437 (5th Cir. 2011) .....................................................................8

*United States v. Rahimi*,
  602 U.S. 680 (2024)........................................................................Passim

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990)...............................................................................3, 5

*Wong Wing v. United States*,
  163 U.S. 228 (1896)..................................................................................4

*Yick Wo v. Hopkins*,
  118 U.S. 356 (1886)..................................................................................4

*Zherka v. Bondi*,
  140 F.4th 68 (2d Cir. 2025)....................................................................................................2

<u>Statutes</u>

18 U.S.C. 922(g)…..................................................................................................Passim

18 U.S.C. § 924(a)(8)............................................................................................................12

<u>Other Authorities</u>

Robert H. Churchill, "Gun Regulation, the Police Power, and the Right to
Keep Arms in Early America: The Legal Context of the Second
Amendment,"
  25 L. & Hist. Rev. 139, 158 (2007)…………………………………………………16, 17

Jonathan Elliot, The Debates in the Several State Conventions on the Adoption of the
Federal Constitution 556 (2d ed. 1836) …………………………………………..7

Abby Vorhees, "The Constitutionality of Barring Undocumented
Immigrants from Second Amendment Protections,"
  73 Am. U. L. Rev. 929 (2024) ………………………………………………….. 19

Michael J. Wishnie, "Immigrants and the Right to Petition,"
  78 N.Y.U. L. Rev. 667, 680–711 (2003) …………………………………………...7

Mansuri Manuchekhri was charged with violating 18 U.S.C. 922(g)(5), which prohibits immigrants who do not have lawful status in the United States from possessing guns, and conspiring with others to violate Section 922(g)(5). Whether 922(g)(5) is constitutional after *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) is an open question in this Circuit and counsel is aware of no courts in our district that have ruled on this issue thus far, although this issue is pending in the SDNY in *United States v. Gordon*, 25-cr-364.

For the reasons set forth below, the Court should grant this motion to dismiss both gun counts, counts two and three of Mr. Manuchekhri's indictment, as unconstitutional.

## Argument

**Immigrants illegally or unlawfully present in the United States are among "the people," it is presumptively lawful for them to "keep and bear arms," and Section 922(g)(5) is not consistent with this Nation's history and tradition of firearm regulation.**

The Second Amendment protects against infringement of "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Supreme Court has long recognized that this Amendment protects an individual's fundamental right to possess guns at home for self-defense. *See District of Columbia v. Heller*, 554 U.S. 570, 580 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 767-68 (2010) (plurality opinion). In *Bruen*, 597 U.S. at 9, the Court confirmed that the Second Amendment also protects the "right to carry handguns publicly," and articulated a new test for determining

1

when governmental infringement on this right is constitutional. Per the Court, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17.

*Bruen* held that, to show that a law infringing on the Second Amendment right is constitutional, the government "must demonstrate" that the law "is consistent with this Nation's historical tradition of firearm regulation." *Id.* The burden is squarely on the government: it must "affirmatively" prove that a challenged law is supported by "historical precedent" that "evinces a comparable tradition of regulation." *Id.* at 19, 27; *see also United States v. Rahimi*, 602 U.S. 680, 692, 701 (2024) (the new law must be "relevantly similar" to "laws that our tradition is understood to permit"). A court itself is "not obliged to sift the historical materials for evidence . . . . That is [the government's] burden." *Bruen*, 597 U.S. at 60; *see also id.* at 25 n.6 ("Courts are thus entitled to decide a case based on the historical record compiled by the parties.").

The Second Circuit Court of Appeals has yet to address the constitutionality of Section 922(g)(5) following *Bruen*. There is no question that *Bruen* abrogated *United States v. Perez*, 6 F.4th 448 (2d Cir. 2021), where the Court of Appeals employed "means-end scrutiny" to uphold § 922(g)(5) in the face of a Second Amendment challenge. *Bruen*, 597 U.S. at 19 ("Despite the popularity of this two-step approach, it is one step too many."); *see Perez*, 6 F.4th at 453-456 (applying intermediate scrutiny in rejecting a Section 922(g)(5) challenge). *Zherka v. Bondi*, 140 F.4th 68, 74 (2d Cir. 2025) – which upheld disarmament of people convicted of felonies under Section 922(g)(1)

2

against a *Bruen* challenge – does not apply here. Nor does *United States v. Rahimi*, where the Supreme Court upheld Section 922(g)(8), which prohibits gun possession by individuals subject to a domestic violence restraining order. 602 U.S. 680 (2024).

Applying *Bruen's* framework, this case is "straightforward." 597 U.S. at 26. Like the First, Fourth, Ninth, and Tenth Amendments, the plain text of the Second Amendment protects Mr. Mauchekhri because he is among "the people." *Heller*, 554 U.S. at 580 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990)). The Second Amendment also protects Mr. Mauchekhri's alleged conduct in shooting guns at shooting ranges because the amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582.

Because the Second Amendment applies here, Section 922(g)(5) is presumptively unconstitutional. *Bruen*, 597 U.S. at 18. To defeat this presumption, the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right." *Id.* at 19. While the government need not find a "historical twin," it bears the burden of showing that its regulation is "analogous enough to pass constitutional muster." *Id.* at 30.

It cannot do so here.

3

I.    <u>People who are unlawfully present are among "the people" protected by the Second Amendment.</u>

The term "the people" as it is used in the Bill of Rights encompasses those unlawfully in the United States. The Second Amendment's text excludes no one from "the people." *See Heller*, 554 U.S. at 580 (explaining that "the people" "unambiguously refers to all members of the political community," explaining that it "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."). That result is consistent with the Supreme Court repeatedly holding that the Bill of Rights applies to people who are unlawfully present in the United States. *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (noncitizens have First Amendment rights); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1046 (1984) (noncitizens have Fourth Amendment rights); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("all persons within the territory of the United States are entitled to the protection" of the Fifth and Sixth Amendments); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) (noncitizens are protected under the Fourteenth Amendment). Because none of these amendments distinguishes between citizens, non-citizen residents, or those lacking lawful immigration status, it would be inappropriate to adopt a limiting construction to a provision of the Constitution where none is admitted. *See Bruen*, 597 U.S. at 18 (noting the Second Amendment's "unqualified command"). People without formal status are therefore among "the people" protected by the Second Amendment.

4

Moreover, the Court of Appeals for the Second Circuit has twice explained that immigrants are among "the people" for purposes of the Second Amendment. *Perez*, 6 F.4th at 451–52 (affirming that *Jimenez* properly "concluded that, '[a]lthough the [*Heller*] Court uses "citizens," presumably at least some non-citizens are covered by the Second Amendment'"); *United States v. Jimenez*, 895 F.3d 228, 233 n.1 (2d Cir. 2018) (construing *Heller*, 554 U.S. at 580, and *Verdugo-Urquidez*, 494 U.S. at 265, to find: "It would seem, then, that at least members of the 'national community' or those with a 'sufficient connection' with that community are part of the 'people' covered by the Second Amendment.").

As the *Perez* court noted, to draw lines between "the people" and "person" as it is used in different Amendments would "introduce difficult questions into our jurisprudence" considering the latter amendments have "long been recognized" to include unlawful immigrants. *Perez*, 6 F.4th at 452 (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982)). The Second Circuit's "practice in [such] cases has been to assume that a given firearm restriction implicates rights guaranteed by the Second Amendment." *Id.* at 453.

That "the people" includes those residing in the United States without citizenship or other lawful status also follows from the Constitution's text. The term "the people" is broader than "citizens." The Constitution's text shows that when the Framers meant to limit a provision's application to citizens, they did so expressly. *See* U.S. Const. art. I, § 2, cl. 2 (right to hold office in House of Representatives); *id.* art. I,

5

§ 3, cl. 3 (same, Senate); *id.* art. II, § 1, cl. 5 (same, Presidency); *id.* art. IV, § 2, cl. 1 (Privileges and Immunities clause). If the Framers had meant to limit the right to keep and bear arms to citizens, the Second Amendment would use that word. *See also*, 1 William Blackstone, Commentaries on the Laws of England 366 (1765) (considering "such persons as fall under the denomination of the people" to include "aliens and natural-born subjects," but observing, importantly, that the two groups held different sets of rights); *see* 4 Jonathan Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution 556 (2d ed. 1836) (statement of James Madison suggesting that at least some "aliens" are entitled to the "protection and advantage" of the Constitution).

Additionally, "people" should be interpreted consistently throughout the Bill of Rights because identical words used in different parts of the same document are to be construed identically. *See, e.g.*, *IBP, Inc. v. Alvarez,* 546 U.S. 21, 34 (2005). Because "the people" applies to immigrants in the First and Fourth Amendments, it retains that meaning for the Second Amendment. Turning to the First Amendment, "[f]reedom of speech and of press is accorded aliens residing in this country," as is freedom of association and the right to petition. *Bridges*, 326 U.S. at 148; Michael J. Wishnie, "Immigrants and the Right to Petition," 78 N.Y.U. L. Rev. 667, 680–711 (2003) (showing that "the people" was well understood during the Founding Era to include immigrants with respect to the right to petition). *See also Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), vacated on other grounds sub nom. *Pham v. Ragbir,* 141 S. Ct. 227

6

(2020) (Second Circuit held that the unlawfully present, post-final-order noncitizen stated a cognizable First Amendment claim and even noted that his speech "implicate[d] the apex of protection under the First Amendment" because of its political nature).

Similarly, "it is uncontroversial that the Fourth Amendment applies to aliens and citizens alike," including people who do not have lawful immigration status. *Cotzojay v. Holder*, 725 F.3d 172, 181 (2d Cir. 2013) (finding that a Fourth Amendment violation against an unlawfully present noncitizen warranted a suppression hearing). In *I.N.S. v. Lopez-Mendoza*, the Supreme Court addressed two noncitizens illegally in the country who moved for suppression in a civil deportation proceeding under the Fourth Amendment. 468 U.S. 1032, 1034–35 (1984). The Supreme Court did not disturb the lower court's holding that the defendants' Fourth Amendment rights were violated. *Id.* at 1038. The Second Circuit has granted suppression hearings in immigration proceedings for undocumented noncitizens who made an adequate showing of egregious Fourth Amendment violations. *See Cotzojay*, 725 F.3d at 183; *Millan-Hernandez v. Barr*, 965 F.3d 140, 149 (2d Cir. 2020); *Rodriguez v. Barr*, 943 F.3d 134, 143 (2d Cir. 2019). Similarly, this Circuit has held that out-of-status detainees stated a plausible Fourth Amendment claim for unreasonable strip searches in the wake of 9/11 detention policies. *Turkmen v. Hasty*, 789 F.3d 218, 224, 261 (2d Cir. 2015), judgment rev'd in part, vacated in part on other grounds, sub nom. *Ziglar v. Abbasi*, 582 U.S. 120 (2017). The noncitizens with Fourth Amendment rights in

*Cotzojay*, *Millan-Hernandez*, and *Turkmen* all lived in the United States, just like Mr. Mauchekhri, who has resided in the United States since 2016.

*Plyler v. Doe* further confirms that the Second Amendment applies to immigrants regardless of their immigration status. 457 U.S. 202 (1982). There, the Supreme Court held that unauthorized immigrants are "persons" within the meaning of the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments: "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Id.* at 210. If unauthorized immigrants are constitutional "persons," as *Plyler* held, they can be part of the constitutional "people" as well. "*Plyler* shows that even unauthorized aliens enjoy certain constitutional rights, and so unauthorized status (reflected in the lack of documentation) cannot support a per se exclusion from 'the people' protected by the Bill of Rights." *United States v. Meza-Rodriguez*, 798 F.3d 664, 672 (7th Cir. 2015); *see also United States v. Portillo-Munoz*, 643 F.3d 437, 445 (5th Cir. 2011) (Dennis, J., dissenting) ("It would be strange for the same founders who contemporaneously adopted the First, Second, Fourth, and Fifth Amendments to have intended for the Fifth Amendment to cover a different class of persons than the other three amendments, considering that 'people' is merely the plural of 'person.'").[1]

---

[1] Infamously, it was in *Dred Scott* that the Supreme Court construed "the people" to refer to citizens only. *Dred Scott v. Sanford*, 60 U.S. 393, 404, 417 (1857) (establishing that because "'people of the

The Second Amendment right to bear arms is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780. Instead, it ranks "among the fundamental rights necessary to our system of ordered liberty." *Rahimi*, 602 U.S. at 690. There is therefore "no principled way to carve out the Second Amendment and say that the unauthorized (or maybe all noncitizens) are excluded." *Meza-Rodriguez*, 798 F.3d at 672.

Accordingly, the Second Amendment protects status-less immigrants.

II.    <u>Section 922(g)(5) is unconstitutional under *Bruen*.</u>

Because the Second Amendment's plain text covers Mr. Mauchekhri's alleged possession of guns and ammunition, the Constitution presumptively protects him against enforcement of § 922(g)(5). *Bruen*, 597 U.S. at 24 ("When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."). The burden now shifts to the government to demonstrate that § 922(g)(5) "is consistent with the Nation's historical tradition of firearm regulation." *Id.* The government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. It cannot do so here.

---

United States' and 'citizens' are synonymous terms, and mean the same thing," African Americans could have not been regarded by the States "as included in the word citizens" otherwise "it would give them the full liberty of speech in public and in private…and to keep and carry arms wherever they went."). *Heller* should not be read to resurrect *Dred Scott*.

*Bruen* and *Rahimi* instruct courts on how to analyze whether a regulation is consistent with historical tradition. *Bruen*, 597 U.S. at 26-31, 34-70; *Rahimi*, 602 U.S. at 691-700. First, the government must proffer historical analogues from the time of the Second Amendment's adoption in 1791 and – at least in the context of state laws – its incorporation against the states through the Fourteenth Amendment in 1868. *Bruen*, 597 U.S. at 34. Anything that pre- or post-dates those time periods "may not illuminate the scope of the right." *Id.* Second, the government must show parallel similarity between "[w]hy and how the regulation burdens the right." *Rahimi*, 602 U.S. at 692. That is, a contemporary regulation is permissible only if it "impos[es] similar restrictions for similar reasons." *Id.* The "why" refers to the "societal problem" the statute is meant to target. *See Heller*, 552 U.S. at 631, 634, 636 (handgun violence in urban areas); *Bruen*, 597 U.S. at 27 (same); *Rahimi* 602 U.S. at 698 ("to mitigate demonstrated threats of physical violence"). The "how" refers to the burden imposed by the regulation in its application, either in how the law is applied or what penalties attach. *Heller*, 554 U.S. at 628 ("total[ ] ban [on] handgun possession in the home"); *Bruen*, 597 U.S. at 12–13 (disarmament unless the individual demonstrates "proper cause" to licensing officials); *Rahimi* 602 U.S. at 699 (disarmament following a "judicial determination[ ] of whether a particular defendant likely would threaten or had threatened another with a weapon.").

If there is a "lack of distinctly similar historical regulation addressing th[e] [societal] problem" then this serves as "relevant evidence that the challenged

10

regulation is inconsistent with the Second Amendment." *Id.* Where the "challenged regulation addresses a general societal problem that has persisted since the 18th century" the inquiry will be "straightforward." *Id.* at 26-27. Similarly, "if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* It is not enough for the government to point to isolated regulations that resemble the current-day regulation; it must present evidence of "early American practice" of the analogous regulation. *Id.* at 26 (emphasis added).

There are no "distinctly similar" analogues because immigrant disarmament is a novelty of the 20th century. And there are no "relevantly similar" analogues – why and how § 922(g)(5) burdens individuals are not sufficiently analogous to any Founding-era tradition of disarmament.

