UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

MANSURI MANUCHEKHRI,

         Defendant.

-----------------------------------------------------------X

                                  NOTICE OF MOTION TO
                                     SUPPRESS

                                       25-cr-88

PLEASE TAKE NOTICE, that the defendant **Mansuri Manuchekhri**, by his attorneys **Jullian Harris-Calvin** and **Allegra Glashausser**, of the Federal Defenders of New York, and upon the accompanying memorandum of law, will move the Court, before the Honorable Hector Gonzalez, United States District Judge for the Eastern District of New York, for an Order:

1.     Suppressing all digital evidence recovered pursuant to a search warrant for Mr. Manuchekhri's Apple and iCloud accounts, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment of the United States Constitution, and;

2.     Suppressing Mr. Manuchekhri's statements to government agents during a post-arrest interrogation, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fifth Amendment of the United States Constitution; and

3.     Dismissing count five of the indictment, charging Mr. Manuchekhri with making false statements during his unlawful interrogation;

4.     For an evidentiary hearing, and;

5.     Granting such other relief as the Court may deem just and proper.

DATED:          December 15, 2025
                 Brooklyn, NY

                               Jullian Harris-Calvin & Allegra Glashausser
                               Federal Defenders of New York, Inc
                               1 Pierrepont Plaza, 16th Floor
                               Brooklyn, N.Y. 11201
                               (212) 417-8739

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

   -against-

                                 <u>MEMORANDUM OF LAW</u>

MANSURI MANUCHEKHRI,                   25-cr-88

                                 Oral Argument Requested

        Defendant.
------------------------------------------------------------X

**Memorandum of Law in Support of**
**Motion to Suppress Evidence and Dismiss Count Five**

                            Jullian Harris-Calvin
                            Allegra Glashausser
                            Federal Defenders of New York
                            1 Pierrepont Plaza, 16th Floor
                            Brooklyn, N.Y. 11201
                            (212) 417-8739

# Table of Contents

Introduction...............................................................................................1

Statement of Facts.....................................................................................2

Warrant application to search three Apple and iCloud accounts.......................2

    Allegations that later turned out to be incorrect that Mr. Manuchekhri ██████
████████████████████
███████████ ..................................................................................3

    Allegations related to material support of a terrorist organization...............5

    Allegations related to a sham immigration marriage.............................6

    Alleged connection between Mr. Manuchekhri and three telephone numbers....7

    The only connection to the Apple accounts was the agent's boiler plate
    "training and experience."...........................................................8

    The warrant sought to search and seize all information associated with the
    three Apple accounts for the entire time they had existed.......................9

    Government didn't correct misinformation about allegations that Mr.
    Manuchekhri had ████████████████████
    in subsequent warrant applications, which relied on information found in the
    Apple warrant..........................................................................10

Mr. Manuchekhri's arrest............................................................................11

    Mr. Manuchekhri's lack of fluent English comprehension was immediately
    clear.......................................................................................12

    Two and a half hours pass before Mr. Manuchekhri is given his *Miranda*
    warnings..................................................................................13

    Missing body camera videos..........................................................14

    Formal, recorded interrogation.......................................................15

Agents undercut *Miranda's* importance before explaining his rights…………16

*Miranda* rights were read out loud in English……………………………………...17

References to previous, unrecorded conversations…………………………...18

Confusion during the interrogation…………………………………………….19

Mr. Manuchekhri tried to stop the interrogation: ██████████████████"
……...…………………………………………………………………………...20

Argument

Point I

The three seized Apple and iCloud accounts were not sufficiently connected to the probable cause asserted in the warrant application and the evidence seized should be suppressed…………………………………………...21

A. Legal Standard……………………………………………………………………21

    a. Search warrants for electronic data require particular care……………….24

B. None of the alleged crimes were connected to Mr. Manuchekhri's digital accounts…………………………………………………………………………….26

    a. The agent's "training and experience" that data connected to Apple IDs "may provide direct evidence of the offenses under investigation" didn't provide probable cause to search three of Mr. Manuchekhri's Apple accounts…………………………………………………………………26

C. The warrant was overboard in allowing the seizure of the entirety of three electronic accounts, without limitation or connection to the asserted probable cause…………………………………………………………………………...30

D. The Court should order a *Franks* hearing because the bulk of the asserted probable cause was based on Individual-1 and his assertions that the government has since disavowed……………………………………………33

E. Suppression is the appropriate remedy……………….……….………………35

Point II

Mr. Manuchekhri's recorded statement should be suppressed because a) the agents undercut the warnings by telling him the opposite of *Miranda* and that talking to agents would get things "███████"; b) he didn't knowingly and intelligently waive his rights, a decision incorrectly described to him as "████ ███"; and c) agents didn't stop questioning him when he twice tried to invoke his right to remain silent.

Mr. Manuchekhri's recorded statement should be suppressed because a) the agents undercut the warnings by telling him the opposite of *Miranda* and that talking to agents would get things "███████"; b) he didn't knowingly and intelligently waive his rights, a decision incorrectly described to him as "████ ███"; and c) agents didn't stop questioning him when he twice tried to invoke his right to remain silent…………………………………………………………………38

    A.    *Miranda* was never effectively conveyed because the agents undercut the *Miranda* warnings before they were given and as they were giving them………………………………………………………………………39

    B.    Mr. Manuchekhri's waiver of his rights wasn't knowing and voluntary…………………………………………………………………..43

    C.    The portion after Mr. Manuchekhri invoked his right to remain silent, by saying ███████████████," must be suppressed…………...45

    D.    Count five, charging Mr. Manuchekhri with making false statements during an unlawful interrogation must be dismissed…………………46

    E.    An evidentiary hearing is necessary………………………………...47

Conclusion……………………………………………………………………48

# Table of Authorities

## Cases

*Anderson v. Terhune,*
 516 F.3d 781 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Berghuis v. Thompkins,*
 560 U.S. 370 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 45

