UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MANSURI MANUCHEKHRI,

Defendant.

**MEMORANDUM & ORDER**
25-CR-0088 (HG)

**HECTOR GONZALEZ**, United States District Judge:

In the instant motion, Defendant Mansuri Manuchekhri moves: (i) to suppress various pieces of evidence; (ii) to suppress his post-arrest statement to law enforcement agents; and (iii) to dismiss, or in the alternative sever, Count V of the indictment, which charges him with making false statements during his post-arrest interview. *See* ECF No. 35; ECF No. 38 ("Suppression Motion").[1]

For the reasons set forth below, Defendant's motion is DENIED.[2]

---

[1]    Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").
    Defendant originally filed a redacted Suppression Motion. *See* ECF No. 35. About a month later, he filed a copy of the Suppression Motion without redactions. *See* ECF No. 38. In the cover letter attached to the unredacted Suppression Motion, Defendant represents that the "government has agreed that the unredacted version [of the Suppression Motion] can be publicly filed." *Id.* at 1. For the sake of clarity, the Court refers to the publicly available, unredacted version of the Suppression Motion (*i.e.*, the version available at ECF No. 38) and omits direct citation to the redacted version of Defendant's brief.

[2]    The Court initially issued this Order under seal on March 23, 2026, to give the parties an opportunity to move to seal any portion of this Order, if necessary. *See* ECF No. 52; Mar. 23, 2026, Text Order. In light of the parties' representation that neither seeks to seal any portion of this Order, *see* ECF No. 53, the Court is making the Order publicly available. With the exception of this footnote, the Order is unchanged.

## BACKGROUND

Defendant is charged with crimes related to an alleged scheme to materially support terrorism. On December 15, 2025, alongside two other motions,[3] Defendant filed the instant motion seeking to suppress various pieces of evidence and to dismiss, or sever, Count V of the indictment. *See* ECF No. 38. The government filed its omnibus opposition to Defendant's motions, including its opposition to the instant motion, on January 12, 2026, *see* ECF No. 36 ("Opposition"), and Defendant filed his reply about two weeks later, *see* ECF No. 40 (Defendant's Reply in Support of his Motion to Suppress).

Defendant moves to suppress two different types of evidence. First, he requests that the Court suppress "all digital evidence recovered pursuant to a search warrant for [his] Apple and iCloud accounts, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment of the United States Constitution," arguing that the three seized accounts (the "iCloud accounts") were not sufficiently connected to the probable cause asserted in the warrant and the evidence should contained therein should be suppressed. *See* ECF No. 38 at 1, 32–49. Second, Defendant seeks to suppress his "statements to government agents during a post-arrest interrogation, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fifth Amendment of the United States Constitution," arguing that law enforcement agents "undercut" the *Miranda* warnings, that he did not properly waive his rights, and that agents did not stop questioning him after invocation of the right to remain silent. *Id.* at 1, 49–59. Defendant also moves to dismiss Count V of the indictment "because the interrogation was unconstitutional" and the statements that constitute that charge

---

[3]    The Court issued its Orders on Defendant's motion to dismiss Counts II and III of the Indictment, ECF No. 33, and his motion for a Bill of Particulars, to dismiss Count I, and to sever Count IV, ECF No. 34, at the status conference held on February 17, 2026. *See* Feb. 17, 2026, Minute Entry.

are immaterial. *Id.* at 1, 59–60. Defendant argues, in the alternative, that Count V should be severed from the rest of the indictment. *Id.* at 60.

The government opposes each of Defendant's requests. In relevant part, it argues that: (i) the iCloud accounts were lawfully searched; (ii) Defendant validly waived his *Miranda* rights; and (iii) there is no basis to dismiss or sever Count V. *See* ECF No. 36 at 62–87.

## LEGAL STANDARD

### I.    Suppressing Evidence Pursuant to the Fourth Amendment

Under the Fourth Amendment, law enforcement must generally obtain a warrant supported by probable cause in order to obtain data from an iCloud account. *See United States v. Valentin*, No. 23-cr-292, 2025 WL 1519116, at *7 (E.D.N.Y. May 28, 2025); *United States v. Ortega*, No. 22-cr-91, 2022 WL 16647779, at *1 (S.D.N.Y. Nov. 2, 2022) (collecting cases).

