# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

May 26, 2026

The Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *United States v. Mansuri Manuchekhri*, 25 Cr. 88 (HG)

Dear Judge Gonzalez,

We respectfully request that the Court accept this motion to dismiss the indictment under the nondelegation doctrine, in conjunction with the motion to reopen the Rule 12 motions also filed today. In reviewing other material support cases, counsel realized that they were remiss in failing to bring this motion to the Court's attention initially. The Court may consider a Rule 12 motion that is not timely for good cause. Fed. R. Crim. P. Rule 12 (c)(3). We respectfully ask the Court to do so here, as Mr. Manuchekhri shouldn't be penalized for counsel's failure.

<u>The indictment should be dismissed because Section 2339B improperly delegates legislative authority to the Secretary of State</u>

The power to decide if countless private citizens around the world are subject to criminal liability in the United States is an immense one. The Constitution vests that power exclusively in Congress. But under 18 U.S.C. § 2339B, Congress tied the criminal material support statute to the definition of a foreign terrorist organization in 8 U.S.C. § 1189, which expressly delegates the authority to designate foreign terrorist organizations ("FTOs") to the Secretary of State.[1] Under this statutory scheme, the

---

[1] "[F]oreign terrorist organization" is defined as "an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act." 18 U.S.C. § 2339B(a)(1). Section 219, in turn, provides that:

State Department, rather than Congress, has the unguided and unchecked power to decide which organizations are or are not subject to criminal liability under Section 2339B. This is plainly unconstitutional.

A. <u>The Constitution prohibits Congress from delegating its legislative powers, particularly in the criminal context</u>

The authority to legislate is entrusted solely to Congress. U.S. Const. Art. I §§ 1, 8. "Congress manifestly is not permitted to abdicate or transfer to others the legislative functions" with which it is vested. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935). This "nondelegation doctrine is rooted in the principle of separation of powers... " *Mistretta v. United States*, 488 U.S. 361, 371 (1989).

Because of its focus on protecting individual liberty, the nondelegation doctrine is enforced most rigorously in the criminal context. Several specific constitutional provisions safeguard the separation of powers. While Congress may single out parties to a civil suit, *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1327 (2016), the Bill of Attainder Clause, U.S. Const. art. I, § 9, prevents Congress from singling out persons for criminal punishment. This protection is "an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *United States v. Brown*, 381 U.S. 437, 442 (1965).

---

The Secretary [of State] is authorized to designate an organization as a foreign terrorist organization in accordance with this subsection if the Secretary finds that—

(A)     the organization is a foreign organization;

(B)     the organization engages in terrorist activity (as defined in section 1182(a)(3)(B) of this title or terrorism (as defined in section 2656f(d)(2) of title 22), or retains the capability and intent to engage in terrorist activity or terrorism); and

(C)     the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States.

8 U.S.C. § 1189(a)(1).

The Framers recognized that, with "criminal subjects," Congress should "leave as little as possible to the discretion of those who are to apply and to execute the law." James Madison, *The Report of 1800*, *in* 14 *The Papers of James Madison* 266, 307, 324 (Robert A. Rutland et al. eds., 1983). As a result, the Court has made clear that "defining crimes" is a "legislative" function, *United States v. Evans*, 333 U.S. 483, 486 (1948), and that Congress cannot delegate "the inherently legislative task" of determining what conduct "should be punished as crimes." *United States v. Kozminski*, 487 U.S. 931, 949 (1988); *see also United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) ("It is the legislature which is to define a crime, and ordain its punishment.").

This special prohibition on congressional delegation of criminal lawmaking power is reflected in the Court's void-for-vagueness doctrine. Vague criminal statutes are prohibited both because individuals are entitled to sufficient notice as to what constitutes a crime and to prevent legislatures from "abdicat[ing] their responsibilities for setting the standards of the criminal law." *Smith v. Goguen*, 415 U.S. 566, 574-75 (1974); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (vague laws "impermissibly delegate[] basic policy matters to policemen"); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) (invalidating vague criminal statute as delegation to define crimes). "In that sense, the [void-for-vagueness] doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

The Court has not "exactly drawn" the line separating "legislative" from executive or judicial powers, *see Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825), but one thing is clear: the power to enact generally applicable, binding rules of private conduct is "legislative." *See Yakus v. United States*, 321 U.S. 414, 424 (1944); *see also The Federalist No. 75*, at 450 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("The essence of the legislative authority is to enact laws, or, in other words, to prescribe rules for the regulation of the society.").

While the nondelegation doctrine does not prevent Congress from "obtaining the assistance of its coordinate Branches," it can do so only if it provides clear guidance. *Id.* at 372-73. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not forbidden delegation of legislative power.'" *Id.* at 372 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928)).