A. There is no "distinctly similar" historical tradition of disarming people without lawful immigration status.

"[I]mmigration in the late 18th century was a common phenomenon," *Meza-Rodriguez*, 798 F.3d at 669, but there are no laws from that period disarming unauthorized immigrants. On the contrary, affirmative contemporaneous evidence from the time of the ratification of the Second Amendment demonstrates that immigrants bore arms and served in militias. *See* Exhibit A, Act of April 1794, 1794 S.C. Acts 1, 5 (resolving "a doubt" that had "arisen" concerning whether immigrants could be required to serve in the militia by providing that "all free white aliens or

transient persons, above the age of eighteen and under the age of forty five years, who have resided or hereafter shall or may reside in this state, for the term of six months, shall immediately thereafter be and are hereby declared to be subject and liable to do and perform all patrole and militia duty . . . .”). This is consistent with the colonial practice of requiring all free white men to bear arms for the protection of the colony; those exempted were enumerated and did not include immigrants. *See, e.g.*, Exhibit B, Act of May 8, 1746, 1746 N.J. Laws ch. 84, 302 (requiring that “all the Men that now do, or hereafter shall dwell, within the Districts or Divisions . . . , between the Age of Sixteen and Fifty Years . . . shall be sufficiently armed,” and exempting only “the Gentlemen of His Majesty’s Council, the Representatives of the General Assembly, Ministers of the Gospel, the Civil Officers of the Government, and all Field Officers and Captains, . . . Physicians, Schoolmasters, Millers, Ferrymen, bought white Servants, and Slaves”); Exhibit C, Act of 1733, ch. 2, 1733 Va. Laws 333 (granting the government the authority to “list all Free Male Persons whatsoever, from Twenty One to Sixty Years of Age, within his respective County, to serve in Horse or Foot,” with exclusions on the basis of race but not alienage); Exhibit D, Act of 1672, 1672 Conn. Pub. Acts 49 (requiring that “all Male persons of the age from sixteen years of age, to the age of sixty (except Magistrates, Church officers, allowed Physitians, Chyurgeons, School-masters, Millers, constant Herds-men, and Marriners, who make it their constant business to go to Sea) shall bear Arms, unless they upon just occasion have exemption granted them by the Court[.]”).

12

Meanwhile, research has revealed no law barring resident noncitizens from possessing a firearm before 1909. In that year, Pennsylvania enacted a statue providing:

> It shall be unlawful for any unnaturalized foreign-born resident to hunt for or capture or kill, in this commonwealth, any wild bird or animal, either game or otherwise of any description, excepting in defense of person or property; and to that end, it shall be unlawful for any unnaturalized foreign-born resident within this commonwealth to either own or be possessed of a shotgun or rifle of any make.

> *Commonwealth v. Patsone*, 231 Pa. 46, 48 (1911) (quoting Pa. Act of May 8, 1909 (P.L. 466 § 1)).

Even still, in upholding the statute against a Fourteenth Amendment challenge, the Supreme Court observed that "[t]he possession of rifles and shotguns" is not necessary except for hunting and that Pennsylvania's "prohibition does not extend to weapons such as pistols that may be supposed to be needed occasionally for self-defense." *Patsone v. Pennsylvania*, 232 U.S. 138, 143 (1914).

State statutes barring all immigrants or unauthorized immigrants from possessing handguns came only later with the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351, Title VII, § 1201, 82 Stat. 236. These 20th century regulations are far too late to provide insight into the meaning of the Second Amendment. *See Bruen*, 597 U.S. at 66 & n.28 (striking down New York's 1913 licensing scheme, noting that "late-19th-century evidence cannot provide much

insight," and refusing to even address "any of the 20th-century historical evidence brought to bear by respondents or their amici").

B. There is no "relevantly similar" historical tradition of disarming immigrants who are in the country unlawfully.

The government can point to no relevantly similar historical tradition of disarmament to § 922(g)(5). The government will likely argue that § 922(g)(5) aims to disarm individuals "outside the political community," and attempt to pass this nation's historical tradition of oath and allegiance laws as relevantly analogous. *See e.g., United States v. Pierret-Mercedes*, 731 F. Supp. 3d 284, 306–309 (D.P.R. 2024); *see* Brief of the United States, *United States v. Balde*, 20 Cr. 281 (KPF) (S.D.N.Y. Sept. 6, 2022), ECF No. 142 at 19-20, 24. However, the allegiance laws did not burden the Second Amendment right or carry § 922(g)(5)'s additional penalty of a lengthy prison term. *See* 18 U.S.C. § 924(a)(8) (authorizing up to 15 years' imprisonment for violations of 18 U.S.C. § 922(g)). Their only similarity is that § 922(g)(5), like those allegiance laws, rests on an unconstitutionally vague premise: that certain groups must be disarmed because they are untrustworthy.

Only the Seventh Circuit has conducted a post-*Bruen* analysis of historical tradition with respect to § 922(g)(5), which should be rejected as flawed. *See United States v. Carbajal-Flores*, 143 F.4th 877 (7th Cir. 2025). Although *Carbajal-Flores* included a historical analysis, the analogues it examined were focused on why certain categories were historically excluded from "the people." 143 F.4th at 882. What the analogues

14

did not show is that categories of rightsholders could be disarmed without any finding of dangerousness or disloyalty, or that they were subject to penalties similar to those imposed by § 922(g)(5).

To start, English laws disarming based on lack of allegiance are, out of the gate, disanalogous – the Second Amendment's entire existence is premised on codifying a pre-existing right that the English monarchy had denied New World residents. *See* Joyce Lee Malcolm, To Keep and Bear Arms: The Origins of an Anglo-American Right 140 (1994) ("The English view carried across the Atlantic, where it was well understood that the right to bear arms 'did not extend to all New World residents.'"). But considering the English tradition in turn, what is evident is that English laws imposed categorical disarmament only on those groups that lacked the pre-existing right to begin with. *See Carbajal-Flores*, 143 F.4th at 883 (contrasting rights of immigrants to those of "natural-born subjects" in the English tradition, where the former of which could have rights conditioned on allegiance to the government) (citations omitted). For example, while Catholic disarmament was linked to allegiance, Catholics never had the right to arms. *See id.* ("The Second Amendment's predecessor, housed in the English Bill of Rights, guaranteed 'the subjects which are Protestants' the right to 'have arms for their defence, suitable to their conditions, and as allowed by law.' 1 W. & M. c. 2, § 7 (1689)."). This tradition at most shows certain groups were understood to not have the right to bear arms to begin with. This is entirely irrelevant for delineating the scope of the Second Amendment. But even if these laws

15

were somehow relevant, the way they burdened the right is disanalogous: individuals could either swear allegiance, *id.* at 884, or have their guns confiscated. *See Kanter v. Barr*, 919 F.3d 437, 457 (7th Cir. 2019) (Barrett J., dissenting).

The same is true of the American tradition, although the history is different. During the colonial period, slaves and Native Americans "faced gun restrictions 'on the ground of alienage or lack of allegiance' to the English sovereign.'"); *Carbajal-Flores*, 143 F.4th at 884-85. Disarmament in the colonies was fundamentally different from English disarmament:

> In considering the transfer of this police power to disarm to the American colonies, it is important to note the absence from the colonial context of both game laws limiting the right of gun ownership and the blanket authority to disarm found in English statutes. What took their place in British North America were laws disarming groups on the basis of race and servitude.

Robert H. Churchill, "Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment," 25 L. & Hist. Rev. 139, 158 (2007).

While these laws were also based on lack of allegiance, *id.* at 157, they are irrelevant because they again applied to non-rightsholders. Instead, the only potentially relevant analogues would come from "the state's police power to disarm Catholics, Quakers, and non-associators, populations of free white men entitled to the presumption of membership in the body politic." *Id.* at 156. But there is little actual tradition of such disarmament ever taking place: "[i]n the one instance in which an

16

American colonial government acted to disarm Catholics, it did so on the basis of allegiance." *See id.* at 157. Other than that, "non-associators" were free white men that could be disarmed, but only if they refused a test of allegiance. *Id.* at 158. Thus, that there was a tradition of disarmament in the colonies of rightsholders is thin, and to the extent it existed, it burdened the right in a manner disanalogous from § 922(g)(5).

After the revolution, disarmament based on allegiance shifted and "the newly minted states began adopting the embedded practice of conditioning the right to bear arms on one's loyalty to the sovereign – now, each respective state." *Carbajal-Flores*, 143 F.4th at 886 (citations omitted). Many states in 1777 passed Test Acts that "required all white men over eighteen to swear an oath declaring allegiance to the commonwealth…promising to do nothing injurious to the freedom and independence of the state. The act prohibited those refusing the test from voting, holding office, serving on juries, suing, and transferring land. It also ordered them disarmed." Churchill, *supra*, at 159. These laws are not relevantly similar to § 922(g)(5) because they served a different purpose and burdened the right in very different ways.

As to their purpose:

> These oath requirements as a prerequisite for firearm possession had nothing to do with noncitizen status, and were focused on disarming U.S. citizens, particularly suspected Loyalists, to prevent a potential armed rebellion or insurrection at the hands of Loyalists or British sympathizers. While [the Test Acts and Section 922(g)(5) were] both types of regulations premised on promoting public safety, the specific rationale for enacting the regulations were not related; oath requirements were meant to suppress potential rebellions by citizens and noncitizens alike.

17

Abby Vorhees, "The Constitutionality of Barring Undocumented Immigrants from Second Amendment Protections," 73 Am. U. L. Rev. 929, 982–83 (2024) (footnotes omitted).

Moreover, the Test Acts also regulated in a different manner from Section 922(g)(5) by addressing the societal problem of "potential subversives" directly and universally, rather than on the basis of a legislative judgment about some subgroup. By contrast, the only status-based disarmament that occurred pre-ratification applied to individuals believed not to be rightsholders. *See Carbajal-Flores*, 143 F.4th at 886 (discussing laws prohibiting gun possession by slaves and Native Americans). This is not relevant historical evidence. Disarmament of those lacking Second Amendment rights does not need to "comport" with the Second Amendment – it has nothing to do with the right to begin with. *Bruen*, 597 U.S. at 68 (2022) ("Absent any evidence explaining why these unprecedented prohibitions on all public carry were understood to comport with the Second Amendment, we fail to see how they inform "the origins and continuing significance of the Amendment.") (quoting *Heller*, 554 U.S. at 614).

The government also cannot point to historical analogues from the post-enactment period (which, in any event, would have less probative value). *Bruen*, 597 U.S. at 35. Again, categorical disarmament during the post-enactment period applied to those understood to lack Second Amendment rights entirely – a step one question under *Bruen*. *Carbajal-Flores*, 143 F.4th at 886 ("The unfortunate practice of disarming slaves and Native Americans survived the Revolutionary War, confirming the

Founders adhered to the tradition of barring groups deemed outside the polity from keeping arms.").

Thus, the only "longstanding" tradition the government will be able to cite to is a tradition of disarming people outside the polity. That tradition is irrelevant to understanding the scope of the Second Amendment right. In other words, the government cannot point to the disparate status or rights of disarmed classes in "prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19, *see Obergefell v. Hodges*, 576 U.S. 644, 671 (2015) ("[T]he approach this Court has used in discussing other fundamental rights, including marriage and intimacy" requires inquiring into "the right to marry in its comprehensive sense, asking if there was a sufficient justification for excluding the relevant class from the right." Thus "Loving did not ask about a 'right to interracial marriage'; Turner did not ask about a 'right of inmates to marry'; and Zablocki did not ask about a 'right of fathers with unpaid child support duties to marry.'"). Similarly, here, any historical tradition of slaves and Native Americans lacking Second Amendment rights at the Founding is irrelevant. The scope of the Second Amendment right cannot be defined by who was entitled to exercise it as opposed to who was not. It is defined by how it was exercised by rightsholders and the historical tradition of how the government could curtail its exercise by rightsholders.

19

Accordingly, Founding- and post-Founding-era oath and allegiance laws are not relevantly similar to § 922(g)(5). Thus, the government cannot carry its "burden to identify an American tradition justifying" the complete abrogation of immigrants' Second Amendment rights under the "text-and-history standard." *Bruen*, 597 U.S. at 38–39.

  i.   Oath and allegiance laws and 18 U.S.C. § 922(g)(5) are similar only in that they are premised on the impermissibly vague notion of presumptive "untrustworthiness."

In pointing to oath and allegiance laws as "relevantly similar" to § 922(g)(5) the government may argue, as it has before, that such laws – like § 922(g)(5) – disarmed individuals based on their presumed "untrustworthiness." *See* Brief of the United States, *United States v. Carbajal-Flores*, 2024 WL 3730335, at *40–41 (7th Cir. July 29, 2024). But unlike dangerousness, untrustworthiness is not a proper justification for a categorical ban on gun possession.

The concept of "untrustworthiness" is unconstitutionally vague. In *Rahimi*, the Supreme Court made clear that for vague justifications, no historical analysis is necessary; disarmament for a vague purpose – in that case, "responsibility" – is never permitted. 602 U.S. at 701 ("we reject the Government's contention that Rahimi may be disarmed simply because he is not 'responsible.' 'Responsible' is a vague term. It is unclear what such a rule would entail.") (citations omitted). And while the government offered varying disarmament justifications to the Court in *Rahimi*, like "demonstrated threats of physical violence," or "present[ing] a special danger of

20

misuse," 602 U.S. at 698, presumed dangerousness or untrustworthiness were not justifications the Court considered to be relevant. *See id.* (noting that the relevant justification for the statute was "to mitigate demonstrated threats of physical violence.").

"Untrustworthy" is as vague as "responsible." And the legislative history of § 922(g)(5) further confirms that the concern with noncitizen armament in 1968 was not presumed dangerousness, but the presumption that those unlawfully present could not be trusted with firearms. Congress prohibited gun possession by those unlawfully present in 1968 as part of a late amendment, "hastily passed, with little discussion, no hearings and no report." *United States v. Bass*, 404 U.S. 336, 344 (1971); Pub. L. 90-351, 82 Stat. 197, 228, 236 (June 19, 1968). Originally the bill was primarily designed for administrative needs of law enforcement. *See* H.R. 5037, H. Rept. 488 at 10 (July 17, 1967). But in the midst of the 1967 Detroit riots, Congress became concerned with guns specifically. On August 3, 1967, Congressman Bingham of New York moved to incorporate an amendment into H.R. 5037 that would add Title VI, which included an early version of Section 922. 113 Cong. Rec. 21224-25. This version had status-based prohibitions targeting people with felony convictions and fugitives, and prohibited only shipping or transporting firearms. *See id.* § 922(e), (f). Before the Senate as S. 917, the Committee on the Judiciary offered a modified version of the bill, including Section 922 as part of a "Concealed Weapons Amendment" intended to function as "bare minimum gun traffic control bill,

21

primarily designed to reduce access to handguns for criminals, juveniles, and fugitives." S. Rept. 90-1097 at 189 (April 29, 1968).

Disarmament of immigrants unlawfully present, however, still wasn't mentioned until May 17, 1968, when Senator Long of Louisiana moved to amend the bill to add a section banning gun possession by a number of groups, including immigrants unlawfully present. 114 Cong. Rec. 13867. With respect to immigrants, all Senator Long offered was, "If he is an alien who is illegally in the United States, he should not be carrying firearms. He is one who should not be trusted to carry firearms." *Id.* Senator Long then confessed that the amendment took so long to reach the Senate floor because "[t]he Department of Justice sent a letter to the Committee on the Judiciary…indicating that they had a constitutional doubt that the Federal Government could outlaw the mere possession of weapons." *Id.* While the bill moved through Congress, the justification for immigrant disarmament was never elaborated further, and the initial justification of presumed untrustworthiness was never disturbed. At no point during the bill's consideration did any congressperson or congressional report suggest that disarming status-less immigrants was justified because of their presumed dangerousness.

Thus, the justification for § 922(g)(5) is presumed untrustworthiness of immigrants. Because the only justification for disarmament under § 922(g)(5) is vague, it is facially unconstitutional. *Rahimi*, 602 U.S. at 701.

22

**Conclusion**

The Court should grant this motion and dismiss counts two and three of the indictment because the conduct alleged in those counts – Mr. Mauchekhri's possession of guns and ammunition – was protected by the Second Amendment as construed in *Bruen* and *Rahimi*.