*Brigham City v. Stuart,*
 547 U.S. 398 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Camara v. Mun. Court of S.F.,*
 387 U.S. 523 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Coolidge v. New Hampshire,*
 403 U.S. 443 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Demaree v. Pederson,*
 887 F.3d 870 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Franks v. Delaware,*
 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

*Groh v. Ramirez,*
 540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 36

*Horton v. California,*
 496 U.S. 128 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Illinois v. Gates,*
 462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Grand Jury Proceedings,*
 716 F.2d 493 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Malley v. Briggs,*
 475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Marron v. United States,*
 275 U.S. 192 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Maryland v. Garrison,*
  480 U.S. 79 (1987)...................................................22

*Massachusetts v. Shepherd,*
  468 U.S. 981 (1984)..................................................23

*McDonald v. United States,*
  335 U.S. 451 (1948)..................................................23

*Miranda v. Arizona,*
  384 U.S. 436 (1966)...........................................39, 42, 45

*Missouri v. Seibert,*
  542 U.S. 600 (2004).........................................39, 40, 41, 48

*Moran v. Burbine,*
  475 U.S. 412 (1986)..................................................43

*People v. Dunbar,*
  24 N.Y.3d 304 (N.Y. 2014)............................................41

*Rhode Island v. Innis,*
  446 U.S. 291 (1980)..............................................39, 40

*Riley v. California,*
  573 U.S. 373 (2014)...........................................24, 29, 32

*Stanford v. State of Texas,*
  379 U.S. 476 (1965)..................................................23

*United States v. Abboud,*
  438 F.3d 554 (6th Cir. 2006).........................................31

*United States v. Bertini,*
  2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023).........................27, 37

*United States v. Brown,*
  347 F. Supp. 2d 920 (D. Or. 2004)....................................42

*United States v. Ceccolini,*
  435 U.S. 268 (1978)..................................................36

*United States v. Chartier,*
  No. 17-CR-0372(JS), 2021 WL 3795352 (E.D.N.Y. Aug. 26, 2021).........46

*United States v. Clark*,
   638 F.3d 89 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Comprehensive Drug Testing, Inc.*,
   621 F.3d 1162 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Diaz*,
   841 F.2d 1 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Falso*,
   544 F.3d 110 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Fox*,
   No. 23-CR-227 (NGG), 2025 WL 2147974 (E.D.N.Y. July 29, 2025) . . . . . . . . 48

*United States v. Galpin*,
   720 F.3d 436 (2d. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*United States v. Ganias*,
   824 F.3d 199 (2d. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Garcia*,
   No. 3:20-CR-00058 (KAD), 2023 WL 4850553 (D. Conn. July 28, 2023) . . . 27, 37

*United States v. Garlick*,
   No. 22-CR-540 (VEC), 2023 WL 2575664 (S.D.N.Y. Mar. 20, 2023) . . . . . . . . 27

*United States v. Gaudin*,
   515 U.S. 506 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Gonzalez*,
   719 F. Supp. 2d 167 (D. Mass. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*United States v. Griffith*,
   867 F.3d 1265 (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Guzman*,
   No. S5 97 CR (SAS), 1998 WL 61850 (S.D.N.Y. Feb. 13, 1998) . . . . . . . . . . . 28

*United States v. Kow*,
   58 F.3d 423 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Lauria*,
   70 F.4th 106 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 32

*United States v. Lebowitz*,
  647 F.Supp.2d 1336 (N.D. Ga. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Leon*,
  468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36, 37

*United States v. Matias*,
  836 F.2d 744 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Medunjanin*,
  752 F.3d 576 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*United States v. Moran*,
  349 F. Supp. 2d 425 (N.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Murphy*,
  703 F.3d 182 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*United States v. Opoku*,
  556 F. Supp. 3d 633 (S.D. Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Rajaratnam*,
  719 F.3d 139 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Ramirez*,
  523 U.S. 65 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Raymonda*,
  780 F.3d 105 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Reilly*,
  76 F.3d 1271 (2d Cir. l996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

*United States v. Rios*,
  881 F. Supp. 772 (D. Conn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Rosa*,
  626 F.3d 56 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Rubinstein*,
  2010 WL 2723186 (S.D. Fla. June 24, 2010) . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Santos*,
  No. 23-CR-436 (OEM), 2024 WL 3566983 (E.D.N.Y. July 29, 2024) . . . . . . . . 28

*United States v. Shipp*,
   392 F.Supp.3d 300 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Silva*,
   146 F.4th 183 (2d Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*United States v. Singh*,
   390 F.3d 168 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Skyfield*,
   No. 23-CR-569 (LJL), 2023 WL 8879291 (S.D.N.Y. Dec. 22, 2023) . . . . . . . . 28

*United States v. Vilar*,
   2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Voustianiouk*,
   685 F.3d 206 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Wey*,
   256 F. Supp. 3d 355 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . 31, 33, 36

*United States v. Winn*,
   79 F. Supp. 3d 904 (S.D. Ill. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Varnish v. Best Medium Pub. Co.*,
   405 F.2d 608 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Wong Sun v. United States*,
   371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## Statutes & Rules

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 875 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 46

18 U.S.C. § 1546 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2339B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

x

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Fed. R. Crim. P. 12(b)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Introduction

Mansuri Manuchekhri is a long-distance truck driver who grew up in Tajikistan. He has never been convicted of any crime. Last winter, he was asleep at home in Brooklyn when a large group of FBI agents, carrying what appeared to be military assault rifles, dressed in full battle camouflage and helmets, arrived at Mr. Manuchekhri's house at 5:00 a.m. In Tajikistan, people are tortured if they refuse to answer police questions. And, Mr. Manuchekhri, who had no experience with the American criminal legal system, was immediately cooperative. He answered agents' questions, including providing his cellphone passcode, and agents reassured him everything would be sorted out after talking to them. He wasn't read his *Miranda* rights until 2 ½ hours later, and, even then, agents told him those rights weren't a big deal. In this context, his interrogation was unconstitutional.

By the time of his arrest, the agents had also already searched his electronic accounts pursuant to a search warrant that made no mention of Mr. Manuchekhri using those electronic accounts in connection with any alleged crime. That warrant application relied on information that the government later learned was false. The government hasn't explained how or when it learned that information was false, and subsequent warrants never made these errors clear.