Probable cause exists "where a totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found'" in a particular place. *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The warrant must establish "a sufficient nexus between the criminal activities alleged" and the place or object to be searched. *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). Although the probable cause standard "does not demand 'hard certainties,' [] it does require more than a 'hunch.'" *Lauria*, 70 F.4th at 128. The Court's inquiry is a "'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it] . . . there is a fair probability that . . . evidence of a crime' will be reflected in the records at issue." *United States v. Johnson*, 804 F. App'x 8, 10 (2d Cir. 2020) (quoting *Gates*, 462 U.S. at 238). This inquiry is judged by "the factual and practical considerations of everyday life," not legal technicalities, *Gates*, 462 U.S. at 230–31, and, when reviewing a challenged warrant, the Court

3

"must accord considerable deference to the probable cause determination of the issuing magistrate [judge]." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011). Stated otherwise, "the task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate [judge] 'a substantial basis' for making the requisite probable cause determination." *Id.*

Notably, even when a warrant is deemed invalid, suppression is not automatic. *See United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) ("A violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule."). Indeed, "'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant' will not be suppressed." *Valentin*, 2025 WL 1519116, at \*7 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

### II.   Suppressing Statements Pursuant to the Fifth Amendment & *Miranda*

"The accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived *Miranda* rights when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010). If the government fails to meet its burden, the cure is exclusion of the evidence. *See United States v. Anderson*, 929 F.2d 96, 102 (2d Cir. 1991). However, "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver . . . . The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). "Once validly waived, so the admonition goes, anything the suspect says may be used against the accused in the Government's case in chief." *United States v. Hamilton*, 487 F. Supp. 3d 140,

147 (E.D.N.Y. 2020) (citing *Butler*, 441 U.S.at 370). *Miranda* and its progeny require the court to assess the voluntariness of any waiver of the Fifth Amendment right to be free from self-incrimination. *See Miranda*, 384 U.S. at 478–79; *Moran v. Burbine*, 475 U.S. 412, 421 (1986) ("First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").

A waiver or statement is involuntary if it is obtained "under circumstances that overbear the defendant's will at the time it is given." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). That evaluation is made with reference to "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *Id.* While the mental state of the defendant is part of that analysis, involuntariness generally cannot be found "[a]bsent police conduct causally related to the confession." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986).

## **DISCUSSION**

### I.    **Defendant's Seized iCloud Accounts**

Defendant raises three grounds for suppression of the fruits of the search of his iCloud accounts:  (i) that none of the alleged crimes were "sufficiently connected" to his digital accounts and that the agent's "training and experience" is insufficient to establish probable cause to search the accounts; (ii) that the warrant was overbroad in allowing seizure of all the iCloud accounts without limitation or connection to the asserted probable cause; and (iii) that the "bulk of the asserted probable cause" was based on assertions of an individual that the government "has since disavowed," and that the government's conduct entitles Defendant to a hearing under *Franks v.*

*Delaware*, 438 U.S. 154 (1978).  *See* ECF No. 38 at 34–51.  The government objects to all these grounds, arguing, generally, that Defendant's iCloud accounts were lawfully searched.  *See* ECF No. 36 at 62–76.

The Court is persuaded by the government's arguments.  First, it is clear from the Court's own review of the search warrants at issue that the supporting affidavits establish, with at least a fair probability, that Defendant used particular phone numbers, connected to the iCloud accounts at issue, to facilitate the alleged conduct at the core of this case.  In other words, the Court agrees with the government that "[t]he facts in the warrant affidavit show that *in this case* the defendant in fact *did* communicate by telephone in furtherance of the crimes with at least two people, and very likely with others.  That is enough to put this case squarely within the binding holding of [*United States v. Silva*, 146 F.4th 183 (2d Cir. 2025)]."  ECF No. 36 at 68 (emphasis in original); *see also Silva*, 146 F.4th at 190 (quoting *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023)) (The Second Circuit "require[s] only a 'fair probability that contraband or evidence of a crime will be found' in the place to be searched.").

Moreover, Defendant's argument that "the warrant application includes boiler plate language about the agent's 'training and experience' that is completely unconnected to any specific facts about Mr. Manuchekhri or the charged crimes," is unavailing.  *See* ECF No. 38 at 39.  In fact, and as set forth above, the warrant application establishes that Defendant used multiple phone numbers, in connection with multiple accounts that were connected to various records of communications and other electronic data that, if nothing else, constitute probable cause to believe that evidence of the crimes at issue could and would be found in the Defendant's iCloud accounts.  *See also* ECF No. 36 at 67 (describing Defendant's use of communication

technology in connection with the conduct alleged in this case).[4]  In other words, the warrant

application provides much more than "boiler plate language" about the agent's training and

experience.  In any event, when assessing the sufficiency of a warrant application, the training

and experience of law enforcement agents is important to probable cause determinations.  *See*

*Gates*, 462 U.S. at 232.  Indeed, where, as here "the law-enforcement affiant pointed not only to

personal expertise tending to bolster a claim of knowledge that evidence might be found in a

particular location, but also to other particular, corroborating factual allegations linking the

alleged crimes to the place to be searched," the determination of probable cause is owed

"considerable deference."  *See Silva*, 146 F.4th at 191–92 (collecting cases); *Clark*, 638 F.3d at

93.