In both *Panama Refining Co.* and *Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that Congress had unconstitutionally authorized

the Executive to make laws because "Congress had failed to articulate any policy or standard that would serve to confine the discretion of the authorities to whom Congress delegated power." *Mistretta*, 488 U.S. at 374, n.7. Similarly, in Sections 1189 and 2339B, Congress failed to articulate any policy to guide the Secretary of State in exercising this delegated authority to designate FTOs. Because Section 2339B grants the Secretary of State unfettered discretion to determine who is subject to criminal liability without an "intelligible principle" to guide him, it plainly violates the nondelegation doctrine.

B. <u>Section 2339B violates the Nondelegation Doctrine</u>

Section 2339B violates the Constitution under any formulation of the nondelegation doctrine. First, the delegation is invalid under an originalist understanding of the nondelegation doctrine because the statute transfers to the Secretary of State what can only be described as legislative authority. Second, the statute is unconstitutional because it fails to provide a sufficiently intelligible principle to cabin and direct the Secretary of State's exercise of the delegated powers.

1. Section 2339B impermissibly delegates quintessentially legislative powers

Section 2339B grants the Secretary of State quintessentially legislative powers: it allows him to prescribe who is subject to criminal sanctions, potentially governing the conduct of hundreds of thousands of private individuals, both in the United States and abroad, including Mr. Manuchekhri. It affects the substantive liberty interests of these individuals in the most profound way.

Under an originalist interpretation of the Constitution, the legislative nature of these delegated powers ends the inquiry and requires this Court to invalidate the delegation. *See, e.g.*, *Dep't of Transp. v. Ass'n of Am. R.R.*, 135 S. Ct. 1225, 1246 (2015) (Thomas, J., concurring) ("[T]he original understanding of the federal legislative power . . . require[s] that the Federal Government create generally applicable rules of private conduct only through the constitutionally prescribed legislative process."); *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825) ("It will not be contended that Congress can delegate . . . powers which are strictly and exclusively legislative. . . . [Those powers] must be entirely regulated by the legislature itself."); *Field v. Clark*, 143 U.S. 649, 692 (1892) ("That congress cannot delegate legislative power to the president is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution.").

2. <u>Section 2339B's delegation to the Secretary of State fails the intelligible principle test</u>

In addition to violating originalist constitutional principles governing delegations of power, Section 2339B fails the Court's prevailing "intelligible principle" test because it fails to provide sufficiently clear guidance on fundamental policy question.

While affirming that Congress cannot delegate its legislative powers, the Supreme Court has recognized that "separation-of-powers principle[s] . . . do not prevent Congress from obtaining the assistance of its coordinate Branches." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). The Court's modern jurisprudence has been "driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Id.*

The Court developed the "intelligible principle" test to evaluate such congressional delegations of power. Under this test, if "Congress shall lay down by legislative act an intelligible principle to which the person or body [to whom power is delegated] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

When Congress lays down a sufficiently clear guiding principle, the Court has construed the powers delegated not to be "legislative," even if they involve some degree of discretion, because Congress itself has made all of the fundamental policy decisions—i.e., it has done the "legislative" work. *See J.W. Hampton, Jr., & Co.*, 276 U.S. at 407. As the Court explained in *J.W. Hampton, Jr. & Co.*, when Congress delegates pursuant to an "intelligible principle" it "is not an exact statement" to claim that the Executive is exercising "legislative power" because such "power has already been exercised legislatively by the body vested with that power." *Id.*; *accord Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001); *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 85 (1932) ("[T]he legislative power of Congress cannot be delegated   But Congress may declare its will, and, after fixing a primary standard, devolve . . . the 'power to fill up the details'… ").

In addition to being clear enough to guide the Executive, this intelligible principle must enable courts to determine whether the delegate has acted within the bounds of the delegated authority and in accordance with Congress's expressed will. *See, e.g.*, *Yakus v. United States*, 321 U.S. 414, 423, 425 (1944) (courts must be able to

see "in an appropriate proceeding" that there is a "substantial basis" for the executive action and that the "will of Congress has been obeyed"); *Indus. Union Dep't AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 686 (1980) (Rehnquist, J., concurring) (intelligible principle requirement "ensures that courts . . . reviewing the exercise of delegated legislative discretion will be able to test that exercise against ascertainable standards"). The principle, even if defined under "broad general directives," must "clearly delineate[] the general policy, . . . and the boundaries of this delegated authority." *U.S. v. Bozarov*, 974 F.2d 1037, 1041 (9th Cir. 1992).

Under the intelligible principle test, the amount of required congressional guidance depends on the "extent and character" of the power conferred. *See J.W. Hampton, Jr., & Co.*, 276 U.S. at 406; *see also Whitman*, 531 U.S. at 475 ("[T]he degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred.").