December 15, 2025
Brooklyn, New York

Jullian Harris-Calvin
Allegra Glashausser
Federal Defenders of New York
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(212) 417-8739

# EXHIBIT A

# A C T S

*John* AND *Mason* 

# R E S O L U T I O N S

### OF THE

## GENERAL ASSEMBLY,

### OF THE STATE OF

## SOUTH-CAROLINA,

*PASSED IN APRIL, 1794.*

---

## ANIMIS OPIBUS QUE PARATI.

---

**CHARLESTON:**

Printed by **TIMOTHY & MASON,** Printers to the State, No. 44 Bay.

M,DCC,XCIV.

# A N   A C T

## To Organize the Militia throughout the State of South-Carolina, in conformity with the act of Congress.

WHEREAS it is necessary to organize the militia of this state in conformity with the act of congress, in that case made and provided: Be it therefore enacted by the honourable the senate and house of representatives now met and sitting in general assembly, and by the authority of the same, that from and immediately after the passing of this act, the whole of this state shall be divided into two divisions, and to each division there shall be a major general, one of which divisions shall comprehend the districts of Charleston, Georgetown, Beaufort, Cheraw, Camden and Orangeburgh, except the Dutch Fork between Saluda and Broad rivers; and the other shall comprehend all the while the districts of Ninety-Six, including the Dutch Fork between Saluda and Broad rivers, Washington and Pinckney; and in the first division there shall be five brigades, one for Charleston district, except Colleton county regiment; one for Beaufort, and Orangeburgh, including Colleton county regiment; one for Georgetown, one for Cheraws, and one for Camden district; in the second division there shall be four brigades, one for Abbeville and Edgefield counties; one for Laurens and Newbury counties, including the Dutch Fork; one for Washington district, and one for Pinckney district; and that as soon as the governor or commander in chief of this state shall be informed of the organization and arrangement of the militia regiments of this state agreeable to the provisions made by this act, he be and is hereby authorised and required to issue his proclamation notifying the same, from and immediately after which the militia commissions of all such persons as shall not be re-elected and confirmed in their brigade grade now may hold under the laws of this state, shall be vacated; but that every person who shall be re-elected and confirmed in such commission as he holds in the militia of this state, shall retain such commission and take rank from the date thereof.

<span style="float:right">Preamble.</span>

<span style="float:right">The state divided into divisions, to each of which a major general</span>

<span style="float:right">Five brigades in the first.</span>

<span style="float:right">Four in the second.</span>

<span style="float:right">Commissions vacated. Officers re-elected retain their commissions.</span>

And be it further enacted by the authority aforesaid, that the legislature on the first organization of the militia of this state, under this act, shall choose by ballot the major generals, brigadier generals, and adjutant general; which adjutant general shall be of the rank of lieutenant colonel.

<span style="float:right">Major generals &c. chosen by ballot.</span>

And be it further enacted by the authority aforesaid, that as soon as the several brigadier generals are notified by the governour of their election, they shall proceed to divide their respective brigades into regiments, and that after they have made such division, they shall appoint five fit and proper persons in each regiment, whose duty it shall be to divide the respective regiments into battalions and companies, as nearly as conveniently may be, conformably to the act of congress.

<span style="float:right">Brigades subdivided.</span>

And be it further enacted by the authority aforesaid, that as soon as the respective regiments, battalions and companies are marked off and designated, the brigadier general of each district respectively, shall direct a regimental muster, as well of those mentioned to do duty in time of alarm as at a common muster, to be held (giving at least fifteen days notice thereto) at the most central part of the regimental district, for the election of a lieutenant colonel and two majors, and shall appoint proper persons to open and hold a poll from the hours of nine o'clock in the morning to five o'clock in the afternoon, for the election of the said officers respectively, and that the persons having the greatest number of votes for lieutenant colonel, shall be commissioned as lieutenant colonel, and the persons having the greater number of votes as majors shall be commissioned as majors of the respective regiments and battalions; and that the said brigadier general shall appoint proper persons in each company, who shall within five days after the said election of field officers hold an election for a captain, lieutenant and ensign in each company, in manner aforesaid; and the person having the greatest number of votes in each company shall be commissioned as officers thereof, or retain their former commission, as the case may be, according to the grade to which they shall be severally elected. Provided always nevertheless, that wherever there shall be any company of artillery, cavalry or infantry associated un-formed and in uniform, which on the 20th day of June next shall contain a full sixty effective rank and file, it shall be lawful for such company to meet and vote for their officers, and the persons duly elected by a majority of voices, shall retain their commissions, or be commissioned by the governour, as the case may be, to such grade as they shall be respectively elected to. And that all other officers of the Charleston regiment as well field as battalion officers shall be elected by the regiment at large, and no person shall be considered as elected, who shall not have a majority of the votes of the persons voting: Provided also, that the men composing the uniformed companies shall not be entitled to vote for the captains lieutenants and ensigns of the other companies, to be elected by virtue of this act.

<span style="float:right">Regimental musters directed to be held central part of regimental district and a colonel and majors.</span>

<span style="float:right">Commissions in each. Company to hold election for a captain of the company of &c.</span>

<span style="float:right">Uniformed corps if sixty in number to elect their officers.</span>

And be it further enacted by the authority aforesaid, that in case of any contested election, the validity of the same, (in the election of field officers) shall be referred to the brigadier general of the brigade, who shall call to his assistance two field officers of some other regiments of his brigade, not interested in the event of the dispute. And in the election of captains, lieutenants and ensigns, shall be referred to the field officers of the regiment to which they belong; and all elections of officers made in pursuance of this act, shall be returned on oath by the managers to the governor.

<span style="float:right">Contested elections to be referred to the brigadier &c.</span>

And be it further enacted by the authority aforesaid, that if any person who shall be elected a brigadier general by virtue of this act, shall be without the limits of this state, it shall be the duty of the major general of the division to do and perform the duties enjoined on the said brigadier general, and in case of his sickness or inability to attend it shall be lawful for the governour or commander in chief for the time being to commission under his hand and seal, some fit and proper persons to execute the duties imposed by this act, so far as regards the division of the brigades and election

[ 2 ]

reside within
their commands.
their commissions shall be vacated : Provided, that the restrictions as to residence shall not extend to the officers of the Charleston regiment or regiments, but that a residence within the city shall be sufficient. That the major generals shall have the right to appoint their respective aids-de-camp, and that the brigadiers shall have the right to appoint their respective aids-de-camp, who shall have the rank of captain, and they shall also have the right to appoint their respective brigade inspectors, who shall be approved of by the major general of the division ; that the regimental staff shall be appointed by the lieutenant colonels respectively, and he approved of by the brigadier ; and that all officers so to be nominated and appointed as aforesaid shall be commissioned by the governour, who shall be authorised to appoint all other officers ; and that in case of vacancy by death, resignation or otherwise, the brigadiers shall rise in their respective divisions, the Lieutenant colonels commandant, in their respective brigades, the majors in their respective regiments, the captains in their respective battalions, and the subalterns in their respective companies by seniority of commission.

General offi
cers to elect
their aids-de-
camp and bri-
gade inspection.

Staff officers
appointed by
the colonels.

And be it further enacted by the authority aforesaid, that each brigade inspector shall receive for his pay fifty pounds per annum, exclusive of the pay he may be entitled to receive when called into actual service.

Pay of brigade
inspectors.

And be it further enacted by the authority aforesaid, that all serjeants and corporals shall be appointed by the captains of the different companies ; and that each and every company created by virtue of this act, shall have a place of rendezvous at which they shall respectively assemble once in every two months, except in Charleston, Georgetown and Camden ; where they shall assemble once a month, by companies, for the purpose of training, disciplining and improving in martial exercise, and shall not be kept at the place of exercise more than one day at a time ; and that each battallion shall be obliged to rendezvous in like manner for the same purpose, not oftener than twice a year, either in battallion or regiment, in such place as the brigadier shall think proper, and shall not be kept at the place of exercise more than one day at a time.

Companies, pla
ces of rendez
vous and times
of muster.

And be it further enacted by the authority aforesaid, that every captain or commanding officer of a company shall also enrol every citizen who shall from time to time arrive at the age of eighteen years, or come to reside within his beat, and witout delay notify such enrolment to such citizen so enrolled by some noncommissioned officer of the company, who shall be a competent witness to prove such notice ; that all disputes that may happen with respect to the age or ability of any person to bear arms, shall be determined by the captain or commanding officer of the company, with a right of appeal by the person who may conceive himself aggrieved, or by any other person belonging to the company, to the lieutenant colonel or commanding officer of the regiment.

Persons to be
enrolled at the
age of 18.

And be it further enacted by the authority aforesaid, that the commander in chief for the time being, may in case of invasion or other emergency when he shall judge it necessary, order out any proportion of the militia of the state. to march to any part thereof, and continue as long as he may think it necessary ; and likewise, may in consequence of an application from the executive of any of the United States, on an invasion, or an apprehension of an invasion of such state, at his discretion order any number of the militia not exceeding one third part thereof to such state : Provided that they be not compelled to continue on duty out of this state more than two months at any one time ; that while in actual service in consequence of being so called out, they shall receive the same pay and rations, and be subject to the same rules and regulations as the troops of the United States of America : Provided, that upon any ... ... ... ... of a militia man, whether officer or private, against the rules and regulations of th... ... army, the cause shall be tried and determined by a court martial of the militia of this sta..., and that it shall be in the power of the governour, or in case of his absence, of the commanding officer of the militia of this state, to mitigate, suspend or pardon any punishment to which any militia man be sentenced by a general court martial.

Marching out
of the state in
cases of eme-
gency.

Pay when in
service.

And be it further enacted by the authority aforesaid, that it shall and may be lawful to and for any majorgeneral, or brigadier general, or commanding officer of a brigade, or lieutenant colonel commandant, or commanding officer of a regiment, when, and as often as any invasion may happen, to order out the militia under their respective commands for the defence of this state, giving notice of such invasion and every circumstance attending the same, as early as possible to their immediate commanding officer, by whom such information shall be transmitted to the governour or commander in chief by express, the expence of which shall be immediately paid : And, that in cases of insurrections, the commanding officer of the regiment or battalion within the limits of which any such insurrection may happen, shall immediately assemble his regiment or battalion under arms, and having transmitted information thereof to the commanding officer of the brigade, and to the major general of the division, and to the governour or commander in chief, shall proceed to take such measures to suppress such insurrection as to any three of the judges or justices of the county or district in which such insurrection shall happen, shall appear most proper and effectual ; and if any person be wounded or disabled while in actual service in opposing any invasion or insurrection, or in suppressing the same, he shall be taken care of and provided for at the public expence without regard to the rank such person may hold.

Calling forth
the militia in
times of invasi
on &c.

And whereas it is proper to ascertain the compensation which shall be allowed to the militia when they may hereafter be called out into actual service by order of the executive authority of this state ; be it further enacted by the authority aforesaid, that in future when the militia of this state, or any part thereof be called out into service within this state, by the authority of the laws thereof each commissioned officer shall be entitled to, and shall receive the same pay and rations as are allowed to the officers of the same rank of the federal army by the laws of the UnitedStates ; that the pay of a serjeant, drum major, and fife major, in lieu of all other demands, shall be eight dollars per month ; and the pay of a corporal, bugler, trumpeter, drummer and fifer, in lieu of all other demands, shall be seven dollars per month ; and the pay of a private, in lieu of all other demands, shall be six dollars and a half per month, besides rations to be provided for in the tax bill of the year in which the service shall be performed.

And be it further enacted by the authority aforefaid, that the brigade infpectors, whenever required by the brigadier general of the brigade, fhall make a return of the militia of the brigade to which he belongs to the faid brigadier general, and the brigadier general fhall whenever required by the major general of the divifion to which he belongs, make a return of the militia of their refpective brigades, to the faid major general; and the major generals fhall, whenever required by the governour or commander in chief, make a return of the militia of their refpective divifions to the faid governour or commander in chief.

Returns to be made when required.

And be it further enacted by the authority aforefaid, that every mafter or other perfon who hath the power over, government or command of, any white apprentice or man fervant, fhall at his or their own proper cofts and charges, furnifh and provide every fuch apprentice or man fervant liable to do militia duty, during his fervitude with the arms and accoutrements directed by the aforefaid act of Congrefs; and every mafter or other perfon as aforefaid, fhall conftantly keep fuch arms and accoutrements as aforefaid for every fuch apprentice or fervant, and fhall compel him or them, fo completely armed and accoutred as aforefaid, to attend all mufters, trainings, and exercifes directed by this act; and in cafe fuch apprentice or fervant fhall not appear, or his arms and accoutrements fhall be found deficient, the mafter or other perfon as aforefaid having the government of fuch apprentice or fervant, fhall in default made in any of the premifes be fubject to the fame forfeitures and penalties as are inflicted on other perfons made liable by this act to appear and bear arms at exercifes, mufters and trainings: Provided always, that if any fuch fervant as aforefaid, who fhall be duly furnifhed and provided as is before directed, and fhall be fent to mufter by the mafter or other perfon under whofe government fuch fervant fhall be, fhall of his own accord and contrary to the will and without the confent of the mafter or fuch other perfon as aforefaid neglect to appear at any mufter, training or exercife appointed by this act, the mafter or other perfon under whofe government fuch fervant may be, fhall be liable to the penalties by this act inflicted for the default of fuch fervant; and every fuch fervant fo offending fhall be obliged to ferve his mafter two weeks for every penalty fo paid by his faid mafter or other perfon; and if any perfon fhall embezzle, fell, or make away with the arms fo to be provided for him, he fhall be liable to make his mafter or other perfon under whofe government he may be, full fatisfaction.

White apprentices and male fervants.

And be it further enacted by the authority aforefaid, that no civil officer whatfoever fhall on any pretence, execute any procefs (unlefs for treafon, felony or breach of the peace) on any perfon whatfoever, at any mufter or other time, when fuch perfon fhall be obliged to bear arms in purfuance of the directions of this act, nor in going to, or returning from any mufter or place of rendezvouz, or within twenty four hours after fuch perfon fhall be difcharged, from appearing in the regiment, company or troop, to which he fhall belong, under the penalty of five pounds fterling and the fervice of any fuch procefs fhall be void to all intents and purpofes whatfoever; and all arms and accoutrements which by this act, are required to be provided, alfo the troop horfe of each trooper, duly entered and regiftered with the captain of the troop, fo long as faid trooper fhall continue in the troop, fhall not be liable to be feized, deftrained or taken in execution for any caufe, matter or thing whatfoever. And in cafe any perfon fhall feize, levy or diftrain upon any fuch arms, accoutrements, or horfe, every fuch perfon fhall forfeit the fum of ten pounds fterling, money to be recovered in any court of record in this ftate.

No procefs to be executed on perfons attending mufters.

And be it further enacted by the authority aforefaid, that every lieutenant colonel, who fhall wilfully neglect to turn out at a regimental mufter, fhall be fined in a fum not exceeding ten pounds, and alfo a fum not exceeding five per cent. on the amount of his laft general tax: and that every major who fhall wilfully neglect to turn out at a regimental or battalion mufter, fhall be fined in a fum not exceeding eight pounds, and alfo a fum not exceeding five per cent. on the amount of his laft general tax. That every captain who fhall wilfully neglect to turn out at a regimental or battalion mufter, fhall be fined in a fum not exceeding fix pounds, and alfo a fum not exceeding five per cent. on the amount of his laft general tax. That every fubaltern who fhall wilfully neglect to turn out at a regimental or battalion mufter, fhall be fined in a fum not exceeding four pounds, and alfo a fum not exceeding five per cent. on the amount of his laft general tax; and that every non commiffioned officer and private, who fhall wilfully neglect to turn out at a regimental or battalion mufter, fhall be fined in a fum not exceeding fourteen fhillings, and alfo a fum not exceeding five per cent. on the amount of his laft general tax. That every captain who fhall wilfully neglect to turn out at an ordinary mufter, fhall be fined in any fum not exceeding thirty fhillings, and alfo a fum not exceeding two and one half per cent. on the amount of his laft general tax. That every fubaltern officer who fhall wilfully neglect to turn out at an ordinary mufter, fhall be fined in any fum not exceeding one pound, and alfo a fum not exceeding two and half per cent. on the amount of his laft general tax; and that every non commiffioned officer and private who fhall wilfully neglect to turn out at an ordinary mufter, fhall be fined in any fum not exceeding feven fhillings, and alfo a fum not exceeding two and one half per cent. on the amount of his laft general tax.