As explained below, this Court should suppress the information seized pursuant to the search warrants as well as his post-arrest interrogation statements.

1

## Statement of Facts

<u>Warrant application to search three Apple and iCloud accounts</u>

On ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1] The following are attached as exhibits to this motion:

Ex. A:  November 5, 2024, warrant & application, MM_338-369
Ex. B:  February 7, 2025, warrant & application for x0707 cell phone, MM_371-438
Ex. C:  Mr. Manuchekhri's recorded post-arrest interrogation
Ex. D:  body camera footage of Mr. Manuchekhri's arrest, excerpt from MM_5300.
Ex. E:  body camera footage of Mr. Manuchekhri's arrest, excerpt from MM_5302

Bate stamp numbers are used as the page citations within each exhibit. The preface for each bate stamp number is "MM," but for ease of reading only the number that follows "MM" is used throughout this motion. Due to the protective order in this case, all exhibits are submitted under seal. Exhibits C-E are ████████████████████████████████████

2









6

[REDACTED]

[REDACTED]

This allegation was completely unconnected to any telephone or electronic account.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

7





This boiler plate language was completely unconnected to Mr. Manuchekhri, the probable cause, or even the specific crimes alleged. Instead, this same generic language could be copied and pasted into any warrant application.



9



Because this motion focuses on the first warrant application, it will use the titles provided in that application throughout the motion.

10



Mr. Manuchekhri's arrest

11

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

<u>Mr. Manuchekhri's lack of fluent English comprehension was immediately clear</u>.

███████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

---

[5] The body camera videos don't show any real times, so time stamps noted here are references to the number of minutes into the recording. Thus, time stamps are approximate and any errors in precision are inadvertent.

13

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████

<u>Two and a half hours pass before Mr. Manuchekhri is given his *Miranda*</u>
<u>warnings</u>

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



Missing body camera videos

14

████████████████████████████████████████████████████

██████████████████████████████████████, about two hours of the agents'

conversations and interactions with Mr. Manuchekhri that morning were unrecorded.

Despite requests, the government has not explained why.

████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

15





Case 1:25-cr-00088-HG    Document 35    Filed 12/15/25    Page 28 of 60 PageID #: 330

17







**Argument**

**Point I**

**The three seized Apple and iCloud accounts were not sufficiently connected to the probable cause asserted in the warrant application and the evidence seized should be suppressed.**

The government received a warrant to do an expansive search of the entirety of three of Mr. Manuchekhri's electronic Apple and iCloud accounts based on a warrant application that made no mention of Mr. Manuchekhri using electronic accounts in connection with any of the alleged criminal offenses. Indeed, the probable cause portion of the warrant application not only made no reference to electronic data, but also only tangentially referenced telephone ████████████████████ ████████████████ There was no reference in the application to any of the types of data sought by the warrant: the application didn't assert that he texted or emailed in connection with any of the alleged offenses or did anything else using electronic data.

Because there was an insufficient nexus between the probable cause and the entire data set of three Apple and iCloud accounts associated with Mr. Manuchekhri, information seized pursuant to this warrant should be suppressed.

A. <u>Legal Standard</u>

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

21

seizures." U.S. Const. amend. IV. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* The Fourth Amendment "safeguard[s] the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 528 (1967). For a warrant to issue, a neutral and detached magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015).

To "prevent general searches," and to ensure "that the search will be carefully tailored to its justifications," warrants also must be particular, to "limit[ ] the authorization to search to the specific areas and things for which there is probable cause to search." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "[A] failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *United States v. Galpin*, 720 F.3d 436, 446 (2d. Cir. 2013) (citation and quotation marks omitted).

Search warrants must also be narrowly tailored. A warrant is overbroad if it authorizes the seizure of evidence beyond that supported by the probable cause set

forth in the application. *United States v. Lebowitz*, 647 F.Supp.2d 1336, 1351 (N.D. Ga. 2009). "Overbroad warrants authorize the seizure of things for which there is no probable cause." *United States v. Rubinstein*, 2010 WL 2723186 at *8 (S.D. Fla. June 24, 2010).

The warrant application must also demonstrate a "nexus" between the "items sought and the particular place to be searched." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (the requirement of a nexus "protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials to search where they pleased.") (cleaned up) (citing *Stanford v. State of Texas*, 379 U.S. 476 (1965)). *See also United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (explaining that a search warrant must "establish[ ] a sufficient nexus between the criminal activities alleged"). The nexus requirement is designed to make "general searches . . . impossible and prevent[ ] the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927).

These requirements of nexus, particularity, and narrowness "are not 'formalities.'" *United States v. Voustianiouk*, 685 F.3d 206, 210 (2d Cir. 2012) (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)). "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Shepherd*, 468 U.S. 981, 988 n. 5 (1984); *see also Groh v. Ramirez*, 540 U.S. 551, 563 (2004) (when

23

warrant did not particularly describe things to be seized, "proceeding with the search was clearly 'unreasonable' under the Fourth Amendment").

    a.  Search warrants for electronic data require particular care.

The Fourth Amendment's requirements are particularly important with respect to searches of digital data, which, in modern society, often contain the most intimate details of a person's life. As the Supreme Court has explained, a cell phone search "would typically expose to the government far *more* than the most exhaustive search of a house. A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form." *Riley v. California*, 573 U.S. 373, 396–97 (2014). Indeed, the "sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions." *Id.* at 394. By combing through such data – essentially a "digital record of nearly every aspect of [people's] lives" – the government can learn information about a person's medical history, political affiliations, hobbies, sexual interests, religious beliefs, and financial concerns; it can even "reconstruct someone's specific movements down to the minute." *Id.* at 395-96. Therefore, such searches "implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 393.