Second, the Court agrees with the government that Defendant is "confus[ing] what the

warrant required Apple to produce and what it authorized the government to seize."  ECF No. 36

at 70.  The warrant directed Apple to produce information about Defendant's iCloud accounts,

but it only permitted seizure of information that "constitutes evidence or instrumentalities of the

specified crimes."  *Id.* at 71.  The differences between what Apple was required to produce and

what the government was permitted to seize are laid out on the face of the attachments to the

warrant and the warrant itself.  *See id.* at 70–71 (describing the components of the warrant and its

attachments).

Third, the Court agrees with the general proposition that "[a] defendant is entitled to a

hearing under [*Franks v. Delaware*, 438 U.S. 154, (1978)] if he makes a substantial preliminary

---

[4]     The Court omits citation to the search warrant applications themselves because those
materials are not publicly available.  For purposes of this Order, the Court summarizes the
contents of such materials.  In light of these circumstances, the Court is temporarily issuing this
Order under seal and directs the parties to follow the procedure set forth in the conclusion of this
Order.

showing that a deliberate falsehood or a statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." ECF No. 38 at 47 (quoting *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008)). However, the Court disagrees with Defendant's argument that the government included "a deliberate falsehood or a statement made with reckless disregard for the truth" in the supporting affidavit. *Contra id.*; *Falso*, 544 F.3d at 125.

Defendant's argument is premised on the two warrants attached to his motion (Exhibits A & B to Defendant's Suppression Motion, *see* ECF No. 38 at 15 n.2), but he challenges only one of them (concerning Defendant's iCloud account data, *i.e.*, Exhibit A). He uses the second warrant (concerning location data from Defendant's cell phone, *i.e.*, Exhibit B) as evidence to support his claim that the government "relied on misinformation in the warrant application [for the iCloud account data]." *See* ECF No. 38 at 46–47. The crux of his argument concerns the government's use of different pseudonyms to describe an individual who believed Defendant was part of an extortion scheme of which the individual was allegedly a victim. In the warrant attached to Defendant's motion as Exhibit A, which was issued in November 2024, the government calls this person "Individual-1." In the subsequent warrant (Exhibit B), which was issued in February 2025, the government calls this person "Individual-2."[5]  *See* ECF No. 36 at 72 n.16. In Defendant's view, this pseudonym change "seem[s] designed to obscure that it was the same person" all along. *See* ECF No. 38 at 46. That's a stretch.

The use of two different pseudonyms to describe the same person in documents filed nearly four months apart fails to suggest any effort or design to "obscure" information, especially

---

[5]     The Court follows the convention of the subsequent warrant and the Complaint, *see* ECF No. 1 ¶ 13 n.6, and refers to the person entangled in the international extortion scheme by his most recent pseudonym:  "Individual-2."

since the description of the person and the substantive facts alleged about that person are consistent across the warrants.  Different pseudonyms notwithstanding, the consistency with which the government describes this person makes it abundantly clear who it is.  *Compare*, Exhibit A ¶¶ 7–10 (the first warrant) (describing the individual as a native of Tajikistan who has acquiesced to demands to transmit money and facilitate the transfer of money to persons that were known and unknown to the individual, including persons located in Turkey) *with*, Exhibit B ¶¶ 16, 16 n.5 (the second warrant) (describing the individual as someone who participated in an international extortion scheme and facilitated transfers of money to persons in Turkey).  Yes, the pseudonym used is not consistent, but that is a far cry from a showing that something untoward is afoot and comes nowhere close to demonstrating a deliberate falsehood.  Moreover, in the second warrant application, the government notified the magistrate judge that it understood Individual-2 mistakenly believed that Defendant was involved in the international extortion scheme.  *See* Exhibit B ¶ 16 n.5 (the second warrant) ("The records and communications . . . corroborate the existence of an extortionate scheme, but do not support Individual-2's belief that [Defendant] is involved in it.  It thus appears likely that Individual-2 has conflated the conduct of [Defendant] with the conduct of other persons for whom Individual-2 has transferred money internationally."); ECF No. 1 ¶ 13 n.6 (Complaint) (same).  The fact that the government flagged Individual-2's mistaken belief demonstrates that even if the information in the first warrant was false—which is a stretch in its own right—the government did not include that information in the first warrant deliberately.  Again, Defendant comes nowhere close to demonstrating a deliberate falsehood.

Defendant's alternative theory—that the use of different pseudonyms in the two warrants amounts to a statement made with reckless disregard for the truth—is equally without merit.  At

9

the time of the government's first warrant application, the Court has no reason to doubt that the government's representation that "[Individual-2's] belief that the defendant was involved [in the extortion scheme] appeared credible." *See* ECF No. 36 at 74.  Even though it later turned out that Individual-2 was mistaken about Defendant's role in the extortion scheme, the government disclosed that mistake.  *See* ECF No. 1 ¶ 13 n.6 (Complaint) (acknowledging that "Individual-2 has conflated the conduct of [Defendant] with the conduct of other persons for whom Individual-2 has transferred money internationally."); Exhibit B ¶ 16 n.5 (the second warrant) (same).  Stated otherwise, the government was not disregarding the truth at all—it was pursuing it— consistent with its investigation and it apprised  the magistrate judge of the truth in an appropriate manner.  Defendant's argument that this conduct amounts to a reckless disregard for the truth is incompatible with the record before the Court.