Section 2339B defines the term "terrorist organization" as "an organization designated as a terrorist organization under Section 219 of the Immigration and Nationality Act." Section 219 of the INA, as amended by AEDPA, is codified at 8 U.S.C. § 1189, and provides that the Secretary of State, "in consultation with the Secretary of the Treasury and the Attorney General," may designate an organization as an FTO if he finds: (1) it is foreign; (2) it is engaged in "terrorist activity" or "terrorism," or has the "capability and intent" to do so; and (3) "the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States." 8 U.S.C. § 1189(a)(1), (d)(4).[2]

These three "discrete" requirements underscore the extent of power delegated to the Secretary of State by a designation under § 1189(a). Their definitions are short, broad, and provide little to no overall guidance on the implications of a designation as a terrorist organization. § 1189(a)(1) contains only a cursory requirement that the organization be "foreign," while § 1189(a)(3) defines activity related to "national security" with the broad brush of "national defense, foreign relations, or economic interests of the United States." This language is instead a framework in which the

---

[2] Moreover, Section 1189(a)(8) specifically precludes a criminal defendant from challenging the Secretary of State's designation:

> If a designation under this subsection has become effective under paragraph (2)(B) a defendant in a criminal action or an alien in a removal proceeding shall not be permitted to raise any question concerning the validity of the issuance of such designation as a defense or an objection at any trial or hearing.

executive may pick and choose which groups to designate as terrorist,[3] criminalizing otherwise innocuous conduct through § 2339B.[4]

For an example of a constrained and permissible intelligible principle, the Supreme Court revisited its nondelegation jurisprudence in June 2019. The case, *Gundy v. United States*, 139 S. Ct. 2116 (2019), involved a provision of the Sex Offender Registration and Notification Act ("SORNA") that confers on the Attorney General the authority to "specify the applicability" of SORNA's registration requirement to "sex offenders convicted before" the date of SORNA's enactment. In a 5-3 decision, the Court held that construed narrowly the relevant statutory section required the Attorney General simply to apply SORNA "to all pre-Act offenders as soon as feasible." *Gundy*, 139 S. Ct. at 2123. Here, both the purpose and urgency of the intelligible principle, inherent in the AG's task, are clear. It did not empower the Attorney General to create, remove, or otherwise revise registration requirements for these offenders. Accordingly, the Court held that the delegation in *Gundy* passed muster because it directed the Attorney General to "implement" Congress' legislation, *id.* at 2130, not to itself legislate. The delegation was "distinctly small-bore." *Id.*

Unlike the statute at issue in *Gundy*, Section 2339B does far more than "implement [Congress'] programs." *See id.* at 2130. The instant statute effectively endows the Secretary of State with the power to write his own criminal code. *See id.* at 2131 (Gorsuch, J., dissenting). Section 2339B contains no goal specifically relating to the delegation; no criteria to constrain the Secretary of State's exercise of the delegated power; and no standards by which a court can evaluate any executive action.

---

[3] Look no further than to the most recent additions to the list of FTO designations, in which the Trump Administration named eight Mexico-affiliated drug cartels on February 20, 2025. This is not to say that drug cartels are incapable of terrorist-adjacent behavior such as kidnapping and attacks on public officials, but the classification of a profit-seeking crime syndicate as a "terrorist" organization represents a development in the government's understanding of terrorism and a clear expansion of executive power. *See* https://www.whitehouse.gov/presidential-actions/2025/01/designating-cartels-and-other-organizations-as-foreign-terrorist-organizations-and-specially-designated-global-terrorists/. The Cato Institute has noted that such designation stands as a politically favorable move for the Trump administration's anti-immigration and border enforcement agenda, further suggesting a lack of an effective intelligible principle. *See* https://www.cato.org/blog/trump-administration-shouldnt-designate-drug-cartels-foreign-terrorist-organizations.

[4] The Brennan Center for Justice has highlighted how the addition of drug cartels to the FTO list risks criminal liability for organizations serving domestic migrants such as food banks, churches, and synagogues under § 2339B. *See* https://www.brennancenter.org/our-work/analysis-opinion/dangerous-sweep-trumps-plan-designate-cartels-terrorist-organizations.

In enacting Section 2339B, Congress improperly transferred its legislative power to the Secretary of State without explaining how, or even whether, to exercise it. The nondelegation doctrine thus requires the Court to invalidate this definitional section of the material support statute. Doing so will reaffirm basic separation-of-powers principles, thereby protecting individual liberty, preserving democratic accountability, and vindicating the rule of law.

Thus, this Court should dismiss Mr. Manuchekhri's indictment.

Respectfully Submitted,

_____/s/_____

Jullian Harris-Calvin
Allegra Glashausser
*Counsel to Mr. Manuchekhri*