Fines.

And be it enacted by the authority aforefaid, that every non commiffioned officer and private who fhall neglect or refufe to obey the order of his fuperior officer, while under arms, fhall forfeit a fum not exceeding one pound for every fuch offence; and if any fuch non commiffioned officer or private enrolled to ferve in either of the companies of artillery, infantry or cavalry, fhall refufe or neglect to perform fuch military duty or exercife as he fhall be required to perform, or fhall depart from his colours or guard, without the permiffion of his fuperior officer as aforefaid, he fhall forfeit a fum not exceeding one pound, and for the non payment thereof, the offender fhall be committed by warrant from the captain or commanding officer of the troop or company then prefent, to which fuch offender doth belong, or under whofe command he may be, to the next gaol, there to be confined until the fines as aforefaid, together with the gaolers fees, are paid; and the refpective fheriffs of the city, and refpective diftricts and counties of this ftate are hereby empowered and required to receive the body or bodies of fuch offender or offenders as fhall be brought to them by virtue of a warrant or warrants under the hand and feal of fuch officer as aforefaid, and him or them to keep in fafe cuftody until fuch fines as

Fines.

are mentioned in such warrant, together with the gaoler's fees as aforesaid, shall be paid, and the sheriffs and gaolers respectively shall be allowed the same fees as are allowed in other cases: Provided always, that the persons so confined, shall at the end of five days or any shorter time, for which they may have been committed, be released on their swearing that they are unable to pay the fines and fees herein before directed to be paid.

**Uniform.**

And be it further enacted by the authority aforesaid, that the military uniform of this state shall be as follows: that is to say, general officers, dark blue coats with buff coloured facings, linings, collars and cuffs gold epaulets, and yellow buttons with buff coloured under clothes. Regimental officers of infantry dark blue coats with such coloured linings facings, collars cuffs, epaulets and buttons as shall be determined on by the major general of each division.

**Appropriation of fines.**

And be it further enacted by the authority aforesaid, that all fines which shall be imposed in any regiment, corps, company or troop, shall be paid into the hands of the pay master or person acting as such, of such regiment, corps, company or troop and be paid and appropriated by warrant under the hands of a major part of the field officers, or the commanding officer of the corps, or captain or commanding officer of the company or troop, as the case may be, for the purposes of providing colours, drums, bugles, fifes and trumpets for their respective battalions, corps, companies and troops, and carrying expresses relative to military matters, and for the purchasing and providing arms and accoutrements for such of the men of the respective battalions, corps, companies and troops as are or shall be unable to furnish and provide themselves therewith: and that it shall be the duty of the pay master or person acting as such, of each respect ve battalion, corps, company or troop, once in every year, to render an account to the brigadier or the officer commanding the brigade of all his receipts and expenditures in pursuance of this act.

**Arms and accoutrements.**

And be it further enacted by the authority aforesaid, that every free white man of this state liable to bear arms in any of the regiments, corps, companies or troops in this state, who shall appear at any regimental or battalion musters, or at any company muster ordered in pursuance of this act, not provided, accoutred and armed according to the act of congress, entitled "an act more effectually to provide for the national defence by establishing an uniform militia throughout the United States," passed the 24th of October, 1791, shall forfeit and pay for each and every such default a sum not exceeding five shillings, or the sum of two shillings and four pence for each article of arms or accoutrements required by the last mentioned act; that all fines shall be inflicted on non-commissioned officers and privates by the judgement of the majority of the commissioned officers of the company in which the offenders is enrolled; that a major-general shall be tried by a major general to preside, and four brigadier generals; but if the attendance of a major general cannot conveniently be procured, then by five brigadier generals, and in such case the eldest of such brigadiers to preside; that a brigadier general shall be tried by one or more brigadier generals, and by four field officers; that a lieutenant colonel shall be tried by an officer not under the rank of a lieutenant colonel, and four field officers; that a major shall be tried by an officer not under the rank of a field officer, and four officers not under the rank of captain; that a captain shall be tried by an officer not under the rank of a field officer, and by four officers not under the rank of a captain; and a lieutenant or ensign shall be tried by an officer not under the rank of a field officer and four other commissioned officers; that all non-commissioned officers and privates be tried by not less than three commissioned officer. Each member of a court martial is hereby enjoined to take the following oath or affirmation: "**I** do swear (or affirm, as the case may be) that I will not divulge the sentence of the court, until the same shall be approved of or disapproved; neither will I upon any account, or at any time whatsoever, disclose or discover the vote or opinion of any particular member of the court martial, unless required to give evidence thereof by a court of justice in a due course of law. So **HELP ME GOD.**" And any member of the court is authorised to tender the above oath to the other members. The governour or commander in chief shall appoint courts martial on general officers; the major general shall appoint division courts martial in their respective divisions: the brigadier generals, shall appoint brigade courts martial in their respective brigades; the lieutenant colonels shall appoint regimental courts martial in their respective regiments; and the majors, battalion courts martial in their respective battalions; and no sentence of a court martial shall be put in force without the same be approved by the officers appointing the same, or by the commanding officers respectively for the time being.

**Courts of Enquiry.**

And be it further enacted by the authority aforesaid, that if the conduct of any officer shall be represented to the governour or commander in chief, or to either of the major generals of the division, brigadier general of the brigade, or commanding officer of the detachment, to be so unmilitary and unbecoming an officer as to deserve being cashiered, it shall be lawful for the governour or commander in chief, major general of the division, brigadier general of the brigade, or commanding officer of the detachment, as the case may be, to order a court of enquiry; and if on such court of enquiry it shall appear that there is foundation for the charge to have a court martial held, who shall make such order in the business as they shall think consistent with military rule: Provided nevertheless that such court of enquiry shall never consist of less than three officers, one of whom at least to be of the rank of the person accused.

**Persons excused from doing duty.**

And be it further enacted by the authority aforesaid, that persons of the following professions and description shall be excused from militia duty, except in times of invasion or alarm, to wit: the lieutenant governour for the time being, the members of both branches of the legislature and their officers, the judges, commissioners, registers and clerks of the several superior courts of law and equity, and county courts; the commissioners of the treasury and their clerks, the secretary of this state and his deputies, the attorney general, the three circuit solicitors, the surveyor general and his deputy, residing either, in Charleston or Columbia; the ordinaries and registers of the several districts, the sheriffs and gaol keepers in the several counties and districts, all continental officers who were deranged, or who served to the end of the war; all regular clergymen of any sect or denomination, all persons holding any office or commission under the United States, all acting magistrates, all regular

bred practising physicians and surgeons, all school masters, who shall have under their tuition not less than fifteen scholars; all students at school or at college, the intendant and wardens of Charlestown and Camden, their treasurers and the officers of their courts, all branch pilots for the several ports, one white man to each established ferry or toll bridge, one white man to each water grist mill, wind mill, fulling mill or oil mill, three white men to each forge, and five to each furnace erected or to be erected at any iron mine or mines in this state, who shall constantly reside and work at the same; and all persons under the age of eighteen and above the age of forty five years; and all militia officers who have held their commissions for seven years.

Aliens or transient persons above the age of 18 and under 45 liable to do militia duty, immediately after six months residence in the state.

Whereas a doubt has arisen whether aliens and other transient persons who have resided, or may reside in this state, for a considerable length of time, and enjoy the benefit and advantage resulting from the organization of the militia of this state are liable to perform militia duty: And whereas it is but just and reasonable, that those whose property is secured by the care and watchfulness of the community in which they reside, should contribute to its protection: Be it enacted by theauthori aforesaid, that all free white aliens or transient persons, above the age of eighteen and under the age of fortyfive years, who have resided or hereafter shall or may reside in this state, for the term of six months, shall immediately thereafter be and are hereby declared to be subject and liable to do and perform all patrole and militia duty which shall or may be required by the commanding officer of the beat or district in which such alien or transient person shall reside, and be subject and liable to all pains and penalties inflicted by this act; any law, usage or custom to the contrary thereof in any wise notwithstanding: Provided always, that nothing contained in this act shall be construed to extend to or effect in any way or manner the natural born citizen of any state or potentate, who shall be actually engaged in war with the United States or to compel such alien or transient person to serve on patrole or militia duty out of the particular district of the regiment to which he shall or may be attached, nor to natural born and bona fide French citizens (not being citizens of the United States) who are by treaty exempt from all personal service.

That the governor or commander in chief do in case of invasion, insurrection, &c. call out such companies as he may think proper, in order to suppress and repel the same.

And be it further enacted by the authority aforesaid, that if the governor or commander in chief for the time being, receive advice from any person or persons in authority in this state, or other credible person or persons in foreign parts, or if he shall receive any information upon oath, from any credible person or persons within this state, that any foreign enemy or armed force intend suddenly to invade the state, or if any dangerous insurrection or rebellion be actually raised within this state, which cannot be suppressed by one single company, the governour or commander in chief for the time being may raise and assemble such and as many of the divisions, brigades, battalions, regiments, troops and companies by this act directed to be formed, as he shall think sufficient and able to suppress and repel such invasion, rebellion or insurrection as may happen; and for the more effectual execution thereof, he may make and publish, or cause to be made and published an alarm throughout the whole state, by firing six guns, two at a time, at three minutes distance; or by sending orders and expresses to the general officers, field officers and other officers of the militia, to raise their several and respective divisions, brigades, regiments, troops and companies, or such part of them as shall be ordered and directed to march and rendezvous at such proper times and places within the state, as the governour or commander in chief for the time being, shall think fit; and the said alarms shall be carried on throughout the whole state by all the commissioned officers of the militia, by firing three small arms at convenient intervals from place to place, and by speedily raising their several corps, and taking all other proper and effectual measures to give notice of the motion of the enemy, and forwarding with the utmost expedition all necessary information to the governour or commander in chief, and by putting in execution all such orders as they shall receive from their superior officers.

And to cause alarms to be made throughout the state.

And be it further enacted by the authority aforesaid, that on sight of an enemy, or on information of an enemy appearing or mischief done by an enemy, from any white man of credit, who hath seen the same or the credit of which informer the officer to which information is given shall be a judge, an alarm shall be carried on by persons hearing or having knowledge of the same, by firing three small arms distinctly as usual; and the said officer who fired an alarm shall assemble the corps of which he is an officer, by beat of drum, or by ordering them to warn their next neighbours or otherwise till the corps can be got together; and the commanding officer of the said corps, shall with all convenient speed, dispatch two expresses, one to the governour or commander in chief, and the other to the next field officer of the regiment to which the said corps belongs, with an account of the cause of the alarm so made, upon which notice the said field officer shall dispatch two expresses with an account of the same, one to the brigadier of the brigade, and the other to the major-general of the division; the field officer who shall receive the information as aforesaid, shall have power to assemble any number of men of the battalion or regiment as the case may be, to which he belongs, to march to the assistance of any of the inhabitants of the state who are in danger.

On sight or information of an enemy,alarm to be made with small arms.

And be it further enacted by the authority aforesaid, that if any person liable to bear arms shall in time of such alarm neglect or refuse to use his utmost endeavours to convey and communicate the said alarm or notice of the enemy's approach, every such person shall forfeit and pay a sum not exceeding fifty pounds sterling; and in case any such person, after he hath notice of an alarm, does not forthwith repair completely armed and accoutred as aforesaid, with all convenient speed, to the place where the regiment, troop or company to which he shall belong, shall be appointed to rendezvous, every such person shall forfeit a sum not exceeding fifty pounds, sterling money, and in case the company or troop to which such person shall belong, shall actually engage and fight with the enemy before such person shall appear in the said regiment, troop or company, in every such case, the person not appearing as aforesaid, shall forfeit a sum not exceeding forty pounds sterling money.

Any person neglecting or refusing to give information of an enemy's approach to forfeit a sum not exceeding £50.

And be it further enacted by the authority aforesaid, that every commissioned officer in the militia, has power, when occasion shall require, to assemble, arm and raise any number of men belonging to their respective corps; and if need be, to give notice and call to their aid the officers of an

Officers empowered to assemble any number of their corps, to suppress the attempts of an

and men of any adjacent corps, to disperse, suppress, kill, destroy, apprehend, take or subdue any pirate, sea-rover, indian or other enemy, who shall in a hostile manner hurt or attempt to hurt any of the inhabitants of this state in their persons or possessions, or any company of slaves who shall be met together, or who shall be lurking in any suspected place where they may do mischief; or who shall have absented themselves from the service of their owner; and in case any person liable to bear arms shall, on such occasion neglect or refuse to appear, upon notice given by any commissioned officer of the troop or corps to which such person belongs, or appearing shall not attend and obey the said officer, he shall for every such neglect or refusal forfeit the sum of two pounds sterling.

*Cafe of neglect to forfeit £ 2.*

And be it further enacted by the authority aforesaid, that in times of invasion or insurrection, when it shall be found necessary to march the several regiments, troops or companies, or any of them out of their proper parishes, counties or districts, one fourth part at least of every company in this state, shall stay and remain in the respective parishes and divisions to which they belong, and shall be formed into patroles under the command of such officer as the commissioned officers of the companies shall direct and appoint, under whose command respectively, they shall continue until the rest of the company shall return to their habitations, and shall be discharged from bearing arms; and the patrole so formed shall be obliged to be on constant duty, and to ride and patrole and guard the plantations, and keep the slaves within their several parishes and divisions in good order, and shall place proper guards, watches and centinels at proper and convenient places, to give notice of danger, or for the more speedy conveying advice and intelligence to the governour or commander in chief, or any army raised and assembled by his command; and in case any person or persons obliged to serve in such patroles, shall refuse or neglect to ride patrole, or to watch, stand centinel, or to keep guard, or shall refuse to obey the lawful command of any person appointed to command such patrole, every person so offending, shall forfeit any sum not exceeding fifteen pounds sterling money.

*In case of in vasion, &c 4th of every company shall remain in the respective parish or division to which they belong, and be formed into patroles, &c.*

*In case of neglect to forfeit £ 15.*

And be it further enacted by the authority aforesaid, that in times of invasion, rebellion or insurrection when any person shall receive orders to march out of their parish, county, district or division, the captain or other commanding officer who shall be present, shall cause the names of all the persons who are entered, inlisted and enrolled in the muster roll of such company (officers excepted) to be written down on small scrolls of paper, which shall be folded up and put into a hat, and shall be shaken together, and the clerk or serjeant of the said company, shall draw out of the hat the names of so many persons as will not exceed three fourth parts of the said company; and the persons whose names shall be so drawn, shall be obliged to march according to such orders as shall be given by the governour or commander in chief, and the rest whose names shall be left in the hat, shall stay in their respective parishes and divisions, and shall do the duty of the patrol as before directed; but no officer of any company shall be excused from marching with the company for which he is appointed, unless by particular orders from the governour or commander in chief; and in that case such officer so directed to stay shall be commanding officer of that part of the company left for the patrole duty. If any person whose name is drawn as aforesaid, and is thereby obliged to march out of his parish or division can provide an able bodied man (to be approved by the majority of the officers of the company to which such person belongs) completely armed and furnished according to the directions of this act, every such person shall be permitted and at liberty to do, and upon producing and sending out such able bodied man in his stead, he shall be excused from going out or marching in person; but nevertheless he shall be obliged to do patrole duty in his district, and in case of disobedience, neglect or refusal to ride in such patrole he shall be liable to all the pains, penalties and forfeitures inflicted by this act.