These concerns are even more heightened in a search like the one done here: Apple and iCloud back up and store all of a cell phones' data. As the warrant

24

application notes, each of these accounts include essentially all imaginable types of electronic data (including deleted data), such as messages, emails, photos, bookmarks, notes, reminders, calendar entries, voicemails, sign-on logs, purchases, location data, and other files and back-up files. Ex. A at 357-58. In other words, these accounts contain an even more expansive digital record for a longer time period of "nearly every aspect" of someone's life than the data stored on a physical phone would.

Because the amount of personal information the government can learn by searching through an individual's digital records is so vast, and because there is such a high potential for warrants to peruse digital data to take on the form of general warrants, it is especially important that the Fourth Amendment's requirements be scrupulously honored in the digital context. *See, e.g., United States v. Lauria*, 70 F.4th 106, 128–129 (2d Cir. 2023). Indeed, in the digital realm, the mandates of the Fourth Amendment, such as the particularity requirement, "assume[ ] even greater importance." *See Galpin*, 720 F.3d at 446. There is "enormous" "potential for privacy violations occasioned by an unbridled, exploratory search of [electronic devices]," a "threat [that] is compounded by the nature of digital storage." *Id.* at 447.

Moreover, digital accounts, "unlike drugs or other contraband, [are] not inherently illegal, there must be reason to believe that [digital accounts] may contain evidence of the crime" in order for a warrant to issue. *United States v. Griffith*, 867 F.3d 1265, 1274 (D.C. Cir. 2017) (in context of cell phone search).

25

B. <u>None of the alleged crimes were connected to Mr. Manuchekhri's digital accounts.</u>

The warrant application here made no effort to connect any of the three Apple accounts to the asserted probable caus███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

There was no reference to any of the types of data sought by the warrant: the application didn't assert that he texted or emailed in connection with any of the alleged offenses or did anything through electronic means other than these few calls.

a. <u>The agent's "training and experience" that data connected to Apple IDs</u> ████ ███████████████████████████████████████████ <u>didn't provide probable cause to search three of Mr. Manuchekhri's Apple accounts.</u>

Rather than connect any of the alleged crimes to Mr. Manuchekhri's digital accounts, the warrant application includes boiler plate language about the agent's "training and experience" that is completely unconnected to any specific facts about Mr. Manuchekhri or the charged crimes. Instead, the vague "training and experience" assertion is insufficient to connect three of Mr. Manuchekhri's Apple accounts to the charged crimes.

"Numerous courts in this Circuit have held that such 'blanket generalizations about the widespread use of cellphones [in crimes] are not sufficient to demonstrate probable cause.'" *United States v. Banyon*, 25-cr-208 (JSR) (July 14, 2025 S.D.N.Y)

(rejecting as insufficient stated that people store selfies on their phones, so the defendant's phone could contain a selfie of him wearing a specific backpack relevant to the alleged crime).[6] *See United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023) ("What is missing here is some " 'case-specific evidence' " that " 'nudge[s] [Agent Harper's] training and experience across the line from sheer speculation to probable cause"; training and experience stated that "individuals often use cellphones for unrelated reasons prior to and/or following the commission of their criminal activity, and keep the cellphones on their person during the interim"); *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *7 (D. Conn. July 28, 2023) ("people who commit crimes often communicate with their co-conspirators, before, during and after the commission of such crimes" and that "[t]he most common method of communications is through cellular phones"). *See also United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *6 (S.D.N.Y. Mar. 20, 2023) ("If there were no independent evidence that Defendant used his online accounts to make purchases, Agent Ford's knowledge based on his training and experience that felons frequently purchase weapons through online means would have likely been inadequate to establish probable cause."); *United States v.*

---

[6] As Judge Rakoff also noted, "while it is certainly reassuring to learn that it was because of his professional training and experience that [the agent] learned that people commonly use phones to take selfies -- what a discovery! -- this insipid generalization is hardly sufficient to support rummaging at will through a cellphone's photographs." *Banyon*, 25-cr-208 (JSR) at 13.

27

*Opoku*, 556 F. Supp. 3d 633, 644 (S.D. Tex. 2021) ("generalizations about the use of cellphones to coordinate, plan, and execute events apply no more so to [people who commit crimes] than they do to every cellphone user in modern life."). *See also United States v. Santos*, No. 23-CR-436 (OEM), 2024 WL 3566983, at *1 (E.D.N.Y. July 29, 2024), vacated and remanded, No. 24-2301, 2025 WL 2461770 (2d Cir. Aug. 27, 2025) (upholding district court's finding that there was insufficient probable cause, but vacating finding on good faith).

"Permitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *United States v. Guzman*, No. S5 97 CR 786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) (internal quotation marks and citation omitted).

The Constitution demands more. "Particularly in an era in which smartphones are widespread, the notion that an agent could establish probable cause to search an entire phone based on the truism that criminals' phones often bear traces of their criminality is redolent of the 'general warrants' reviled by the Founding generation." *United States v. Skyfield*, No. 23-CR-569 (LJL), 2023 WL 8879291, at *15 (S.D.N.Y. Dec. 22, 2023) (internal citations omitted). "It would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cellphone."

28

*Riley*, 573 U.S. at 399. The same is true with respect to the Apple and iCloud digital accounts.

Moreover, *United States v. Silva*, 146 F.4th 183 (2d Cir. 2025), isn't to the contrary. In *Silva*, the court found that there was probable cause to search Silva's cell phone based on a warrant application that alleged racketeering-conspiracy, membership in a gang, wire fraud and digital financial crimes. The warrant application in *Silva* "identified particular attributes" of those alleged crimes that supported a reasonable inference that his cell phone would have evidence of those crimes, *id.* at 186, something the agent did not do here. The agent in *Silva* also described his training and experience more specifically than in Mr. Manuchekhri's application, stating that his experience had showed how "gang members" use "cell phones" to operate and "coordinate." *Id.* at 187. The *Silva* court noted that "it matter[ed] that the alleged offenses here—gang violence, financial crimes, and flight from justice—can be evidenced and manifested electronically in many ways." *Id.* The court stated that the "law-enforcement affiant's claim to expertise may <u>support</u> a probable-cause determination where it is <u>combined with enough other specific, factual allegations</u> that tend to link the alleged criminal conduct to the place to be searched." *Id.* at 190.