In any event, the extortion scheme is, notably, not among the charged offenses, *see* ECF No. 36 at 74, and the government did not rely solely on the statements of Individual-2.  The agent also reviewed Individual-2's cellphone contents, third-party records about Individual-2's communications and financial transactions, and the agent's training and experience.  *See* ECF No. 36 at 73 (describing the "essential facts stated in the warrant affidavit, as relevant to Individual-2 and the charges offenses").  Here, because "the probable cause of the *charged offenses* in the affidavit" does not rely on mistaken information, "and the only mistaken information included in the affidavit was in support of probable cause of an *uncharged offense* of which no evidence was obtained (and which was therefore not pursued or charged)," ECF No. 36 at 75 (emphasis in original), the Court concludes that Defendant is not entitled to a *Franks* hearing, *see also Franks*, 438 U.S. at 154 (no hearing required "if, when material that is the

10

subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause").

Accordingly, for the reasons set forth above, the Court is satisfied that "the 'totality of the circumstances' afforded the magistrate [judge] 'a substantial basis' for making the requisite probable cause determination." *Clark*, 638 F.3d at 93.  Defendant's motion to suppress the information associated with his iCloud accounts is denied.[6]

## II.      Defendant's Statement to Law Enforcement

Defendant also moves to suppress his statement to law enforcement agents, pursuant to the Fifth Amendment and the protections of *Miranda* and its progeny.  *See* ECF No. 38 at 51–61.  Specifically, Defendant argues that:  (i) law enforcement agents "undercut" the *Miranda* warnings he was given; (ii) waiver of his rights was not knowing and voluntary; and (iii) agents did not stop questioning him after he attempted to invoke his right to remain silent and, therefore, the statements he made after he said that he did not "want to say anything" should be suppressed.  *Id.*  In response, the government argues that Defendant's "arguments are at odds with the videorecorded evidence, the law, and common sense, and [] should be rejected."  ECF No. 36 at 76.  Here too, the Court agrees with the government.

---

[6]      Given this conclusion, the Court need not address arguments concerning the good faith exception.  Nevertheless, for the avoidance of doubt, it concludes that the good faith exception to the exclusionary rule would apply here because the agent acted in good faith in seeking and relying upon the warrant for Defendant's iCloud accounts.  *See United States v. McDarrah*, 351 F. App'x 558, 561 (2d Cir. 2009) (finding, for reasons similar to those found here, search warrant for defendant's AOL account sufficient and finding good faith exception would apply even if the warrant was deficient).  There is no basis for the Court to doubt that the law enforcement officer—or anyone for that matter—"had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment" at the time it was executed.  *See Illinois v. Krull*, 480 U.S. 340, 348–49 (1987).

11

"[A]ll criminal defendants must be apprised of [their *Miranda*] rights before a custodial interrogation may begin, including, of course, the right to remain silent and be afforded the assistance of counsel." *United States v. Plugh*, 648 F.3d 118, 125 (2d Cir. 2011). However, once *Miranda* warnings "are properly administered . . . a defendant is left to make his own choice as to how best to proceed." *Id.* A defendant may exercise his rights, "and thereby cut off further questioning," or he may "cooperate fully," *i.e.*, he may "knowingly and voluntarily waive," his *Miranda* rights. *Id.* If the government wishes to use statements made by a subject of a custodial interrogation at trial, it must "establish that the accused in fact knowingly and voluntarily waived [his] *Miranda* rights when making the statement." *Berghuis*, 560 U.S. at 382.

For waiver to be "knowing," it "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). For a waiver to be "voluntary," it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.*

### A.    The Miranda Warnings and Defendant's Waiver

Here, the Court concludes that agents properly administered *Miranda* warnings to Defendant, and that he knowingly and voluntarily waived those rights and chose to cooperate with the agents' investigation.