*That in order to ascertain those men who shall leave their respective parishes scrolls of paper containing the name of each man shall be folded and shaken together and three fourths drawn out which three fourths shall be obliged to march, &c.*

*No officer shall be excused unless by particular orders &c.*

*Substitute allowed.*

And be it enacted by the authority aforesaid, that in time of alarm, occasioned by any insurrection, rebellion or invasion, all field officers, and captains of every company, are empowered by themselves or their warrants to any inferior officer or soldier, to impress any arms, ammunition, provisions horses, waggons, carts, boats, canoes pettyaugers and vessels, with their furniture or whatever other ring they shall want or have need of for the service of this state: Provided all such things so impressed be by the said officers brought before three or more indifferent persons, being freeholders, to be appraised and valued before they be disposed of for the public service, and such valuation and appraisement being made the officer shall give a receipt for the same it he conveniently can; and the officer is to cause his clerk to enter the same in a book to be kept for that purpose, and the said appraisers shall ascertain any loss or damage that may happen to the things so impressed or allow a competent hire for the same when returned to the owner, as the case shall require, and shall give such appraisement under their hands to the owner, directed to the public treasurers, who are to lay the same before the legislature; and the commanding officer or captain of each company, after such alarm shall be over, and before such company shall be discharged, is to order so many men as he shall think fit to carry the several things by him impressed to the respective owners, who upon re-delivery of the same shall give a receipt. The officer is likewise empowered to draw on the public treasury for so much money as he shall think the carriage of the said several things deserves.

*In case of in surrection &c. field officers can powered to draw warrants to his inferior of ficers or privates to impress all arms &c. &c.*

*Fair appraisements to be made of such things as shall be impressed.*

And be it further enacted by the authority aforesaid, that the commanding officer or commander of each company, shall lodge in some convenient and secure place for the public use, all the provisions and ammunition impressed by him, or by virtue of his warrant, that shall remain unexpended after an alarm, and must keep a particular account thereof.

*To lodge in some convenient place and keep a particular account thereof.*

And be it further enacted by the authority aforesaid, that all free negroes and indians (nations of indians in amity with the state excepted) moors mulattoes and mustizoes, between the ages of eighteen and forty five, shall be obliged to serve in the said militia as fatigue men and pioneers in the several regimental beats in which they reside; and upon neglect or refusal to attend when summoned on duty, they and every one of them shall be liable to the like penalties and forfeitures as privates in the same regiment or company are made liable to by law.

*Free negroes indians, moors, mulattoes and mustizoes, liable to duty as fatigue men & pioneers.*

And be it further enacted by the authority aforesaid, that the officers and privates in any company of artillery, infantry or cavalry, raised and uniformed in any militia regiment of this state, by permission

militia of his excellency the governour, or any lieutenant colonel or commanding officer of any regiment, or to be hereafter raised, shall be respectively liable to all the fines and forfeitures imposed by law on the officers or privates in any regimental or company beat; and that when any person now actually enrolled, or that hereafter shall be enrolled in any such company, shall be desirous to quit the same, he shall be obliged to give at least thirty days notice of such intention, and shall be obliged also to enrol himself in the company beat in which he resides or in some other company of the artillery, infantry or cavalry of the regiment to which he belongs, and produce a certificate thereof from the captain or officer commanding such beat or company, before he shall be permitted to leave the uniform company or corps to which he belonged, or be excused from duty therein.

And whereas the safety of the city of Charleston requires the calling forth at certain times and seasons, one or more companies of the militia of the said city: Be it therefore enacted by the authority aforesaid, that it shall and may be lawful for the governour or commander in chief for the time being, or the major general of the division, or brigadier of the brigade in which Charleston is comprehended, or the commanding officer of the Charleston regiment for the time being to call forth when necessary, such and so many companies or detachments of companies to mount guard in the said city, as to them respectively shall appear necessary and proper: Provided, that no guard shall be obliged to continue on duty at any one time, except in cases of actual alarm, more than twenty four hours on one guard; and every person duly summoned to turn out on any such guard, who shall not obey, or who shall leave his guard or otherwise misbehave, shall be liable to pay the same fines and forfeitures as such person would be obliged to pay for default of duty by non attendance or misbehaviour at any battalion or regimental muster by virtue of this act.

And be it further enacted by the authority aforesaid, that every commissioned officer, who at the original organization of the militia agreeable to this act, shall be appointed in pursuance of the same and accepts his commission, shall be furnished at the expence of this state with a copy of this law, the act of congress to provide for the national defence and establish an uniform militia throughout the United States, Baron Steuben's military discipline, and the articles of war, all bound together in a small convenient pocket volume; and that the senior major general, elected in pursuance of this act, is hereby authorised and empowered to contract for procuring the same on the best and cheapest terms.

And be it further enacted by the authority aforesaid, that if any person or persons whosoever shall be sued, impleaded, molested or prosecuted for any matter, cause or thing done, or executed or caused to be done or executed by virtue of or in pursuance of this act, and all and every person or persons who shall act may by the command, or in aid or assistance of any person, who shall do or execute, or cause to be done or executed any matter or thing by virtue of or in pursuance of the direction of this act, shall and may plead the general issue, and give this act and the special matter in evidence; and in case the plaintiff shall suffer a discontinuance, enter a noli prosequi, suffer a nonsuit, or if a verdict or judgement shall pass against him, he shall pay to every defendant that shall be acquitted, or for whom judgement shall pass, his full double costs of suit.

And be it further enacted by the authority aforesaid, that all laws heretofore enacted in this state, respecting the militia, shall be and the same are hereby repealed, except such laws or parts of laws as respect the Charleston battalion of artillery.

*In the senate house, May the tenth, Anno Domini one thousand seven hundred and ninety four, and in the eighteenth year of the independence of the United States of America.*

**DAVID RAMSAY,** *President of the Senate,*

**JACOB READ,** *Speaker of the House of Representatives.*

---

# AN ACT

*To close the land office for and during the term of four years, under certain limitations, and for other purposes therein mentioned.*

WHEREAS a spirit of speculation and land jobbing, hath gone forth and many persons, greedy of gain have embarked in such schemes, and have obtained and still continue to obtain large and excessive grants of land, without any regard to their being granted, and even settled and without distinguishing in the plats the numerous surveys included within the boundaries of their plats and grants, with a view to impose upon, deceive and cheat, unwary foreigners by sales of such pretended vacant lands: And whereas, no plan can be devised so effectually to check and defeat these iniquitous schemes as to shut up the land office, except for grants not exceeding five hundred acres, for a reasonable time:

# EXHIBIT B

An Act paſſed by the General Aſſem-
bly of the Province of *New-Jerſey*
at *Trenton* in 1746, being the Nine-
teenth Year of His Majeſty's Reign.

## C H A P. LXXXIV.

*An* ACT *for better ſettling and regula-
ting the Militia of this* Colony *of* New-
Jerſey, *for the Repelling Invaſions and
Suppreſſing Inſurrections and Rebel-
lions.*

*Sect.* 1. ＷHEREAS the Security of this Colo- Preamble.
ny, and Preſervation of His Majeſty's Go-
vernment over it, greatly depends upon
the Militia being put into ſuch Methods as may make the
ſame moſt uſeful for the Defence thereof, eſpecially at this
G 4                          Time,

Digitized from Best Copy Available

Time, when His Majesty hath a juft War againft both *France* and *Spain* T H E R E F O R E for the better Defence of this Colony, and the Honour of His Majefty.

<span style="float:left">Captains to make Lifts of the Men within their Diftricts &c.</span> BE IT ENACTED by the Governor, Council, and General Affembly, and by the Authority of the fame, That every Captain within this Colony, that already is, or hereafter fhall be appointed, fhall make a true and perfect Lift of all the Men that now do, or hereafter fhall dwell, within the Diftricts or Divifions of which they are or fhall be Captains, between the Age of Sixteen and Fifty Years (except the Gentlemen of His Majefty's Council, the Reprefentatives of the General Affembly, Minifters of the Gofpel, the Civil Officers of the Government, and all Field Officers and Captains, that heretofore have, now do, or hereafter fhall bear fuch Commiffions, Phyficians, Schoolmafters, Millers, Ferrymen, bought white Servants, and Slaves) every one of which fo lifted, fhall be fufficiently armed with one good Musket or Fuzee well fixed, a Sword or Bayonet, a Cartouch-Box or Powder-Horn, three Charges of Powder, and three fizeable Bullets; who fhall appear in the Field fo armed twice a Year, *viz.* The firft *Monday* in *April*, and the fecond *Monday* in *October* (except the County of *Cape-May*, which fhall thus appear the third *Tuefday* in *April*, and the third *Tuefday* in *October*) at the Places appointed by their refpective Captains or fuperior Officers, and continue in Arms but one Day at each Time, befides at other fuch Times when they may be called together by an Order in Writing, under the Hand of the Captain-General, or Commander in Chief for the Time being, at fuch Places within each refpective County as fhall be by him appointed, to be taught the Ufe of their Arms. PROVIDED ALWAYS, That fuch Calling together in Writing, as aforefaid, fhall not exceed once in a Year, and faid Perfons to be kept in Arms but one Day at fuch Time, except in cafe of Alarms.

3. BE IT FURTHER ENACTED by the Authority aforefaid, That every Perfon fo lifted, that doth appear at the Times and Places abovefaid, fhall be, and are hereby fubjected to the Commands of their proper <span style="float:left">Difobedience to Officers how punifhed.</span> Officers; and upon Difobedience it fhall and may be lawful for the Captain or Commanding Officer to fine faid Offender or Offenders, any Sum not lefs than *One Shilling*, nor above *Ten Shillings*; and in Cafe of Delay or Refufal to

pay

pay such Fine or Fines, then the said Captain, or Commanding-Officer, may make out his Warrant to one of his Serjeants or Corporals, commanding him to take to his Assistance one or more of the Soldiers under his Command, if Occasion should require, and take the Body of the said Offender or Offenders, and deliver him or them to the Gaoler of the said County, who is hereby required and commanded to take the said Offender or Offenders into his Custody, and keep him or them in close Gaol for such Time as shall be expressed in the Captain's Warrant, not exceeding three Days; and at the Expiration of said Time, or on Payment of the said Fine or Fines, then the said Offender or Offenders to be discharged, paying to the Gaoler *One Shilling* for his Fees, and no more.

4. AND BE IT FURTHER ENACTED by the Authority aforesaid, That no Officer shall beat or abuse any of the Soldiers whilst under Arms, on any such Days of Training as aforesaid: But if any Soldier shall during that Time use any reproachful or abusive Language towards any of his superior Officers, or shall quarrel himself, or promote any Quarrel amongst his Fellow-Soldiers, or appear in Arms disguised in Liquor, it shall and may be lawful for the Captain or Commanding Officer, to disarm such Soldier at the Head of his Company, and to set a Centinel over him during the Time of the Company's being in Arms, and no longer, or to fine him in Manner and Form aforesaid, as the said Captain or Commanding Officer in his Discretion shall think proper. *Officers and Soldiers to behave well when under Arms.*

5. BE IT FURTHER ENACTED by the Authority aforesaid, That every of the Persons aforesaid, that appears at the Times and Places aforesaid, without the Arms and Ammunition aforesaid, shall forfeit and pay to their respective Captain, or Commanding Officer as followeth, *viz.* For want of a Musket or Fuzee, *Two Shillings*; if not well fixed *One Shilling*; for want of three Charges of Powder, and three sizeable Bullets, *One Shilling*; for want of a Sword or Bayonet, *One Shilling*: Which said Sums of Money, shall be applied by said Captain, to the Purchasing Drums and Colours for his Company. *Penalties on appearing without Arms, &c.*

6. BE IT FURTHER ENACTED by the Authority aforesaid, That it shall and may be lawful for the Captain General, or Commander in Chief for the Time being, in Case of any Invasion, Insurrection, or Rebellion, to call so many of the Persons aforesaid together, for repelling the *Power of the Captain General in Case of Invasion, &c.*

the Force of the said Enemy, or quelling the said Insurrection or Rebellion, or order such Detachments for the common Defence as he shall think fit, to follow and pursue the said Enemy into any of the neighbouring Governments for the Repelling or taking them Prisoners and Preservation of His Majesty's Subjects and Government.

**Power of Captains, &c. in Case of Invasions, &c.** 7. AND BE IT FURTHER ENACTED by the Authority aforesaid, That it shall and may be lawful, and such Captains or other commanding Officers that live near such Places where an Enemy may come, are hereby required and commanded on any Descent or Invasion of an Enemy, or on their Landing, or Danger there of, to call all, or so many of their respective Companies together as shall be thought necessary to expel the said Enemy, and forthwith attack them; or otherwise to do the best that lies in their Power, to distress, stop, and hinder them in their intended Invasion, or Plundering. And said Captains and Commanding Officers are hereby further required and commanded, as soon as possible, to send Notice of such Descent or Invasion, to the Governor or Commander in Chief for the Time being.

**In Time of Invasion, &c. all are subject to Martial Law.** 8. AND BE IT FURTHER ENACTED by the Authority aforesaid, That in Times of any Invasion, Insurrection, Rebellion, or Alarm, as aforesaid, all the Officers and Persons so enlisted, as aforesaid, that shall be commanded to their Arms, by Order of the Captain General, or Commander in Chief, or other Officer or Officers, during the Time or Times of such Invasion, Insurrection, Rebellion, or Alarm, are hereby made Subject to the Pains and Penalties of the Martial Law, so that the Punishment do not extend to the taking of Life or Member.

**Governor may appoint Military Watches, &c.** 9. AND BE IT FURTHER ENACTED by the Authority aforesaid, That when the Governor, or Commander in Chief for the Time being, in Time of Danger shall think fit to direct a Watch to be kept in any Place or Places within this Colony, the Colonel, Lieutenant-Colonel, Major or other commanding Officer in each respective County where such Watch shall be appointed to be kept, to whom such Directions shall be signified, shall issue out his Orders to the several Captains under his Command, to appoint such and so many Men to appear with their Arms, at such Times and Places as such Colonel, or commanding Officer, shall appoint; which Watch so appointed, shall be equally relieved by Order of the commanding

Digitized from Best Copy Available

Case 1:25-cr-00088-HG Document 33 Filed 12/15/25 Page 44 of 63 PageID #: 251

'manding Officer of faid Company, and fo equally through all the Companies of the faid County. And every Perfon or Perfons neglecting or refufing to appear himfelf, or to fend *Penalty on Per-* 'a fufficient Man in his Room, to watch during the Time *to watch when* and at the Place appointed, fhall forfeit the Sum of *Ten appointed.* *Shillings* for each Offence; and every Perfon that fhall leave the faid Watch until he is relieved by fome other Perfon appointed to watch in his Room, fhall forfeit *Forty Shillings*; which Forfeitures fhall be recovered before any Juftice of the Peace of the County where faid Offence or Offences is or are committed, with Cofts of Suit; one Half to the Informer who fhall profecute the fame to Effect, the other Half to be paid to the Captain for the Ufes hereafter mentioned, P R O V I D E D  A L W A Y S, That no Perfon *Time of con-* or Perfons fhall be obliged to continue longer on the Watch *tinuing on the* *Watch, &c* than Twenty four Hours at one Time, any Thing in this Act to the contrary notwithftanding.

10. A N D fuch Watch, upon the Approach of an Ene- *Watch to make* my, or otherwife, fhall make fuch Signals, and give fuch *Signals, &c.* Alarms, as he fhall be directed by the Officer appointing him; and every Officer or Soldier, upon hearing fuch Alarms, and feeing fuch Signals, fhall obey fuch Orders for the repeating the fame or calling together, or marching his Regiment, Troop, or Company, as he fhall receive from his Officer, or Commanding Officer, in fuch Cafe.

11. A N D  B E  I T  F U R T H E R  E N A C T E D by the Authority aforefaid, That if any Perfon be ap- *Penalty on re-* pointed to be Serjeant, Corporal, or Drummer, and fhall *fufing to ferve* refufe faid Office, or neglect or refufe to do any of the *Corporals, &c.* Duties required of them by this Act, he fhall forfeit for each Offence the Sum of *Twenty Shillings*, to be recovered before any Juftice of the Peace within the County where faid Offence or Offences are committed, one Half to the Informer who fhall profecute the fame to Effect, the other Half to be paid to the Captain for the Ufe hereafter mentioned. P R O V I D E D  A L W A Y S that none be appointed Serjeants, Corporals, or Drummers, but fuch as have or fhall appear in Arms as aforefaid. P R O V I D E D A L S O, that no Perfon be fined but once for the Refufal of either of faid Offices.