Here, there was no other "specific factual allegations that tend[ed] to link the alleged criminal conduct" to the Apple and iCloud accounts. The probable cause didn't relate to a crime that logically required regular communication among participants. Also, unlike the application in *Silva*, the training and experience portion

29

of the application here was also completely non-specific, not even explaining what types of crimes the agent believed were generally connected with the use of Apple and iCloud accounts.

Additionally, *Silva* specifically noted the "limitations" of the holding, explaining that Silva had failed to "challenge to scope of the warrant," and that in a "different case, a defendant may argue that the breadth of the description…of the places to be searched outruns the probable cause." *Id.* at 192-93 (cleaned up). As explained below, the warrant here was also overbroad.

C. <u>The warrant was overboard in allowing the seizure of the entirety of three electronic accounts, without limitation or connection to the asserted probable cause.</u>

Here, the warrants were also overboard in three respects: 1. The seizure of the electronic accounts associated with ▮▮▮▮▮▮▮▮ was based solely on ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮those numbers. These accounts had even less connection to the asserted probable cause than the account connected to ▮▮▮ 2. The seizure of the accounts going back all the way to their creation, starting in 2017 for two accounts and 2020 for the third account, despite the probable cause statement being limited to more discrete time periods of 2017, 2022 and 2023; 3. The seizure of the entire data set of each account, without limitation on the types of data that might be connected to the probable cause. Each of these aspects of the warrant was overbroad and non-particular, allowing the government to do a sweeping search of eight years of Mr. Manuchekhri's digital life. This too was unconstitutional.

"In determining whether a warrant is overbroad, courts must focus on 'whether there exists probable cause to support the breadth of the search that was authorized.'" *United States v. Shipp*, 392 F.Supp.3d 300, 307 (E.D.N.Y. 2019), *aff'd*, No. 21-1284-CR, 2022 WL 16543193 (2d Cir. Oct. 31, 2022) (citations omitted). Especially in the digital context, warrants allowing far-reaching searches of all of an individual's data are insufficient to "link that evidence to the criminal activity supported by probable cause." *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010). A "general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be akin to a residence in terms of the scope and quantity of private information they may contain." *Shipp*, 392 F.Supp.3d at 307 (cleaned up). A "warrant's temporal limitation, or the absence of one, may be a factor in determining overbreadth." *Banyon*, 25-cr-208 at 9 (citing *United States v. Wey*, 256 F. Supp. 3d 355, 381 (S.D.N.Y. 2017)). *See also United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." (internal citation omitted)); *United States v. Diaz*, 841 F.2d 1, 4-5 (1st Cir. 1998) (warrant authorizing seizure of records that predated first incident of criminality cited in affidavit was overbroad). *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (warrant improperly allowed seizure of records without limitation to time period when criminal activity took place); *Diaz*, 841 F.2d at 4-5 (warrant that authorized seizure of records predating first incident of criminality was overbroad); *In re Grand Jury Proceedings*, 716 F.2d 493, 499

31

(8th Cir. 1983) (fraud in two financial transactions could not support warrant covering entire seven years of bail bondsman's records).

In *United States v. Lauria*, the Second Circuit recently cautioned against warrants authorizing such "broad" electronic searches "supported by few facts." 70 F.4th at 128-29 (holding the "two" "facts" in a corrected search warrant affidavit were "insufficient to demonstrate a 'reasonable probability' that the sought months of records for [defendant's] cellphone would contain evidence pertaining to [the offense]"). Criticizing expansive warrants for electronic data, the Circuit expressed that a warrant authorizing months' worth of cellphone data "calls for some caution in assessing probable cause because, as the Supreme Court has observed, modern cellphone usage is so ubiquitous that this type of [ ] information can reveal not only nearly the whole of an individual's movements but also, in the process, much more about his personal and professional life." 70 F.4th at 128-29 (citing *Riley*, 573 U.S. at 385).

"If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional..." *Horton v. California*, 496 U.S. 128, 140 (1990). "[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items…." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). *See also, United States v. Winn*, 79 F. Supp. 3d 904, 919-20 (S.D. Ill. 2015) (warrant overbroad when it allowed seizure of all files on cellphone,

32

since no explanation in warrant application of how files like calendars and GPS history connected to criminal activity); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) ("*CDT*") (en banc) ("The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect."), *overruled in part on other grounds by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018); *Wey*, 256 F.Supp.3d at 386 (warrant containing no practical guidance for agents to distinguish between materials of evidentiary value and those obviously devoid of it constituted a general warrant).

D. <u>The Court should order a *Franks* hearing because the bulk of the asserted probable cause was based on ███████████████████████ the government has since disavowed.</u>

The challenged warrant application was based, in large part, on information provided ███████████████████████████████████████████████████████████████████████████████████████████████████████████ The government later decided that information was wrong. Despite relying on information that it later discovered was wrong, the government never clearly corrected its error. Instead, in a subsequent application and the complaint, it first, switched the title for ████████████ ███████, which seemed designed to obscure that it was the same person, and, second, explained that this individual provided different information in the past,

without explaining that the incorrect information was relied on by the government in the previous warrant application.

The government's reliance on information that it now believes is not true combined with its failure to make this mistake clear to the court in subsequent submissions should give this Court considerable pause. Indeed, despite a defense request, the government still hasn't provided the defense sufficient information to assess when the government learned its error and whether it made this error in reckless disregard for the truth.

That the government relied on misinformation in the warrant application that it has still failed to explain should be sufficient for this Court to order a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 154 (1978) ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required, but if the remaining content is insufficient, the defendant is entitled under the Fourth and Fourteenth Amendments to a hearing.").