Based on the Court's review of the parties' exhibits to their submissions, the Court finds that law enforcement agents properly administered *Miranda* warnings to the Defendant before they began their custodial interrogation. Although Defendant now attempts to paint the interaction with law enforcement agents immediately following his arrest as an example of the agents "prim[ing] him to waive or misunderstand his *Miranda* rights," ECF No. 38 at 52, the Court's review of the arrest footage from the night of the arrest leaves it with a different view. In

12

fact, the footage immediately following his arrest (Exhibit E to Defendant's Suppression Motion, *see* ECF No. 38 at 15 n.2) demonstrates that, immediately following his arrest, the agent informed Defendant that other individuals would "get things 'sorted out,'" to preclude Defendant and others arrested with him from making statements before they were properly *Mirandized*. *See* Exhibit E at 5:00–5:34; *contra* ECF No. 38 at 51. This understanding is confirmed by the Court's review of Defendant's recorded post-arrest interrogation (Exhibit C to the Suppression Motion, *see* ECF No. 38 at 15 n.2.), where the agent explains to Defendant that they had stopped him from making any statements before he was *Mirandized*. Exhibit C at 00:04:50–00:05:00. On this point, the Court agrees with the government that agents endeavored to avoid any questioning and prevented Defendant from making any substantive statements until they had administered the *Miranda* warnings. *See* ECF No. 36 at 81.

After a brief explanatory exchange, agents, with a Russian interpreter present, confirmed that Defendant understood English. Exhibit C at 00:05:33–00:05:42. Even though he confirmed he understood English, agents nevertheless provided him with a written version of his *Miranda* rights in Russian, which he reviewed and confirmed he understood. *Id.* at 00:05:33–00:06:28. After Defendant finished reading the *Miranda* warnings in Russian, agents orally administered the warnings in English, during which Defendant nodded along visibly demonstrating that he understood what the agents were telling him. *Id.* at 00:06:28–00:07:21. After which, Defendant signed the *Miranda* form without hesitation, acknowledging again that he understood his rights. *Id.* at 00:07:22–00:07:30; *see also* Exhibit 1 to the government's Opposition (the Russian

*Miranda* form with Defendant's signature, ECF No. 36-1).[7] Only then do the agents begin to question Defendant. *See* Exhibit C at 00:08:00.[8]

In addition to what can be observed on the video of Defendant's post-arrest interview, the waiver form signed by Defendant further establishes the knowing and voluntary nature of Defendant's waiver. Indeed, by signing his name, Defendant indicated that he consented to answer questions without a lawyer present. ECF No. 36-1.[9] For that reason and reasons set forth in further detail below, the Court finds that Defendant knowingly and voluntarily waived his *Miranda* rights.

With respect to his waiver, Defendant again attempts to paint a picture that diverges from reality. However, footage from his post-arrest interrogation and his signature on the *Miranda* form show that Defendant's waiver was knowing. He silently read the *Miranda* warnings in Russian, confirmed his understanding of them, then repeated (orally and by nodding affirmatively) that he understood his rights when agents orally administered the warnings in English. Exhibit C at 00:05:33–00:07:21. Based on that footage, it is clear that, when Defendant

---

[7]     In his motion, Defendant indicates that he signed a form in which the *Miranda* warnings were written in English. *See* ECF No. 38 at 31. This must be an error, because the form described in footage from Defendant's post-arrest interview and attached as Exhibit 1 to the government's Opposition, ECF No. 36-1, is clearly in Russian, *see id.*; *see also* ECF No. 36 at 15 n.17.

[8]     In his brief, Defendant points to the moment immediately after he signed the *Miranda* form as evidence that agents questioned him before he was properly *Mirandized*, arguing that the agent's use of the phrase "so, back to Tajikistan . . ." suggests that the agent "appeared to fall right back into an earlier, apparently unrecorded conversation . . . ." *See* ECF No. 38 at 31. This argument is not only speculative, but also ignores the fact that before agents administered the *Miranda* warnings, the agent and Defendant are observed discussing how long it took Defendant to travel to a gym from his home in Tajikistan. *See* Exhibit C at 00:02:14–00:02:42.

[9]     The form Defendant signed, Form FD-395.14, is an official, Russian-language version of the Federal Bureau of Investigation's Advice of Rights Form (Form FD-395). *See* ECF No. 36-1. Defendant does not challenge the translation in Form FD-395.14.

14

signed the portion of the form that indicates he was willing to answer the agents' questions, his waiver "[was] made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. The recording of the post-arrest interrogation also shows the voluntariness of Defendant's waiver. To be precise, the footage is telling in what it does not show, *viz.*, it does not show any indicia in the nearly two-and-a-half hours' worth of footage that remotely suggests the agents acted in a coercive manner. *See generally* Exhibit C. Defendant's arguments that pre-*Miranda* statements by the agents conveyed a message that he "had no choice but to speak to the agents," ECF No. 38 at 52, are also unavailing.

Defendant spends several pages in his brief arguing that law enforcement agents made statements that "undercut" and "misled [him] about his rights before [he was told] what those rights were," such that when the warnings were conveyed, they were conveyed "in a manner designed to result in a waiver." *See* ECF No. 38 at 54–55. In Defendant's view, "the statements by the agents undercutting *Miranda* served their purpose" because law enforcement made him believe that "he had to talk to the agents" and his signature on the waiver form is therefore not a knowing or voluntary waiver. *Id.* at 56–58. Defendant also asserts that he was interrogated before he was read his *Miranda* rights. *Id.* at 53; ECF No. 40. Both these assertions are bald speculation. Still, even if the Court were to credit an extreme interpretation of the agents' statements (which is precisely what Defendant asks it to do), Defendant does not provide a single basis to support his interpretation.