12. A N D  B E  I T  F U R T H E R  E N A C T E D. *Every Perfon* *entitled to be* by the Authority aforefaid, That every Perfon lifted as a- *always provid-* forefaid, within this Colony, and who hath, or fhall ap- *ed with Arms,* *&c.* pear

Digitized from Best Copy Available

pear in Arms as aforesaid, shall always be provided with one
good sufficient Musket or Fuzee, well fixed, a Cartouch-Box
or Powder-Horn, one Pound of Powder, twenty-four sizeable
Bullets, three Flints, and a Sword or Bayonet in his House
or Place of Abode: And as often as any of the said Persons
shall be deficient in keeping the Arms and Stores afore-
said, he shall forfeit and pay to the Captain of the Com-
pany where such Offence is committed, the Sum of *Four*
Penalty on De- *Shillings* for the Use hereafter appointed. And each re-
faulters. spective Captain within this Colony, is hereby empower-
ed and required to order and appoint their Serjeants to ex-
amine the same once a Year.

13.  A N D  B E  I T  F U R T H E R  E N A C T E D
Penalty on Non by the Authority aforesaid, That every Person so listed
Appearance. that shall not appear at the Times and Places aforesaid,
to be taught the Use of their Arms, shall forfeit and pay
the Sum of *Four Shillings* for each of the said Days Absence
to the Captain of the Company to which they belong, ex-
cept in Cases of Sickness or other reasonable Excuse, to be
allowed by the Captain, or Commanding Officer for the Time
being, of their respective Companies to which they belong.

14.  A N D  if any Person or Persons shall neglect or re-
Forfeitures fuse to pay each of their respective Forfeitures aforesaid,
how to be re- the said Captain, or Commanding Officer, is hereby requi-
covered. red and commanded, to issue out his Warrant to one of his
Serjeants or Corporals, to make Distress upon every such
Defaulter's Goods and Chattels, so neglecting or refusing
to pay as aforesaid.  P R O V I D E D  such Distress be
made in a reasonable Manner, and but once a Year for all
the Defaults committed that Year before the Time of such
Distress ; and shall expose the said Goods to sale by pub-
lick Vendue ; and after Sale thereof, pay the Forfeitures
to the Captains, as aforesaid, and return the Overplus, if
any be, to the Owner thereof, after deducting *One Shilling*
for his Trouble for each Distress, which he is hereby allowed
to take.  P R O V I D E D  A L W A Y S,  That no such
Distress be made on the Arms and Ammunition the Persons
so listed are obliged to provide themselves with by this
Act.

15.  A N D  B E  I T  E N A C T E D  by the Authority
How to be ap- aforesaid, That all the Fines and Forfeitures (except those a-
plied. foresaid for purchasing Drums and Colours) shall be applied by
the Captain, or Commanding Officer of each respective Com-
pany,

Digitized from Best Copy Available

pany, for providing the Arms and Ammunition required by this Act, for such Persons so lifted that shall be adjudged not to be able to provide themselves with the Arms and Ammunition aforesaid, in Manner hereafter mentioned. P R O-VIDED ALWAYS, that it shall and may be lawful for the said Captains or Commanding Officers, to retain in their Hands *Five per Cent.* out of the Money so levied and applied.

16. AND BE IT FURTHER ENACTED by the Authority aforesaid, That the Captain, Lieutenant, and Enfign of each respective Company, or any two of them, shall meet together at such Time and Place as said Captain, or the Commanding Officer for the Time being, shall appoint, within the Township or District wherein he is Captain or Commanding Officer, and then, and there, adjudge which of said Persons so lifted, are not able to provide themselves with the Arms and Ammunition aforesaid. All which said Persons shall be, and are hereby exempted from the Fines and Forfeitures aforesaid, for not appearing at the Times and Places aforesaid, until such Time that they are provided for with Arms and Ammunition, or until such Time that the said Captain, Lieutenant, and Enfign, or any two of them, shall judge them able to provide Arms for themselves.

*Persons unable to provide Arms, exempted from Fines, &c.*

17. AND to prevent the said Arms being seized by an Enemy, or Persons disaffected to the Government, BE IT ENACTED by the Authority aforesaid, That the Arms and Ammunition aforesaid, that shall be purchased as aforesaid, shall be distributed by each Captain, or Commanding Officer of each respective Company, so as there be lodged but two of such Muskets or Fuzees, and but one Pound of such Powder, and twenty-four Bullets, in one, Houfe, in the Custody or Care of some of the principal Freeholders within said Captain's District or Division. AND upon Alarms or Muftering Days, the said Arms shall be delivered to such Persons to whom they were to be lent, as aforesaid, with such a Quantity of Ammunition as is required of others to bring into the Field; and as soon as the said Alarm or Muftering Day is over, the Captain shall order the said Arms to be returned to the Persons that had them in Keeping, with the Ammunition aforesaid, only allowing so much to be deducted as the said Captain shall permit to be expended.

*Arms, &c. how to be diftributed &c.*

18. AND

Digitized from Best Copy Available

18. AND BE IT FURTHER ENACTED

*Parents & Masters, to pay the Fines of Sons or Servants.* by the Authority aforesaid, That where young Men that dwell with their Parents or Masters, and listed as aforesaid, shall neglect or refuse to do the Duties required of them by this Act, then, and in that Case, their Fines and Forfeitures shall and may be levied out of their Parents or Masters Estate, any Law or Custom to the contrary in any wise notwithstanding: UNLESS the Captain, Lieutenant, and Ensign, or any two of them, as aforesaid, shall adjudge the said Parents or Masters not to be able to furnish the Son or Apprentice with the Arms and Ammunition required by this Act; then, and in that Case, the said young Men shall have such Arms and Ammunition lent them, as the Persons aforesaid have, and be also exempted from the Fines and Penalties for not appearing at the Times and Places aforesaid, until provided as before directed.

19. AND WHEREAS several Persons have, or

*Voluntiers in unregimented Companies not excused from Duty.* hereafter may list themselves as Voluntiers in unregimented Companies, and under pretence thereof, may say, that they are excused from doing the Duties required of them by this Act; which Practice, if admitted of, will much lessen the Number and Regulation of the Militia of this Colony, For Remedy whereof,

BE IT ENACTED by the Authority aforesaid, That every Person or Persons that already hath, or hereafter shall list him or themselves into said unregimented Companies, shall be, and are hereby made Subject to the Commands of their proper Officers, and shall meet at the Times and Places appointed by this Act, to be taught the Use of their Arms, and provide themselves with such like Arms and Ammunition, as is required of others to provide, and do every other Matter, Duty, and Thing, required by this Act of others that serve in Regiments, under the same Pains and Penalties; any Law, Custom, or Usage to the contrary, in any wise notwithstanding.

20. BE IT FURTHER ENACTED by

*Foot Soldiers may list to serve in Troops of Horse.* the Authority aforesaid, That if the Governor, or Commander in Chief for the Time being, shall think fit to grant Commissions for the Command of any Troops of Horse in this Colony, it shall and may be lawful for so many of the Persons inlisted by the several Captains aforesaid, to list themselves to serve in said Troop, or Troops of Horse, being able to provide themselves with the Troopers Accoutrements

Digitized from Best Copy Available

trements hereafter mentioned. And when the Commanding Officers of said Troop are ready, and shall exercise said Troop, then, and not before, the said Persons so listed in said Troop, shall be, and are hereby exempted from their Service in the Foot Companies.

21. BE IT FURTHER ENACTED by the Authority aforesaid, That said Troopers, being so inlisted, *Troopers under the same Penalties set as Foot Soldiers.* are hereby subjected to the Commands of their proper Officers, and, upon Disobedience, shall be under the same Fines and Penalties that the other Persons serving on Foot are: And also the said Troopers shall be under the same Fines, Penalties, Forfeitures, and Payments, for their not appearing at such Times and Places aforesaid, as the Foot-Men are by Virtue of this Act.

22. AND BE IT FURTHER ENACTED by the Authority aforesaid, That every Person so inlisted *Troopers how to be provided.* to serve in a Troop, shall be provided with a good Horse, a good Saddle and Bridle, Holsters and Case of Pistols, well fitted, Sword or Cutlass, Cartouch Box, and three Charges of Powder and Ball, and shall constantly appear so armed, at the Times and Places appointed for Muster and Exercise; and shall keep at his Place of Abode, besides the Arms and Ammunition abovesaid, a well fixed Carbine, with Bolt, Swivel, and Sling, half a Pound of Powder, and Twelve sizeable Bullets, and bring the same into the Field, when specially required, which the Captain, or Commanding Officer shall send one of his Serjeants to examine into once a Year.

23. AND BE IT ENACTED by the Authority aforesaid, That each, and every of said Persons so listed in a *Penalties on Defaulters.* Troop, that shall be deficient in Keeping the Arms and Stores aforesaid, at the Place of his Abode, shall forfeit and pay as follows, *viz.* For Want of a Carbine, *Two Shillings*; if not well fixed, *One Shilling*; for Want of a Bolt, Swivel, and Sling, *One Shilling*; for Want of Half a Pound of Powder, and Twelve sizeable Bullets, *One Shilling*. And every one of the said Troopers, that shall appear at the Places before appointed without the Arms and Accoutrements required, as aforesaid, he shall forfeit and pay as follows, *viz.* for Want of a good Horse, *Two Shillings*, for Want of a good Saddle and Bridle, *One Shilling*; for Want of a Case of Pistols, *One Shilling*; for Want of three Charges

I 4                                                                 of

Digitized from Best Copy Available

of Powder, and three sizeable Bullets, *One Shilling*. All which Fines and Forfeitures shall be paid to the Captain, as aforesaid, to be applied to purchasing Arms and Ammunition as aforesaid, for the Use aforesaid, and to be levied and accounted for in Manner aforesaid.

Captains, &c. to account for the Fines they receive.

24. AND BE IT FURTHER ENACTED by the Authority aforesaid, That each Captain, or Commanding Officer of every Company in this Colony, shall account for all such Fines and Forfeitures so by him to be received, before any Justice of the Peace, and the two Freeholders chosen in the said Township or District wherein he is Captain or Commanding Officer, by Virtue of an Act, entitled, *An Act for Raising of Money, for Building and Repairing of Gaols and Court-Houses*, at such Time and Place as the said Justice of the Peace shall appoint. And if upon such Accounting it shall appear, that any Captain or Commanding Officer shall not have expended and laid out all such Fines and Forfeitures ( except those before excepted, for Drums and Colours ) in Purchasing Arms and Ammunition aforesaid ; then if said Sum shall appear to be *Five Pounds*, or under, it shall, and may be lawful, (in case of Refusal or Neglect of the said Captain or Commanding Officer, to pay the same to the said Justice and Freeholders) for the said Justice of the Peace, and he is hereby required and commanded, to issue his Warrant to any Constable, commanding him to make Distress upon the said Captain's or Commanding Officers Goods and Chattels, and expose the same to Sale, by Publick Vendue ; and out of the Money arising by such Sale, he shall pay to the said Justice of the Peace and said Two Freeholders, so much Money as the said Captain, or Commanding Officer, is found not to have laid out, returning the Overplus to the Owner, if any be, after deducting the lawful Fees, for the Warrant, Distress, and Sale. AND if said Sum exceed *Five Pounds*, then it shall and may be lawful for the said Justice and Freeholders for the Time being, in their Names, to sue the said Captain or Commanding Officer, in any Court where the same is cognizable, by Action of Debt, to be recovered with Costs of Suit, and applied by the said Justice and Freeholders, to the Purchasing the Arms and Ammunition aforesaid.

Penalty on Refusal or Neglect.

25. AND BE IT FURTHER ENACTED by the Authority aforesaid, That if any Captain or Commanding Officer, shall refuse or neglect to Account as aforesaid,

Case 1:25-cr-00088-HG    Document 33    Filed 12/15/25    Page 50 of 63 PageID #: 257

faid, he fhall forfeit *Five Pounds* for every fuch Neglect or
Refufal, with full Cofts of Suit, to be recovered by Action
of Debt, by any Perfon that will fue for the fame, before
any Juftice of the Peace; the one Half to fuch Perfon or
Perfons that fhall profecute the fame to Effect, the other
Half to be applied for Purchafing the Arms and Ammunition
aforefaid.

### 26. AND BE IT FURTHER ENACTED

by the Authority aforefaid, That no Innholder, or any o-
ther Perfon or Perfons whatfoever, without Leave from
the Captain or Commanding Officer for the Time being,
fhall prefume to fell any ftrong Liquor, to any of the Per-
fons fo lifted, in fuch Days or Times that they are obliged
to appear in Arms, at the Place of Muftering or Training,
or within a Mile thereof, until after they are difmiffed for
that Day; and every Perfon or Perfons fo felling ftrong
Liquor, contrary to the Directions of this Act, fhall forfeit
the Sum of *Three Pounds*, to be recovered by any Perfon
that will fue for the fame, before any Juftice of the Peace;
the one Half to fuch Perfon as will profecute the fame to
Effect, the other Half to be applied for Purchafing the Arms
and Ammunition aforefaid.

*No Perfon to fell ftrong Liquor near the Place of Muf-tering.*

*Penalty.*

### 27. AND BE IT FURTHER ENACTED

by the Authority aforefaid, That no Summons, Warrant,
Writ, or other Procefs (unlefs at the Suit of the King) fhall
be ferved upon any Officer or Soldier on the Day or Days
of fuch Training and appearing in Arms as aforefaid, but
that all fuch Perfons fhall be free from Arreft, and have
Liberty and Privilege of going and returning to their re-
fpective Places of Abode, without Let, Suit, or Hind-
rance on thofe Days.

*No Writ, &c. to be ferved on Officers or Soldiers on the Day of Train-ing, &c.*

### 28. AND BE IT FURTHER ENACTED

by the Authority aforefaid, That in Cafe there fhall be
Occafion for the faid Officers and Soldiers to pafs or repafs
any River, or Place where a Ferry or Ferrries are kept,
in going to, or returning from the Place of Training or
Appearing in Arms, as aforefaid, the Ferry-men, Owners,
or Keepers of all fuch Ferries, are to take and receive of
all fuch Officers and Soldiers only Half Ferriage, for fuch
carrying over and bringing back, all fuch Officers, Soldiers,
and their Horfes. AND in Cafe any Ferry-man, Own-
er or Keeper of fuch Ferry or Ferries, fhall neglect to at-
tend, or refufe carrying or bringing back all fuch Officers or
Soldiers,

*Ferry-men to take but Half Ferriage of Soldiers on Muftering Days*

# 312                 The Nineteenth

Penalty on Re-
fufal or Ne-
glect.

Soldiers, or their Horfes, as aforefaid, the faid Ferry-man, Owner, or Keeper of fuch Ferry or Ferries, fhall forfeit and pay the Sum of *Three Pounds* Proclamation Money, to be recovered by the Captain or Commanding Officer of fuch Company, in any Court in this Colony where the fame is cognizable, and when recovered, to be applied to the Purchafing of Arms and Ammunition, as aforefaid.

Limitation of
this Act.

29. AND BE IT FURTHER ENACTED by the Authority aforefaid, That this Act fhall continue and be in Force for one Year after the Publication hereof, and from thence, to the End of the next Seffion of General Affembly, and no longer.

   **N. B.**   *This Act is continued by feveral Acts of Affembly to this Time.*

**ACTS**

Digitized from Best Copy Available

# EXHIBIT C

333
A. D. 1723.



At a GENERAL ASSEMBLY, summoned to be held at *Williamsburg,* the Fifth Day of December, *Anno Domini* 1722, in the Ninth Year of the Reign of our Sovereign Lord GEORGE, by the Grace of God, of *Great-Britain, France,* and *Ireland,* King, Defender of the Faith, *&c.* And by Writ of Prorogation, begun and holden on the Ninth Day of *May,* 1723.