A defendant is entitled to a hearing under *Franks* if he makes a "'substantial preliminary showing' that a deliberate falsehood or a statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso,* 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks,* 438 U.S. at 155-56). An agent "recklessly disregards" the truth in the *Franks* context when he or she "makes allegations while

34

entertaining serious doubts about the[ir] accuracy," *see United States v. Vilar*, 2007 WL 1075041, at *26 (S.D.N.Y. Apr. 4, 2007) (collecting authorities), or while "aware of a high probability" that the allegations "might be false." *Varnish v. Best Medium Pub. Co.*, 405 F.2d 608, 623 (2d Cir. 1968). An omission satisfies the *Franks* standard if it was "'designed to mislead,' or … was 'made in reckless disregard of whether [it] would mislead' the magistrate." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quotation omitted). The defense should make an "offer of proof," "point out specifically the portion of the warrant affidavit that is claimed to be false," and provide "a statement of supporting reasons." *Franks*, 438 U.S. at 171.

If the hearing demonstrates that the warrant affidavit included false material and that, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156; *see also Rajaratnam*, 719 F.3d at 146. If a search warrant is void under *Franks*, the good-faith exception to the exclusionary rule does not apply. *See United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Reilly*, 76 F.3d 1271, 1280-81 (2d Cir. l996).

E.  Suppression is the appropriate remedy.

The affidavits in support of the warrants to search Mr. Manuchekhri's three electronic accounts lacked any case-specific indication that evidence of the suspected offense would be found on his phone. The government then seized vast quantities of

35

information, including data that could not possibly have been relevant to the crime under investigation. Law enforcement used this illegal seizure to seek additional warrants for further information.

This is "precisely the sort of circumstances, rare or not, that call for blanket suppression." *Wey*, 256 F.Supp.3d at 410. This remedy should include suppression of the witness's testimony and other fruits of the illegal search. *United States v. Ceccolini*, 435 U.S. 268, 274-75 (1978); *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). This governs both the Fourth Amendment analysis and the acceptable execution of a search warrant. *United States v. Ramirez*, 523 U.S. 65, 71 (1998). No reasonable law enforcement agent can rely upon unparticularized and overbroad warrants, which lack a sufficient nexus between the asserted probable cause and the areas to be searched. *Cf. United States v. Leon*, 468 U.S. 897 (1984). Instead, search and seizure pursuant to an obviously deficient warrant is, like a warrantless search and seizure, presumptively unreasonable. *Groh*, 540 U.S. at 558-59; *see also Coolidge v. New Hampshire*, 403 U.S. 443, 469 (1971). Such is the case here.

Because the warrant doesn't have any connection between the seized accounts and the asserted probable cause, the government will no doubt seek refuge in the "good faith" exception to the Fourth Amendment's exclusionary rule. "Good faith," however, "is not a magic lamp for police officers to rub whenever they find

themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (1996). The good faith exception does not apply when the warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citations omitted). *See also United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *12 (S.D.N.Y. Nov. 29, 2023) (finding good faith exception inapplicable because "the search warrant affidavit was so lacking in indicia of probable cause as to render reliance upon it unreasonable") (cleaned up)); *Garcia*, 2023 WL 4850553, at *13 (granting suppression of electronic data seized pursuant to iPhone warrant because "the warrant was so defective that the detectives had no objectively reasonable basis for relying upon it"); *United States v. Moran*, 349 F. Supp. 2d 425, 477-78 (N.D.N.Y. 2005) (finding the *Leon* exception inapplicable and granting motion to suppress evidence seized from defendant's home "where no facts" and "no basis whatsoever" connected any probable cause to the place searched); *United States v. Rios*, 881 F. Supp. 772, 776-77 (D. Conn. 1995) (holding that an agent's "general averments based on her training and experience do not, standing alone, constitute 'substantial basis' for the issuance of this search warrant"). Accordingly, no agent could have relied on either warrant in good faith. *See Malley v. Briggs*, 475 U.S. 335, 345–46 (1986) (officer could not rely on good faith exception when he knew he lacked probable cause to make warrant application).

The Court should suppress, or, in the alternative, hold an evidentiary hearing. *See, e.g., Banyon*, 25-cr-208 (JSR); *Bertini*, 2023 WL 8258334; *Garcia,* 2023 WL 4850553.

37

*See also United States v. Ganias*, 824 F.3d 199, 207-08 (2d. Cir. 2016) (noting that district court held a two-day hearing related to a challenge that a search warrant was issued in violation of the Fourth Amendment).

### Point II

**Mr. Manuchekhri's recorded statement should be suppressed because a) the agents undercut the warnings by telling him the opposite of *Miranda* and that talking to agents** ███████ ██████████████ **; b) he didn't knowingly and intelligently waive his rights, a decision incorrectly described to him as** ██████████████ **and c) agents didn't stop questioning him when he twice tried to invoke his right to remain silent.**

Mr. Manuchekhri had been in custody for 2 ½ hours before he heard his *Miranda* rights. In that time, the agents questioned him, getting him to reveal his phone password, conveyed the clear message that he had no choice but to speak to the agents, and strongly implied that talking would be in his benefit and get things ██████████████, just before he waived his rights, which were described to him – a non-fluent English speaker from Tajikistan – as ████████ the agents assured him that the waiver was ██████████ Finally, when he tried to exercise his rights, the agents ignored him. This procedure violated Mr. Manuchekhri's *Miranda* rights at each stage: he was questioned without the rights, primed to waive his rights, and then was unable to exercise his rights successfully. This violated the clear mandate of *Miranda*.

The prosecution bears a "heavy burden" to show compliance with the *Miranda* procedure by "at least the preponderance of the evidence." *Missouri v. Seibert*, 542 U.S. 600, at 608 n.1 (2004); *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). They cannot do so here.

A. *Miranda* was never effectively conveyed because the agents undercut the *Miranda* warnings before they were given and as they were giving them.

Before telling Mr. Manuchekhri that anything he said could be used against him, the agents primed him to waive or misunderstand his *Miranda* rights: right after he was arrested, Mr. Manuchekhri was repeatedly instructed that he would be talking to agents. He wasn't told that he would have the *choice* whether to talk to agents, but that he definitively would be talking to them. He was also told that when he talked to them, everything would get ▮▮▮▮▮ – strongly implying that talking to them was to his benefit. The pre-*Miranda* statements by the agents conveyed the clear message that Mr. Manuchekhri had no choice but to speak to the agents, that doing so would be in his benefit. These statements undercut the effective conveyance of *Miranda*.