Conspicuously absent from Defendant's submission is any declaration or similar sworn statement from Defendant, and there is certainly no sworn statement that provides *any* reason for the Court to suspect that Defendant was induced to waive his *Miranda* rights before he was told

15

what they were, that he was interrogated before he was *Mirandized*, or that the agents

interviewing him or the conditions of his post-arrest interview were coercive in manner.  Without

a sworn statement, Defendant makes nothing more than a "bald assertion" that his statements

were involuntary.  *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998); *see also United*

*States v. Perryman*, No. 12-cr-0123, 2013 WL 4039374, at *6 (E.D.N.Y. Aug. 7, 2013) (denying

motion to suppress post-arrest statements because defendant "has not submitted an affidavit

based upon his personal knowledge" and, therefore, "has not offered any support that his

*Miranda* rights were violated"); *United States v. Davis*, No. 08-cr-664, 2009 WL 331366, at *1

(E.D.N.Y. Feb. 11, 2009) (failure to submit "any affidavit to contradict the government's version

of events" means that defendant fails to "make more than a 'bald assertion' that the statement[s]

in question [were] involuntary," and "his motion to suppress the statements must be denied").

Defendant's suggestion that the post-arrest interrogation is improper is also without

merit.  At no point in the footage from Defendant's post-arrest interview do the agents act in a

coercive manner, nor does Defendant display any signs that he is particularly uncomfortable.  In

fact, the footage plainly shows that Defendant is calm and at ease throughout the interview—

there is nothing to be observed that remotely suggests Defendant's will was overborne.  *See*

*Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("We hold that coercive police activity is a

necessary predicate to a finding that a confession is not voluntary"); *United States v. Cabrera*,

No. 23-cr-209, 2023 WL 8812532, at *7 (S.D.N.Y. Dec. 20, 2023) (finding waiver of *Miranda*

rights valid when "the atmosphere in the room when [defendant] signed both the consent form

and the *Miranda* waiver . . . [was] 'amicable [and] friendly' and [] [defendant] was 'cool and

relaxed'"); *United States v. Ortiz-Ortiz*, No. 20-cr-00161, 2022 WL 598232, at *10 (W.D.N.Y.

Feb. 1, 2022), *adopted*, 2022 WL 597577 (W.D.N.Y. Feb. 28, 2022) (finding defendant's

16

*Miranda* waiver was "knowing and voluntary" and denying defendant's motion to suppress statements when "there is no evidence that conditions of the interrogation were coercive in manner . . . [and] [defendant] makes no claim that agents used physical force, threats, or promises of any kind to convince him to speak with them").[10]

Without any factual support, through a sworn statement or otherwise, there is nothing to undergird Defendant's extreme interpretation of the conduct before his post-arrest interview and his argument fails. In any event, the agents' conduct before, during, and after Defendant was arrested and interviewed was not improper and is a far cry from the type of "intimidation, coercion, or deception" that could render Defendant's waiver involuntary. *See Moran*, 475 U.S. at 421.

The available evidence is unequivocal. Defendant provided the agents with "[a]n express written . . . statement of waiver of the right to remain silent or of the right to counsel," which, by itself, is "strong proof of the validity of that waiver." *Butler*, 441 U.S. at 373. And, for the

---

[10]    Defendant also argues that an evidentiary hearing is necessary. *See* ECF No. 38 at 60–61. However, an evidentiary hearing on a suppression motion is unnecessary "where a defendant's allegations are general and conclusory or are based upon suspicion or conjecture," *Ortega*, 2022 WL 16647779, at *2 (quoting *United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985)), or where the moving papers do not create a genuine issue as to a material fact, *id.*; *United States v. Collymore*, No. 16-cr-521, 2017 WL 5197287, at *2 (S.D.N.Y. Oct. 20, 2017) (citing *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). In fact, an evidentiary hearing is necessary only where "the moving papers . . . enable the court to conclude that contested issues of fact . . . are in question." *Pena*, 961 F.2d at 339; *see United States v. Giamela*, No. 05-cr-06, 2005 WL 1423332, at *2 (S.D.N.Y. June 13, 2005) (denying defendant's motion to suppress his post-arrest statements and his request for an evidentiary hearing "based upon [his] conclusory assertion that he did not voluntarily waive his *Miranda* rights"); *United States v. Spencer*, No. 06-cr-413, 2016 WL 6781225, at *5 (E.D.N.Y. Nov. 15, 2016) (citing *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) ("An evidentiary hearing is not required on a motion to suppress unless the defendant submits sworn factual allegations from an individual with personal knowledge."). Because no such issues are in question here, and because there is no genuine issue of material fact at issue with respect to the instant motion, the Court finds a hearing is unnecessary.