*Hugh Davidale, Esq; Governor.*

---

## CHAP. I.

*An Act for laying a Duty on Liquors and Slaves.* **R E P.**

*Repealed by Proclamation, Oct. 27, 1724.*

---

## CHAP. II.

*An Act for the Settling and better Regulation of the Militia.*

I. **W**HEREAS a due Regulation of the Militia is absolutely necessary for the Defence of this Country, and the Act now in Force, doth not sufficiently provide for the same,

*Preamble.*

II. *BE it therefore Enacted, by the Lieutenant-Governor, Council, and Burgesses, of this present General Assembly, and it is hereby Enacted, by the Authority of the same,* That from and after the Publication of this Act, the Colonel, or Chief Officer of the Militia of every County, have full Power and Authority to list all Free Male Persons whatsoever, from Twenty One to Sixty Years of Age, within his respective County, to serve in Horse or Foot ; having Regard to the Ability of each Person, and to order and place them under the Command of such Captain as he shall think fit.

*All Freemen from 21 to 60 Years of Age, shall be listed in every County, to serve in the Militia, &c.*

III. *PROVIDED nevertheless,* That nothing herein contained, shall be construed to compel any Person or Persons that shall be, or shall have been, of His Majesty's Council in this Colony, Speaker of the House of Burgesses, Secretary

*Persons exempted from Personal Service.*

Digitized from Best Copy Available

*A. D. 1723.*

Secretary of this Colony, Judge of the Court of Vice-Admiralty, His Majesty's Attorney-General, a Justice of the Peace, or any Person that shall have born any Military Commission within this Colony, as high as the Commission of a Captain, or the Clerk of the Council, for the Time being, or the Clerk of the General Court, for the Time being, or any County Court Clerk, during his being such, Personally to appear at any Musters: But that all, and every the Persons aforesaid, shall and may, and are hereby required, to find and provide one able-bodied white Man, a good Horse, and such Troopers Accoutrements, as are herein after-mentioned, who shall constantly appear and exercise at all Musters.

*But shall provide a Trooper, with Horse, & Accoutrements, to serve & at Musters.*

*Persons exempted from being listed.*

**IV.** *P R O V I D E D nevertheless,* That nothing herein contained, shall impower or enable any Colonel, or Commander in Chief, to list, or cause to be listed, any Minister of the Church of *England,* or the President, Masters, Professors, or Students, of the College of *William* and *Mary,* during the Time of their being such; or any Person being emploied as an Overseer, and having Four or more Slaves under his Care; or any Miller, having a Mill under his Charge and Keeping; or the Founders, Keepers, or any other Persons emploied in or about any Iron, Copper, or Lead Work, or any other Mine, during the Time of their being so emploied; or any Free Negro, Mullatto, or *Indian.*

*Free Negros, Mullattos, or Indians, compellable to serve as Drummers, Trumpeters, Pioneers, &c.*

**V.** *P R O V I D E D always,* That such Free Negros, Mullattos, or *Indians,* as are capable, may be listed and emploied as Drummers or Trumpeters: And that upon any Invasion, Insurrection, or Rebellion, all Free Negros, Mullattos, or *Indians,* shall be obliged to attend and march with the Militia, and to do the Duty of Pioneers, or such other servile Labour as they shall be directed to perform.

*Overseers, Millers, Free Negros, Mullattos, or Indians, presuming to appear at any Muster, shall pay 100 lb Tobacco, or be tied Neck and Heels.*

**VI.** *A N D be it further Enacted, by the Authority aforesaid,* That if any exempted Overseer, or Miller, or any Free Negro, Mullatto, or *Indian,* other than as before excepted, shall presume to appear at any Muster whatsoever, the Party so offending, shall, for every such Offence, forfeit and pay One Hundred Pounds of Tobacco, and shall immediately give Security to the said Commanding Officer, for Paiment of the same: Which Fine or Fines shall be disposed of in such Manner, and to such Uses, as the other Fines herein after-mentioned. And each Person failing to pay, or give Security, as aforesaid, shall, by Order of the said Commanding Officer, be tied Neck and Heels, and so remain for any Time not exceeding Twenty Minutes.

*Arms, Ammunition, &c. to be provided by every Soldier of Horse or Foot.*

**VII.** *A N D be it further Enacted, by the Authority aforesaid,* That every Soldier belonging to the Horse, be provided with a good serviceable Horse, a good Saddle, with Breast-plate, Crupper, and Curb Bridle, Holsters, and a Case of Pistols, cutting Sword or Cutlace, and double Cartouch Box, and Six Charges of Powder, and constantly appear with the same at Time and Place appointed for Muster and Exercise; and shall keep at his Place of Abode, a well fixed Carbine, with Belt and Swivel, One Pound of Powder, and Four Pounds of Shot, and bring the same into the Field with him when thereunto specially required. And that every Foot Soldier be provided with a Firelock, Musquet, or Fuzee, well fixed, and Bayonet fitted to such Musquet or Fuzee, or a good cutting Sword or Cutlace, a Cartouch Box, and Three Charges of Powder, and appear constantly with the same, at the Time and Place appointed for Muster and Exercise; and shall keep at his Place of Abode, One Pound of Powder, and Four Pounds of Shot, and bring the same into the Field with him, when thereunto specially required.

VIII. *A N D*

*A. D.* 1723.

VIII. *A N D be it further Enacted, by the Authority aforesaid,* That whatsoever Soldier shall fail to appear at any Time and Place appointed, or appearing, shall not be furnished and provided with Arms and Ammunition, as aforesaid, for Muster and Exercise, or shall not keep at his Place of Abode, what by this Act he is directed, such Soldier, for every such Failure, shall be fined One Hundred Pounds of Tobacco.

If any Soldi-er fails to ap-pear, when re-quired, or is unprovided with Arms, *&c.* he shall be fined 100l. Tobacco.

IX. *P R O V I D E D always, and be it Enacted,* That Eighteen Months Time be given and allowed to each Soldier, to furnish and provide himself with Arms and Ammunition, according to this Act; and that no Soldier be fined for appearing without, or not having the same at his Place of Abode, un-til he hath been listed Eighteen Months, after the passing of this Act; any thing in this Act to the contrary, or seeming to the contrary, notwithstand-ing: So as every Soldier, during the said Eighteen Months, do appear at all Musters with such Arms as he is already furnished with.

But Eighteen Months shall be allowed to each Soldier, after he is lif-ted, to furnish himself with Arms, *&c.*

X. *A N D be it further Enacted, by the Authority aforesaid,* That eve-ry Captain of a Troop or Company, who shall fail to appear at any Muster or Musters hereafter to be appointed, or appearing, fail and neglect to exer-cise the Troop or Company under his Command, every such Captain, for every such Offence, shall be fined Two Hundred Pounds of Tobacco. And every Lieutenant, Cornet, or Ensign, who shall at any Time hereafter fail to appear at any such Muster, and perform his Duty thereat, shall forfeit and pay One Hundred Pounds of Tobacco for every such Offence.

Penalty on Officers fail-ing to appear, or to exercise their Men.

XI. A N D for an Encouragement of every Soldier to provide and furnish himself, according to the Directions of this Act, and his Security to keep his Horse, Arms, and Ammunition, when provided, *Be it Enacted, by the Au-thority aforesaid,* That the Horses and Furniture, Arms and Ammunition, provided and kept, in Pursuance of this Act, be free and exempted at all Times from being impressed upon any Account whatsoever; and likewise, from being seized or taken by any manner of Distress, Attachment, or Writ of Execution. And that every Distress, Seizure, Attachment, or Execution, made or served upon any of the Premises, be unlawful and void: And that the Officer or Person that presumes to make or serve the same, be liable to the Suit of the Party grieved; wherein double Damages shall be given upon a Recovery.

Horses and Accoutre-ments, Arms, & Ammuni-tion, provi-ded & kept, pursuant to this Act, shall not be liable to Seizure or Distress.

XII. A N D to the End, the Militia of this His Majesty's Colony and Dominion, being settled and armed, as aforesaid, may be the better fitted for Service, *Be it further Enacted, by the Authority aforesaid,* That the Colo-nel, or Chief Officer of the Militia of every County, once every Year at least, cause a Muster and Exercise of all the Troops and Companies in his County, at one or more Place or Places, or oftner, if there shall be Occasion: And that every Captain, once in every Three Months, muster, train, and exercise his Troop or Company, or oftner, if Occasion require. *Provided,* that no Officer or Soldier be fined above Five Times in one Year.

Chief Officer of every Coun-ty, shall cause a general Muf-ter to be made once a Year; and every Captain shall muster his Troop or Company Quarterly. None to be fined above 5 Times in one Year.

XIII. *A N D be it further Enacted, by the Authority aforesaid,* That all Soldiers, during the Time they are in Arms, shall observe and obediently perform the Commands of their Officer, relating to their Exercise, according to the best of their Skill. And if any Soldier, as aforesaid, shall, at any such Muster, disobey his Officers Commands, or behave himself disorderly or refractorily thereat, it shall and may be lawful for the chief Commanding Of-ficer then present, to cause such Offender to be tied Neck and Heels, for any

Penalty on disobedient or refractory Soldiers.

U u                                          Time

A. D. 1723.

Time not exceeding Twenty Minutes. And if any such Soldier shall thereafter offend, it shall and may be lawful for the said Commanding Officer, by a Warrant under his Hand, to commit such Offender to the County Goal, there to remain for any Time not exceeding Ten Days; and that the said Offender shall not be thence discharged, until he hath paid and satisfied all Fees due, and accustomed for Sherifs or Goalers to take, upon any Commitments and Discharges.

In Case of Invasions, Insurrections, &c. if a Soldier fails to appear, he shall be fined 10l. & if he refuses to obey his Captain, 3 Months Imprisoned, without Bail.

XIV. *AND be it further Enacted, by the Authority aforesaid,* That if any Soldier, upon Occasion of an Incursion, Invasion, Insurrection, or Rebellion, or other Alarm or Surprize, shall be summoned to meet at a certain Time and Place, and shall fail to appear, such Soldier shall be fined for his Failure, the Sum of Ten Pounds current Money; and the Captain of such Soldier so failing, is hereby required, at the Meeting of the Field Officers and Captains, herein after directed, to give an Account, under his Hand, of every such Failure. And any Soldier refusing to obey the lawful Commands of his Captain, shall and may be committed to the County Goal, by Warrant under the Hand of his said Captain, for Three Months, without Bail or Mainprize.

Unless sooner discharged by the Colonel. Officers failing, fined 20l.

XV. *PROVIDED nevertheless,* That the Colonel, or Commander in Chief, have Power to release and discharge him in less Time, if he see Cause. And if any Officer shall fail or neglect to appear on Occasion of any such Incursion, Invasion, Insurrection, or Rebellion, or other Alarm, every such Officer, so offending, shall be fined the Sum of Twenty Pounds current Money, for every such Failure.

Soldiers refusing to serve as Serjeants, Corporals, &c. fined 500 lb. Tob. &c.

XVI. AND forasmuch, as some Difficulty hath been found in procuring some Soldiers to be willing to serve as Serjeants, Corporals, Drummers, or Trumpeters, all of them absolutely necessary in Troops and Companies: For Prevention of the like in Time to come, *Be it Enacted, by the Authority aforesaid,* That whatsoever Soldier shall refuse to take upon him, act in, and execute any of the said Places and Offices, in the Troop or Company wherein he is lifted, being known to be capable, and thereunto appointed by his Captain, shall, for such his Refusal, be fined Five Hundred Pounds of Tobacco; which being once paid, he shall thereafter be exempted from being fined for any such Refusal.

Captains to present Defaulters or Offenders.

XVII. AND to the End, no wilful and obstinate Defaulter or Offender may escape the Penalty inflicted by this Act, for his Default or Offence, *Be it Enacted, by the Authority aforesaid, and it is hereby Enacted,* That all Captains of Troops and Companies within this His Majesty's Colony and Dominion, be required, and every of them is hereby strictly required and enjoined, at every Muster, to take, or cause to be taken, an exact Account in Writing, of every such Default or Offence made or committed in his Troop or Company, by whom the said Default or Offence was made or done, and at what Time, and to sign the same with his own Hand, and deliver it, or cause it to be delivered, to the Field Officers and Captains, at their next Meeting for the fining Offenders.

A Court Martial shall be held in every County, whereof the Colonel, Lieutenant-Colonel, or Major, shall be One, on the First or Second Thursday in October, Annually, to fine Delinquents, &c.

XVIII. *AND be it further Enacted, by the Authority aforesaid,* That the Field Officers and Captains of every County, or the major Part of them, whereof the Colonel, Lieutenant-Colonel, or Major, shall be One, have full Power and Authority to meet Yearly, at the Court-house in their respective Counties, on the First *Thursday* in *October*; or, in Case of Failure in meeting that Day, on the next *Thursday* following, to inspect the several Lifts or Accounts

counts

Digitized from Best Copy Available

*A. D.* 1723.

counts given in by the Captains, as aforesaid; and thereupon to fine every Defaulter or Offender therein charged, according to the Directions of this Act.

XIX. *P R O V I D E D always*, That nothing in this Act contained, be construed to give any Power or Authority to the said Field Officers and Captains, to meet or act, as aforesaid, at any other Place or Times, than the Place and Times aforesaid; or to fine any Defaulter or Offender for any Default or Offence whatsoever, by or against this Act, which hath been made or done above a Year; any thing herein before contained to the contrary, in any-wise, notwithstanding.

*But shall not meet at any other Time or Place or fine for Offences, &c. committed above a Year.*

XX. A N D, because several Persons may happen to be charged with a Default or Offence in their Captains said Lists or Accounts, who are not wilfully guilty thereof, or may have a fair and just Excuse for their not complying with this Act: For Remedy in such Cases, *Be it Enacted*, That whensoever any Officer or Soldier, charged with any Default or Offence, as aforesaid, can and doth shew forth to the said Field Officers and Captains, at their Meetings to fine Offenders, as aforesaid, such Matter and Cause that he ought not to be fined for the same, as they shall judge reasonable, it shall be lawful for the said Field Officers and Captains, and they are hereby required to admit of such Officers and Soldiers Excuse, and to lay no Fine upon him for such Default or Offence; any thing in this Act contained to the contrary, notwithstanding.

*The Court to admit reasonable Excule, &c.*

XXI. *A N D be it further Enacted, by the Authority aforesaid*, That where any Person on whom any Fine shall be laid or assessed, by Virtue of this Act, by the said Field Officers and Captains, shall fail or refuse to pay the same to the Sheriff, in Specie, upon Sight of a Copy of their Order; in such Case, the Sheriff is hereby required to apply to the chief Commanding Officer, residing in the County, who thereupon is hereby impowered and required to make out his Warrant, directed to the said Sheriff, impowering and commanding him to levy the same by Distress and Sale of the Offenders Goods, and make Return of his Proceedings, to the Clerk attending the said Officers at their Meeting, to be by him entred on the Register. And if, upon such Warrant, the Sheriff shall return, that he can find no Goods whereon to make Distress, then it shall and may be lawful, to and for the chief Commanding Officer residing in the County, and he is hereby authorized and required, by Warrant under his Hand, directed to the Sheriff, to cause the Body of the said Offender to be committed to the County Goal, without Bail or Mainprize, until he shall satisfy the same Fine, and all Fees incident, in the same Manner, as in Executions served at Common Law.

*If any Person refuses to pay such Fine, it may be levied by Distress: And if the Sheriff cannot find the Offenders Goods, an Execution shall issue against his Body.*

XXII. *A N D be it further Enacted, by the Authority aforesaid*, That the said Field Officers and Captains have full Power and Authority to appoint and employ a Clerk to attend them at their said Meetings, and to keep a Register of all their Proceedings; and to allow the said Clerk such Salary, for his said Service, and for providing necessary Books and Paper for their Use, as in their Discretion they shall think fit and reasonable, and to pay the same out of the Penalties and Fines accruing by this Act.