The now-familiar *Miranda* case created a bright-line per se rule: no custodial interrogation may proceed until *Miranda* warnings are effectively and adequately conveyed and the defendant knowingly, intelligently, and voluntarily waives his rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). Interrogation includes "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01

39

(1980). This includes "words or actions on the part of the police" "that the police should know are reasonably likely to elicit an incriminating response." *Id.*

The prosecution's heavy burden to show that the defendant's rights were effectively and adequately conveyed is not met merely by a "talismanic" showing that Miranda was recited in full. *Seibert*, 542 U.S. at 613 (plurality opinion). In fact, it would be "absurd to think that mere recitation of [*Miranda* warnings] suffices" in every circumstance. *Id.* In this case, the agents' pre-*Miranda* remarks during the recorded interrogation prevented the effective conveyance of the *Miranda* warnings by completely undermining their meaning and importance.

This priming to waive his *Miranda* rights started shortly after Mr. Manuchekhri was arrested, about 2 ½ hours before he was given his rights. Agents told him that

MM_5302 at 8:15-45. The message was that talking to the agents was just a normal part of the process that Mr. Manuchekhri had no choice but to participate in.

After the 2-hour gap in recording, the agents continued to prime Mr. Manuchekhri to waive his *Miranda* rights. By this point, the agents had been talking to him for 2 ½ hours without *Miranda* warnings, including asking for his cell phone passcode without giving him any *Miranda* warnings. The agents then prefaced the actual warnings by saying that they would be

40

███████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

Because the officers misled Mr. Manuchekhri about his rights before telling him what those rights were, *Miranda* was never effectively conveyed. *Seibert*, 542 U.S. 600 (procedure of interrogating the suspect, then providing *Miranda* warnings, and re-interrogating the suspect, undercut effectiveness of *Miranda* warnings); *People v. Dunbar*, 24 N.Y.3d 304, 316 (N.Y. 2014) (pre-*Miranda* remarks were "at best confusing and at worst misleading" and "rendered the subsequent Miranda warnings inadequate and ineffective").

Only after all of these prefatory remarks that undercut what he would later learn were his rights did the agents give Mr. Manuchekhri a copy of the warnings in Russian. Although a Russian interpreter was in the room, that Russian interpreter didn't translate what the agents said. After Mr. Manuchekhri read the form silently, the agent was again dismissive of the importance of the form, saying, "████████

████████████████████████████████████████████████

████████████████ Ex. C at 7:00.

Suppression may be required if law enforcement conveys the warnings in a manner designed to result in a waiver. *See United States v. Gonzalez*, 719 F. Supp. 2d 167, 180 (D. Mass. 2010) (finding that the "*Miranda* warnings administered were

█

inadequate," in part, because they were "given in a manner likely to minimize the risk that they would be understood and exercised"). In *Gonzalez*, for example, a district court suppressed a statement when the officer "read the warnings quickly, in a way designed to minimize the risk that [the suspect] would exercise his *Miranda* rights." *Id.* at 177. Similarly, in *Brown*, a district court suppressed a statement when the agent had a suspect himself read the *Miranda* warnings aloud, but "made no effort to review the advice of rights form with defendant after defendant read it aloud in order to ensure defendant comprehended what he read aloud." *United States v. Brown*, 347 F. Supp. 2d 920, 923-24 (D. Or. 2004) (the agent's "procedure of requiring defendant to read the advice of rights form aloud was not adequate to provide defendant with an effective appraisal of his rights").

Finally, by questioning Mr. Manuchekhri first, telling him it was to his benefit to talk, and presenting his rights as no big deal, the agents also did not adequately convey that they would honor his rights. This too is problematic. The *Miranda* warnings are designed not just to inform a suspect of his rights but also to "show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it." *Miranda* 384 U.S. at 468. Indeed, the agents didn't honor Mr. Manuchekhri's rights – as explained below, when he told them he didn't want to say anything else, twice, they just kept questioning him.

His statements should be suppressed.

B.    Mr. Manuchekhri's waiver of his rights wasn't knowing and voluntary

Even if this Court finds that Mr. Manuchekhri's *Miranda* rights were effectively conveyed, it should still find that Mr. Manuchekhri, given his individualized circumstances, did not knowingly and voluntarily waive those rights. A defendant must understand his *Miranda* rights to waive them. The government has not shown that Mr. Manuchekhri's waiver was made with the required "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986). *See also United States v. Murphy*, 703 F.3d 182, 194 (2d Cir. 2012) (suppressing statements because government did not prove defendants understood their rights or knowingly waived them).

On the contrary, the statements by the agents undercutting *Miranda* served their purpose. Mr. Manuchekhri, based on their statements to him, believed that he had to talk to the agents and that signing the *Miranda* form wasn't " █████████ but just what he was supposed to do. Mr. Manuchekhri, who is from Tajikistan, had no experience with the American criminal justice system. He didn't know whatever American police procedural movies the agents kept referencing. He frequently misunderstood nuance and complexity in English. He didn't realize that, in America, he could refuse to speak to law enforcement. By the time the agents read him his *Miranda* rights – in English, despite the presence of the interpreter – with information contradicting what they had already said, and what they had already done – ask Mr. Manuchekhri to give them

43

information that helped incriminate him, Mr. Manuchekhri did not understand he could actually say no.