17

avoidance of doubt, Defendant provided agents with an unequivocal oral statement of his intent to proceed with questioning without a lawyer present.  Exhibit C at 00:07:00–00:07:10.  Taken together, Defendant's conduct amounts to explicit proof of the validity of his waiver.  *See Butler*, 441 U.S. at 373; *see also United States v. Chao Xian Yao*, No. 05-cr-1114, 2006 WL 1227771, at *5 (S.D.N.Y. May 3, 2006) (precluding defendants from "claim[ing] that that they misunderstood" *Miranda* warnings after they "read and signed [a] form" advising them of their *Miranda* rights in a language they understood).

> B.     *Defendant's Statement That he did not "Want to say Anything"*

In light of such clear waiver, Defendant tries a different tact, arguing that even if he waived his *Miranda* rights at the beginning of the custodial interrogation, he later invoked the right to remain silent when he twice informed agents that "he did not 'want to say anything.'" ECF No. 38 at 59.

To invoke the right to remain silent, or any *Miranda* right, the subject of a custodial interrogation must assert the right "through a clear, unambiguous affirmative action or statement." *Berghuis*, 560 U.S. 370, *accord Plugh*, 648 F.3d at 124.  Invocation of *Miranda* rights must be unambiguous and unequivocal; anything less fails to create an obligation that law enforcement agents cease questioning or probe for clarity as to whether the subject of custodial interrogation intended to request an attorney or to remain silent.  *Plugh*, 648 F.3d at 124–27.

Here, following the Court's review of the entire video record leads it to the inescapable conclusion that the two times Defendant tells agents "no, I don't want to say anything" are in response to the agents' specific questions; they are not invocations of the right to remain silent and intended to cut off further questioning.  The first time Defendant tells agents he "[doesn't] want to say anything" is in response to an agent's express accusation that he was lying during the

18

interview and the agent asked Defendant if he had "anything to say for [himself]."  Exhibit C at

02:00:00–02:01:22.  This statement—that he does not "want to say anything"—is a direct

response to the question that immediately precedes it.  It is not a global statement about the

custodial interrogation writ large.  Similarly, when Defendant repeats the statement he now

argues is an invocation of his right to remain silent, it is again in response, and therefore

inextricably linked, to another agent's question.  There, when the agent asks Defendant if there

was "anything else [he] want[ed] to say" about anything that was discussed during the interview,

again, Defendant tells the agents "no, I don't want to say anything."  *Id*. at 02:03:00–02:03:14.[11]

Despite Defendant's arguments, it is clear that his so-called invocations are, in fact, far

from invocations of his Fifth Amendment rights.  Still, even *if* Defendant wished to exercise his

right to remain silent, he failed to assert the right unambiguously and, therefore, his statements

were insufficient to trigger an obligation on the part of the agents to cease questioning or probe

for clarity.  *See Plugh*, 648 F.3d at 124–27.  Accordingly, the Court finds that agents did not

improperly continue the interview and concludes that there is no basis to suppress statements

Defendant made after either time he said he did not want to say anything.  For those reasons,

Defendant's motion to suppress those portions of his recorded statement is denied.

### III.    The Motion to Dismiss or Sever Count V

In addition to his suppression-focused requests, Defendant moves to dismiss Count V,

arguing that his interrogation was unconstitutional and that the allegedly false statements he

---

[11]    The Court notes that the second time Defendant says "no, I don't want to say anything" is shortly after agents told him that he "could have saved [himself] [from] two or three crimes . . . by just saying 'I don't want to talk about that' or something like that."  Exhibit C at 02:01:54–02:02:12.  The temporal relationship between the agents' remarks about what Defendant "could have" said and his repetition that he did not "want to say anything" further undermines his argument now that this second statement was intended to be an invocation of his right to remain silent.

made during his interview are not material.  *See* ECF No. 38 at 59–60.  Defendant also argues, in the alternative, that Count V must be severed because the "alleged false statements boil down to Mr. Manuchekhri asserting his innocence [as to Counts I and IV]," and "it would be severely prejudicial to allow the government to put Mr. Manuchekhri on trial for the substantive offenses and, essentially, for defending himself against the substantive offenses during a post-arrest interrogation at the same time."  *Id.* at 60.

### A.    Defendant's Arguments to Dismiss Count V are Unavailing

Defendant's two arguments to dismiss Count V of the indictment fail.  For the reasons the Court already discussed, *see supra* Part II, no part of Defendant's interview was unconstitutional and the Court does not repeat its analysis here.  Defendant's first argument to dismiss Count V fails.  With respect to Defendant's second argument, that the allegedly false statements made during his interview are immaterial, the Court is not persuaded.