*The Court may appoint a Clerk to attend them, &c. and pay his Salary, &c. out of the Fines.*

XXIII. *A N D be it further Enacted, by the Authority aforesaid*, That the said Field Officers and Captains, at their Meetings, as aforesaid, have full Power and Authority to order and dispose of the Fines, Penalties, and Forfeitures mentioned in this Act, in such Manner as in their Discretions shall seem best, for paying therewith a Clerk, as aforesaid, and for furnishing the

*And may dispose of the Penalties, &c. for Military Uses.*

U u 2                                                                    several

*A. D. 1723.* feveral Troops and Companies belonging to the County, with neceffary Drums, Colours, Trumpets, Leading-Staffs, Partizans, and Halberts, and after all thofe, for providing Arms and Ammunition for the County's Ufe.

Each Captain may take one of his Soldiers to be Clerk of his Troop, &c.

XXIV. *AND be it further Enacted, by the Authority aforefaid,* That every Captain of a Troop or Company within this Colony, be permitted and allowed to take one of the Soldiers under his Command, to be Clerk to his Troop or Company: And that fuch Clerk, in Confideration of his Service in that Refpect, be excufed from carrying Arms at any Mufter, except in Cafe of a Rebellion, or an Invafion; any thing in this Act, to the contrary, notwithftanding.

All Commiffion Officers fhall take the Oaths appointed by Law, and fubfcribe the Teft.

XXV. *AND be it further Enacted, by the Authority aforefaid,* That every Commiffion-Officer in the Militia, fhall, before he acts under, or executes any fuch Commiffion, in the Court of his County, take the Oaths appointed by Law to be taken, inftead of the Oaths of Allegiance and Supremacy, the Abjuration Oath, and fubfcribe the Teft; and that every Colonel, Lieutenant-Colonel, Major, and Captain, at the Time of their Meeting to fine Offenders, fhall alfo take the following Oath; (*to wit,*)

Oath to be taken by Officers holding a Court Martial.

I A. B. do fwear, *That I will do equal Right and Juftice to all Men, to the beft of my Judgment, according to the Directions of the Act, intituled,* An Act for the Settling and better Regulation of the Militia.

Which Oath fhall be firft taken by the prefiding Officer then prefent, and fhall by him be adminiftred to the reft of the faid Officers.

XXVI. *AND be it further Enacted and Declared,* That nothing in this Act contained, fhall hinder or debar any Captain from admitting any ablebodied white Perfon, who fhall be above the Age of Sixteen Years, to ferve in his Troop or Company, in the Place of any Perfon required by this Act to be lifted.

Repeal of 4 *Annæ,* c. 24.

XXVII. *AND be it further Enacted, by the Authority aforefaid,* That the Act of Affembly, made in the Fourth Year of the Reign of our late Sovereign Lady Queen *Anne,* intituled, *An Act for Settling the Militia,* be and is hereby Repealed, and made void, to all Intents and Purpofes.

## C H A P.   III.

*An Act for Reviving the Act, entituled,* An Act for Security and Defence of the Country in Times of Danger.   E X P.

C H A P.

Digitized from Best Copy Available

# EXHIBIT D

I



# THE GENERAL

# L A W S

### And

## LIBERTIES of

## CONECTICUT COLONIE:

### Revifed and Publifhed by Order of the

## GENERAL COURT

Held at Hartford, in *October* 1 6 7 2.

Orafmuch as the free Fruition of fuch Liberties, as Humanity, Civility and Chriftianity call for, as due to every man, in his place and proportion, without Impeachment and Infringement hath ever been, and ever will be the Tranquility and Stability of Churches and Common wealths; and the denyal or deprival thereof, the difturbance, if not ruine of both:

It is therefore Ordered by this Court and the Authority thereof; That no mans life fhall be taken away, no mans honour or good Name, fhall be ftayned, no mans perfon fhall be Arrefted, Reftrained, Banifhed, Difmembred, nor any wayes punifhed; no man fhall be deprived of his Wife or Children; no mans Goods or Eftate fhall be taken away from him, nor any wayes indamaged under colour of Law, or couhtenance of Authority, unlefs it be by the vertue or equity of fome exprefs Law of this Colony warranting the fame, eftablifhed by the General Court, and fufficiently publifhed; or in cafe of the defects of a Law in any particular cafe by fome clear and plain Rule of the word of God, in which the whole Court fhall concurre.

*The Subjects Priviledg that his perfon and eftate is fecured to him according to Law.*

B

*Ability.*

Digitized from Best Copy Available

## Conecticut COLONY.    49

### Military Affaires.

THat the Militia may be ſo managed as may beſt, advantage the Publick Weal and Safety of this Colony;

It is Ordered by this Court and the Authority therof; That all Male perſons of the age from ſixteen years of age, to the age of ſixty (except Magiſtrates, Church officers, allowed Phyſitians and Chyrurgeons, School-maſters, Millers, conſtant Herds-men, and Marriners, who make it their conſtant buſineſs to go to Sea) ſhall bear Arms, unleſs they upon juſt occaſion have exemption granted them by the Court; and every Male perſon within this Juriſdiction above the age of ſixteen years, ſhall have in continual readineſs, a good Musquet, Carbine or other Gun (not leſs then Baſtard Muſquet or Coliver Boare (fit for ſervice, allowed by the chief Military Officer, with ſix Flints to every Fire-lock, and three Fathome of Match to every Match-lock, with a Sword and Bandileers, or other ſerviceable Proviſion according to Law in the room thereof where ſuch cannot be had; as alſo ſuch other Amunition as the Law requires, both of Powder and Bullets, upon penalty of five ſhillings for every defect.

*Who ſhall bear Arms.*

*Who to provide Arms.*

*penalty 5. s for every defect*

And if any perſon who is to provide Arms or Amunition, cannot purchaſe them by ſuch Means as he hath, he ſhall bring to the Clerk ſo much Corn or other Merchantable Goods, as by Apprizement of the Clerk, and two of the Company (whereof one to be choſen by the Clerk, and the other by the party) as ſhall be judged of a greater value by a fifth part then ſuch Arms and Amunition is of, he ſhall be excuſed for the penalty of want of Arms (but not for want of Appearance) until he be provided for: And the Clerk ſhall endeavour to furniſh him with Arms and Amunition as ſoon as may be, by ſale of ſuch Goods ſo depoſited, rendring the over plus to the party; But if any perſon be not able to provide himſelf Arms or Amunition, through his meer poverty, if he be ſingle, he ſhall be put to Service by any one Aſſiſtant or Commiſſioner to procure him Eſtate to purchaſe Arms with, and his Maſter ſhall finde him Arms during his time of Service.

*Proviſion for thoſe that want Arms*

And it is alſo Ordered; That all the Souldiers within this Juriſdiction ſhall be Trained at leaſt ſix times within the year, in the Moneths of March, April, May, September, October, & November; by, and according to the appointment of the Captain or other chief Officer of the ſeveral Train Bands in the reſpective Plantations: and the times of their Meetings together ſhall be at eight of the Clock in the morning.

*Six dayes Training in a year Chief Officer to appoint the dayes Company to meet by 8 Clock in the morning*

It is alſo Ordered; That every Train Band ſhall chooſe ſome ſuitable perſon of their Company to be Clerk of the ſaid Company, who ſhall be Sworn to a faithful diſcharge of his place and office; and whoſoever being choſen as aforeſaid, ſhall refuſe to accept of the ſaid Office of Clerk, and taking the ſaid Clerks Oath, he ſhall pay as a fine for the ſame forty ſhillings to the uſe of the Company; and all that refuſe the ſaid Place or Oath as before, ſhall pay forty ſhillings a piece (as before) till one doth accept the place, and he that doth hold the place ſhall have a fourth part of all fines for his labour.

*Train Band to chooſe their Clark He that refuſeth to accept and take Oath being choſen Fined 40 s The Clarke to have a 4th part of all Fines*

And it is alſo Ordered; That the chief Officer of every Train Band ſhall cauſe the Arms and Amunition of all under his command, to be viewed at leaſt once in every year, by appointing them to bring forth their Arms and Amunition at ſome time and place as he ſhall appoint, or by ſending the Clerk from houſe to houſe to view them: And the Clerk ſhall every Training day give his attendance in the Field (except he hath ſpecial leave from his Captain or other chief Officer) to call over the Rolls of the Souldiers, and to take notice of their defects by their abſence or otherwiſe, and he ſhall preſent to the next Aſſiſtant or Commiſſioner all Defects in Arms or Amunition, at leaſt once in every year, and oftner if it be required, and the ſeveral Magiſtrates (and Commiſſioners in their reſpective Plantations) are hereby impowred to puniſh all Defects in that kinde according to the nature of the offence, wherein due care is to be had that wilful neglects in any do not paſs without Senſure according to Law.

*Clarks to attend days of exerciſe and to view Arms and to preſent all defects once a year at leaſt*

*Magiſtrates to puniſh defects*

O    And

Digitized from Best Copy Available

## 50                    The L A W S of

And whosoever shall be absent any of the dayes appointed for Training after the houer appointed, or shall not continue the whole time, shall forfeit *two shillings* and *sixpence* for every default in Corn or Money, except within *fourteen* dayes he bring a certificate to the Clerk, from two of the chief Officers of that Company to which he doth belong to free him; And if he neither bring Certificate, nor his fine, being demanded, then the Clerk of the Band hath hereby power to distrain *five shillings* in Corn, or some pay equivalent for every such default, *two shillings six pence* whereof shall be to himself, and *two shillings six pence* to the Company, for the maintenance of Drumms and Colours, &c. And if the Clerk shall neglect his duty in gathering the fines, at least once a year, he shall forfeit to the use of the Company double the fines so neglected to be gathered by him.

<span style="float:left">Fines for neglect of training 2 6 p day to be paid in corn or mony within 14 dayes or else 5 sh. half to the Company and half to the Clerk.<br>Clerks neglect, penalty double:</span>

And whereas it is convenient that the *several Souldiers of the Trained Bands in the respective Towns within this Colony have some Powder allowed them to practise and exercise in their several firings upon their Training dayes;*

It is therefore Ordered; That there shall be allowed to the several Souldiers of the Trained Bands in the respective Towns, a Pound of Powder a piece every year, to be provided by, and at the proper Costs and Charges of the Masters of each Family unto which the said Souldiers do belong, to be called forth, improved and disposed of, at the discretion of the Captain or other principal Leaders in each Trained Bands.

<span style="float:left">Allowance of powder to each Souldier to improve in firings on dayes of exercise :</span>

*This Court considering the state and condition of this Colony, by reason of Indians, and otherwise are desirous to use all due means for the preservation and safety of the same, and in order thereunto.*

Do now Order; That the Treasurer for the time being, and at all times hereafter, shall at the publick charge of the Colony, procure, keep and maintain a Magaziene of Powder and Shot, to be ready for the use of the Colony, as occasion may call for the same, and for the quantity thereof, he is to take his direction from time to time of the Governour and Council.

<span style="float:left">A publick Magazeen of powder and shot to be provided and maintained.</span>

It is also Ordered; That every Souldier and Person required to provide Arms, shall alwayes have in readiness by them *one pound* of Powder, and *four pound of Bullets,* upon penalty of *five shillings* for every defect.

<span style="float:left">every Soldiers particular stock of Ammunition every defect 5. s.</span>

It is further Ordered; That every Town shall keep and maintain alwayes in readiness, so much Powder and Bullets as may make with every particular mans provision required by Law, so much Powder and Bullets as may make *three pounds of Powder,* and *twelve pounds of Bullets* or *Lead* for every person required to provide Arms within their limits, upon the penalty of *ten pounds* forfeiture, to be paid to the Publick Treasury, for every neglect and breach of this Order.

<span style="float:left">Towns stock of Ammunition<br>pen. 10: pound</span>

It is also Ordered; That the General Court only from time to time shall have power to establish and confirm all Commission Officers, both of the Horse and Foot, and none but such as the General Court doth confirm, shall be deemed Commission Officers: It is also left in the power of the County Courts from time to time, as need requires, to establish Sergeants for the Foot, and Corporals for the Horse for the respective Companies and Troops within their Counties, but the several Companies are to Nominate their Officers to the Court for their Approbation and Confirmation.

<span style="float:left">The General Court to confirm Commission Officers.<br>The County Court to confirm other Officers.<br>The Companies to nominate their Officers.</span>

It is also Ordered; That there shall be appointed in each County in this Colony, a Sergeant Major (by the General Court) who shall have the Command of all the Regiment of Souldiers within his County, and be Installed in his Office by one appointed by the General Court.

<span style="float:left">Every Regiment to have a Serg. Major.</span>

Which Major shall have power once in four years to draw forth his Regiment into one convenient place, and there to put every Captain and Officer of their Companies in their places, and to instruct them in their Duties, according to the Rules of Military Discipline, and to exercise his Regiment both of Horse and foot according to his best skill as if he were to lead them forth against an Enemy.                                                                And

<span style="float:left">A General Muster in each County once in four years.</span>

Digitized from Best Copy Available

## Conecticut COLONY.

51

And further, it shall be in the power of the Sergeant Major: and he is hereby Ordered once a year to call all the Commission Officers of his Regiment to meet at such a time and place as he shall appoint, there to consult and consider together of the best way of managing their Military Affaires for the publick Advantage, and the said Major is to require an account of the several officers of his Regiment how their Companies are provided with Arms and Ammunition, and communicate to them such Orders and Instructions as he shall receive from the General Court from time to time.

And it is by this Court Declared; That the Governour for the time being is the General of all the Military Forces within this Colony, but when we shall have occasion to send forth an Army against an Enemy: The General Court may appoint some Commander in chief for that service until the Forces raised shall be dis banded.

Whereas it is left in the power of the chief Military Officers of the respective Companies within this Colony to appoint the dayes of Training: It is now Ordered, that they shall give three dayes warning at least for the same in some publick meeting, or by some other way agreed upon by the respective Companies.

It is also Ordered; That the Captains, Lieutenants, Ensignes, Cornets and Quarter Masters, shall be freed from Watching and Warding, and the Sergeants on Foot, and Corporals of the Horse from Warding and half their Watch.

It is also Ordered; That any three chief Officers of each Company, shall have power to punish such Inferiour Officers or Souldiers as shall commit any Disorder or Contempt upon any day or time of Military Exercise, by any usual Military punishment, or by fine, not exceeding Twenty shillings, except they enter an Appeal from such Sentence to the next County Court, which they have hereby liberty to do.

It is also Ordered, That in case there fall out any suddain Exigent in any Plantation in this Colony, by Assault of Indians or any other Enemy, to the disturbance and hazard of the Publick peace; in every such Case, it shall be Lawfull and in the Power of the Military Officers of the place so disturbed, to Require and call forth all the Souldiers under their Command, and to Marshal, Order and dispose them as the present Occasion shall require, to Defend the place assaulted, and to quit the Enemy: And in case need so require, to Assist a Neighbour Plantation in any extremity as aforesaid; but in every such case (if it can with safety be obtained) they shall advise with the next Magistrate, what way to act for releif of their Neighbours; and this course to be taken upon all occasions from time to time till the Court shall Order otherwise.

It is also Ordered, that in every Train Band, wherein is Sixty four Souldiers besides Officers, they shall have Liberty to have Captain, Lieutenant & Ensign and four Sergeants, and where there are Thirty two Souldiers, they shall have a Lieutenant and Ensign, and two Sergeants, and where there are but twenty four Souldiers, they shall have but two Sergeants.

It is also Ordered, That every Commission Officer, shall take forth his Commission from the General Court, Signed by the Governour, with the Seale of the Colony affixed to it.

### Mills and Millers.

IT is Ordered by this Court, That each Miller in this Colony, or owners of Mills, shall be allowed for the grinding of each bushell of Indian corn, a Twelfth part, and for other graines, a Sixteenth part, Provided that this Order shall no wayes prejudice or nullifie any former agreement made in any Town respecting grinding at their Mills.

It is also Ordered, That there shall be provided for every Mill within this Colony, Tole dishes, one of a Pint, one of a Quart, one of two Quarts, all Sealed measures, with an Instrument to strike the dishes when Tole is taken.

O 2

Ministers