There was also no reason to think that he would have understood that the agents initial comments that talking would be to his benefit were wrong, while the later comment that talking could be used against him was correct. On the contrary, in Tajikistan, procedural protections during police interrogations aren't enforced. Instead, a failure to cooperate often results in torture or other ill-treatment. As an Amnesty International report explains, in Tajikistan, the "practices of torture and other ill-treatment" are widespread and people in "early stages of detention were at particularly risk, subjected to torture or other ill-treatment by law enforcement officers in order to 'solve' crimes by obtaining confessions of guilt and to obtain money." Amnesty International report, "Tajikistan: Shattered lives: Torture and other ill-treatment in Tajikistan," July 12, 2012, available at https://www.amnesty.org/en/documents/EUR60/004/2012/en/. This is true despite theoretical legal protections: "the law guarantees a detainee the right to see a lawyer immediately after detention," "in practice detainees are routinely held incommunicado while initial interrogations are conducted, often without a lawyer." *Id.* *See also* Helsinki Foundation for Human Rights, "Torture and ill-treatment in Kazakhstan, Kyrgyzstan and Tajikistan," September 23, 2016, available at https://www.osce.org/files/f/documents/8/b/266986.pdf (reporting similar abuse by police); United States Department of State, Country Reports on Human Rights

44

Practices for 2011, Tajikistan, available at

https://www.justice.gov/eoir/media/310671/dl?inline= ("Some security officials

reportedly continued to use beatings or other forms of coercion to extract confessions

during interrogations"). This has not significantly changed recently. *E.g.,* 2024 United

States Department of State, Country Reports on Human Rights Practices: Tajikistan,

2024, available at  https://www.state.gov/reports/2024-country-reports-on-human-

rights-practices/tajikistan ("While authorities took some steps to hold perpetrators

accountable, reports of abuse and mistreatment of prisoners continued, and a culture

of impunity and corruption weakened investigations and prosecution.").

In this context, when the agents actively undermined his *Miranda* rights by

implying talking was to his benefit and that waiving his rights was no big deal, and

given that in Mr. Manuchekhri's home country, answering interrogation questions is

required, he did not knowingly and voluntarily waive his rights.

C. <u>The portion after Mr. Manuchekhri invoked his right to remain silent, by
   saying "I don't want to say anything," must be suppressed.</u>

"[I]f the individual … indicates in any manner that he does not wish to be

interrogated, the police may not question him." *Miranda*, 384 U.S. at 445. *See also*

*Berghuis v. Thompkins*, 560 U.S. 370, 388 (2010) ("If the right to counsel or the right to

remain silent is invoked at any point during questioning, further interrogation must

cease."); *United States v. Medunjanin*, 752 F.3d 576, 585 (2d Cir. 2014) ("Once *Miranda*

warnings have been given, if the individual indicates that he wishes to remain silent,

the interrogation must cease") (internal quotation marks and citation omitted);

*Anderson v. Terhune*, 516 F.3d 781, 788 (9th Cir. 2008) (en banc) (finding person had

invoked right to remain silent when he had "twice attempted to stop the police

questioning using crystal-clear language [including] "I don't want to talk about this no

more").

Mr. Manuchekhri's statement that he did not "want to say anything," which he

repeated twice, was sufficient to exercise his right to remain silent. Mr. Manuchekhri's

statements made after his attempt to stop the interrogation should be suppressed. The

questioning that continued after this exercise of his right to remain silent must be

suppressed.

> D.     <u>Count Five, charging Mr. Manuchekhri with making false statements</u>
> <u>during an unlawful interrogation must be dismissed.</u>

Mr. Manuchekhri is charged with making false statements during this unlawful

interrogation. This charge should be dismissed because the interrogation was

unconstitutional.

Additionally, it should be dismissed as the allegedly false statements made

during his post-arrest interrogation weren't material, which is an element of the

charge under 18 U.S.C. § 1001. *United States v. Gaudin*, 515 U.S. 506, 509 (1995)

(cleaned up) (statements must be "material," meaning they "must have a natural

tendency to influence, or [be] capable of influencing, the decision of the

decisionmaking body to which it was addressed"). *See also United States v. Chartier*, No.

46

17-CR-0372(JS), 2021 WL 3795352, at *28 (E.D.N.Y. Aug. 26, 2021), *aff'd*, No. 22-3125, 2024 WL 3617023 (2d Cir. Aug. 1, 2024) ("proper inquiry is whether the defendant knew his actions would result in the obstruction of a specific judicial proceeding."). Nothing Mr. Manuchekhri said in his interrogation changed the course of the government's prosecution against him: Mr. Manuchekhri was already on his way to be arraigned for the very same charges that the agents were questioning him about.

In the alternative, this count must be severed from the rest of the indictment. The alleged false statements boil down to Mr. Manuchekhri asserting his innocence of counts one and four.[7] He is currently presumed innocent of those charges and whether or not Mr. Manuchekhri committed the other charged crimes will be the subject of his trial. It would be severely prejudicial to allow the government to put Mr. Manuchekhri on trial for the substantive offenses and, essentially, for defending himself against the substantive offenses during a post-arrest interrogation at the same time.

E.    An evidentiary hearing is necessary.

The Court should also hold an evidentiary hearing. Based on the videos provided, it is clear agents interrogated Mr. Manuchekhri before telling him his rights.

---

[7] Further discussion of the underlying legal standard for dismissal and severance can be found in the motion to dismiss count one, for a bill of particulars, and to sever count four, also filed today.

47

At the very least they asked ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████    The government, however, has refused to provide any further information about agents' questions or Mr. Manuchekhri's responses, instead claiming incorrectly that there was no substantive conversation in those 2 ½ hours.

This Court should hold a hearing related to this matter. If the agents asked Mr. Manuchekhri the same types of questions pre-*Miranda* that they then asked him about post-*Miranda*, this would be an additional basis to suppress. *See Seibert*, 542 U.S. at 613 (plurality opinion); *United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2147974 (E.D.N.Y. July 29, 2025) (after an evidentiary hearing, suppressing statements when pre-*Miranda* and post-*Miranda* questioning was similar).

## Conclusion

For the above-stated reasons, this Court should suppress all evidence obtained pursuant to the unconstitutional seizure and search of Mr. Manuchekhri's Apple accounts, including information seized pursuant to the subsequent warrants related to his phone, home, and Meta accounts, which relied on the fruits of the unlawful search. It should also suppress his interrogation statements and dismiss count five, which is based on the statements made during the interrogation. Alternatively, the Court should conduct an evidentiary hearing.

48

December 15, 2025
Brooklyn, New York

_____/s/

Jullian Harris-Calvin
Allegra Glashausser
Federal Defenders of New York
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(212) 417-8739