Defendant is charged with making false statements about sending money to the individual identified as CC-1, that his marriage to Individual-3 was genuine, and that he did not submit altered documents to perpetuate his allegedly fraudulent marriage.  *See* ECF No. 8 ¶ 6.  Here, the Court is persuaded by the government's representation that these statements are direct "refutations of facts that satisfy elements of the substantive offenses."  ECF No. 36 at 86.  As direct refutations, they naturally have a "tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which [they are] addressed," or, at least, they are "capable of distracting government investigators' attention away from a critical matter."  *See United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012).  This "natural tendency" to influence and/or distract the finder of fact or investigators makes the statements material.  *Id.*

Because the Court finds both of Defendant's arguments for dismissal unpersuasive, his motion to dismiss Count V is denied.

###### B.   Defendant Fails to Meet the High Standard for Severance

Under Federal Rule of Criminal Procedure 8(a), multiple offenses may be charged in the same indictment if they are:  (i) of the same or similar character; (ii) based on the same act or transaction; or (iii) connected with or constitute parts of a common scheme or plan.  Fed. R. Crim. P. 8(a); *see also United States v. Kemp*, No. 21-cr-1684, 2023 WL 405763 (2d Cir. Jan. 26, 2023) (quoting Rule 8(a)).  Under Rule 14(a), a court may sever offenses if joinder "appears to prejudice a defendant or the government."  Fed. R. Crim. P. 14(a).  A defendant has a "heavy" burden in this context.  *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994).  To warrant severance, it is not enough to merely show "some prejudice," or generalized claims of prejudice based on the alleged cumulative effect of evidence, rather a defendant must show "*substantial* prejudice," *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (emphasis in original); *United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008).  Even in instances where "the risk of prejudice is high," less drastic measures, for example, limiting instructions, are often a sufficient alternative to granting a severance motion.  *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) .

Here, the Defendant has not met the high burden of demonstrating that he will suffer substantial prejudice from continuing to trial with a list of charges that includes Count V.[12] Defendant makes the conclusory assertion that "[i]t would be severely prejudicial to allow the

---

[12]   Unsurprisingly, Defendant does not argue that the false statement charge was improperly joined because that charge unquestionably bears a logical connection to Count I (the material support charge) and Count IV (the immigration fraud charge), a fact which Defendant concedes in his papers.  *See* ECF No. 38 at 60 ("The alleged false statements boil down to Mr. Manuchekhri asserting his innocence of counts one and four.").

21

government to put [him] on trial for the substantive offenses and, essentially, for defending himself against the substantive offenses during a post-arrest interrogation at the same time." *See* ECF No. 38 at 60.  At best, this assertion amounts to only a "generalized claim of prejudice," similar to Defendant's generalized claims in connection with his motion to sever Count IV.  *See* ECF No. 34 at 29–32; Feb. 17, 2026, Minute Entry.  This generalized claim does not satisfy the "heavy" burden of demonstrating "substantial prejudice."  *Sampson*, 385 F.3d at 190; *Rivera*, 546 F.3d at 254.  The government correctly points out that Defendant effectively argues that he would be prejudiced by trial of charges that includes Count V because "evidence of the substantive offense would be admissible to prove the [false statement charge], and evidence of the [false statement charge] would be admissible to prove consciousness of guilt of the substantive offense."  ECF No. 36 at 86–87.  That is pretzel logic.  If the Court were to follow it, it would result in two trials that are "virtually identical to each other," which would amount to "a profound and pointless waste of judicial resources."  *Id.* at 87.  The Court struggles to see how Defendant would be prejudiced at all, let alone *substantially* prejudiced.[13]  Without such a showing, the Court will not sever Count V.  *Sampson*, 385 F.3d at 190; *Rivera*, 546 F.3d at 254.

Accordingly, Defendant's alternative motion to sever Count V is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to:  (i) suppress various pieces of evidence associated with his iCloud accounts; (ii) suppress his post-arrest statement to law enforcement agents; and (iii) dismiss, or in the alternative, sever, Count V, *see* ECF No. 35; ECF No. 38, is

---

[13]     To the extent there is any prejudice in such a scenario, it can be properly addressed by a limiting instruction.  *See Feyrer*, 333 F.3d at 114.

DENIED.  The parties shall proceed to trial on all charges according to the schedule set at the February 17, 2026, status conference.  *See* Feb. 17, 2026, Minute Order.

The Court is initially issuing this Order under seal and it will be available only to the parties.  The parties are directed to review this Order and file a motion to seal any appropriate portion of this Order, if necessary, on or before April 22, 2026.  If the parties do not intend to move to seal portions of this Order, they shall notify the Court by filing a letter on the docket by that same date.  The Court will thereafter rule on any sealing motion, apply any appropriate redactions, and make this Order publicly available.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
April 8, 2026

23