UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MANSURI MANUCHEKHRI,

Defendant.

**MEMORANDUM & ORDER**
25-CR-0088 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Defendant Mansuri Manuchekhri moves:  (1) for reconsideration of the Court's March 23, 2026, Order denying his motion to suppress various pieces of evidence or for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 14 (1978), *see* ECF No. 60;[1] (2) for reconsideration of the Court's February 17, 2026, Order denying his motion to dismiss the Indictment for failure to allege a violation under 18 U.S.C. § 2339B, *see id.*; (3) to dismiss the Indictment under the non-delegation doctrine, *see* ECF No. 61; and (4) to compel additional discovery and *Brady* material from the government, *see* ECF No. 62.

For the reasons set forth below, Defendant's motions are DENIED.

---

[1]      Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to transcripts, where the Court cites to the original page number on the native document.

**BACKGROUND**[2]

On February 17, 2026, and March 23, 2026, the Court issued its Orders on Defendant's first set of pretrial motions. *See* Feb. 17, 2026, Minute Order (denying Defendant's motions to dismiss, for a bill of particulars, and to sever);[3] ECF No. 52 (denying Defendant's motions to suppress evidence and his post-arrest statements, and to dismiss, or in the alternative, sever, Count V).[4]

Defendant thereafter filed the instant set of motions. They are comprised of: (1) a motion for reconsideration of the Court's "denial of Mr. Manuchekhri's motion[] to suppress under *Franks v. Delaware*, 438 U.S. 154 (1978), based on additional review of the discovery and newly provided discovery," ECF No. 60 at 1–4 (the "*Franks* Motion"); (2) a renewed motion to dismiss the Indictment pursuant to 18 U.S.C. § 2339B, in light of the Second Circuit's decision in *United States v. Ullah*, 173 F.4th 399 (2d Cir. 2026), *id.* at 5 (the "*Ullah* Motion"); (3) a separate motion to dismiss "under the nondelegation doctrine," ECF No. 61 (the "Non-Delegation Motion"); and (4) a motion to compel "additional discovery and *Brady* material," *see* ECF No. 62 (the "Discovery Motion"). The government filed an omnibus opposition to

---

[2]   The Court assumes the parties' familiarity with the facts underlying this case and the instant motions and does not recount the factual history unless relevant to the Court's analysis.

[3]   The Court issued its Orders on Defendant's motion to dismiss Counts II and III of the Indictment, ECF No. 33, and his motion for a Bill of Particulars, to dismiss Count I, and to sever Count IV, ECF No. 34, at the status conference held on February 17, 2026. *See* Feb. 17, 2026, Minute Entry. The transcript of that status conference is attached to the government's Opposition as Exhibit A. *See* ECF No. 64-1.

[4]   The Court originally published its March 2026 Order under seal to give the parties an opportunity to move to seal any portion of the Order, if necessary. *See* ECF No. 52; Mar. 23, 2026, Text Order. In early April, the parties indicated that neither sought to seal any portion of the Order, and the Court made the March 23, 2026, Order publicly available, on April 8, 2026. *See* ECF No. 55; Apr. 8, 2026, Text Order. For the purposes of this Order, the Court refers to its original Order.

Defendant's motions on June 23, 2026, *see* ECF No. 64 ("Opposition"), and two weeks later, Defendant filed his omnibus reply, *see* ECF No. 65 ("Reply").

The Court addresses each of Defendant's motions in turn.

## DISCUSSION

The Court addresses Defendant's motions for reconsideration, *i.e.*, the *Franks* Motion and *Ullah* Motion, before turning to his Non-Delegation Motion.  It addresses the Discovery Motion before concluding.

### I.       The *Franks* Motion

Although the Federal Rules of Criminal Procedure do not provide for motions for reconsideration, "'such motions are tacitly accepted in criminal cases in this District by virtue of Local Crim. R. 49.1(d).'"  *United States v. Martino*, No. 19-cr-575, 2022 WL 657358, at *2 (E.D.N.Y. Mar. 5, 2022) (quoting *United States v. Baldeo*, No. 13-cr-125, 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015), *aff'd*, 615 F. App'x 26 (2d Cir. 2015)).  In this context, courts apply the same standard of review "under Local Criminal Rule 49.1 and Local Civil Rule 6.3 and the Federal Rules of Civil Procedure."  *United States v. Full Play Grp., S.A.*, No. 15-cr-252, 2022 WL 523459, at *1 (E.D.N.Y. Feb. 22, 2022); *see also Martino*, 2022 WL 657358, at *2 (E.D.N.Y. Mar. 5, 2022) (collecting cases).  Accordingly, the party seeking reconsideration must identify at least one of the following grounds:  "(1) an intervening change of controlling law, (2) the availability of new evidence, and (3) the need to correct a clear error or prevent manifest injustice."  *Full Play Grp.*, 2022 WL 523459, at *2 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  This is a strict standard "and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be

3

expected to alter the conclusion reached by the court." *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Defendant argues that his motion for a *Franks* hearing should be reconsidered because "additional review of the discovery and newly provided discovery," has made him aware of "additional material omissions from the search warrant." ECF No. 60 at 1. Defendant identifies three purported omissions: (1) that the Turkish criminal case against the individual identified as CC-1 was ultimately dismissed; (2) that the unnamed "close family member of" Defendant who made statements about Defendant's "extremist rhetoric" and ideological radicalization "was apparently Mr. Manuchekhri's wife, with whom he was in a heated battle for custody of their children";[5] and (3) that the individual Defendant directed to send money on his behalf to Türkiye (the "Money Sender")[6] could not identify Defendant by photograph on two separate occasions. *Id.* at 2–4. The government argues that "only the third of these supposed omissions is based on 'newly provided' discovery, and none of them is material." ECF No. 64 at 15. The Court agrees.

First, the government argues the Court need not consider the portion of the *Franks* Motion concerning the disposition of CC-1's Turkish criminal case because "this information was available to the defendant before he filed his original suppression motion," and, therefore,

---

[5]     The Court notes that the government has not confirmed the identity of the close family member, does not confirm the identity of that person in its Opposition, and instead "[a]ssum[es] for the purposes of the present motion that the defendant's inference about the identity of the close family member were correct." *See* ECF No. 64 at 16, 16 n.3. The Court similarly assumes this information is correct for the purposes of this Order.

[6]     This individual was originally referred to as "Individual-1" in the November 2024 warrant and as "Individual-2" in the February 2025 warrant, the Complaint, and the Court's March 23, 2026, Order. *See* ECF No. 52 at 8, 8 n.4. For the sake of clarity, the Court adopts the pseudonym the government uses in its Opposition and refers to this individual as "Money Sender" in this Order.

4

his argument is "not based on new information," but rather "just a second bite at the apple." *Id.*
at 15–16.  The government's point is well taken, because "facts that were known or discoverable
and presentable on the original motion, but were not, are not appropriate support for a motion to
reconsider." *Cf. Nisanov v. Black & Decker (U.S.) Inc.*, No. 05-cv-5911, 2008 WL 2185910, at
*1 (E.D.N.Y. May 23, 2008) (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir.1998)).
Accordingly, the purported omission about CC-1's case is insufficient to warrant
reconsideration.  *See United States v. Billini*, No. 99-cr-156, 2006 WL 3457834, at *2 (S.D.N.Y.
Nov. 22, 2006) (denying reconsideration when movant failed to show "the evidence contained in
her affidavit was not previously available to her or could not have been obtained through diligent
efforts"); *Martino*, 2022 WL 657358, at *2 (denying reconsideration when defendant failed to
present "any new facts or controlling law that [the court] overlooked in [its] earlier ruling");

But even if the Court sets aside the question of *when* Defendant learned that CC-1's case
was dismissed, it is persuaded by *what* that information means with respect to probable cause.
*See United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (reviewing court's task "is simply to
ensure that the 'totality of the circumstances' afforded the magistrate [judge] 'a substantial basis'
for making the requisite probable cause determination").  On this point, the Court concludes that
even if information about the subsequent dismissal of CC-1's Turkish criminal case had been
included in the warrant application, the application would nevertheless support probable cause
for the magistrate judge to believe that Defendant understood that at least *one* of the individuals
he was dealing with was an agent of ISIS.  *See United States v. Lauria*, 70 F.4th 106, 126 (2d
Cir. 2023) (explaining that "[f]or an omission to serve as the basis for a hearing under *Franks*, it
must be such that its inclusion in the affidavit would defeat probable cause for arrest").
Defendant's argument that this omission "directly undermined the only information the

5

government provided that suggested that [CC-1] was connected to ISIS," ECF No. 60 at 2, is

unavailing. The fundamental problem with Defendant's argument is that it ignores the

information about CC-2. The information about CC-2 that was presented in the affidavit and

available to the magistrate judge reviewing the warrant application, standing alone, is more than

sufficient to form "a substantial basis" for the magistrate judge to determine that probable cause

existed. *See Clark*, 638 F.3d at 93. Notably, the affidavit indicates that Defendant directed

Money Sender to coordinate with CC-2, that CC-2 played a larger role in the money transfers

than CC-1, and that CC-2 was arrested for terrorism offenses related to an attack for which ISIS

publicly claimed responsibility. *See* Exhibit A to ECF No. 38 (the November 2024 warrant

application) at ¶¶ 14–15.[7] In other words, the connection between Defendant, Money Sender,

and CC-2 is stronger than it is with respect to CC-1, and the connection between CC-2 and ISIS

is stronger than it is for CC-1. The government captures most of this point, arguing that "an

affidavit that noted the eventual dismissal of the Turkish criminal case against CC-1 would still

support probable cause," ECF No. 64 at 16, but it does not reach the stronger point: an affidavit

that never mentioned CC-1 *at all* would still support probable cause. For these reasons, even if

Defendant had raised the ultimate disposition of CC-1's case information at an appropriate time,

it would not change the result, as the disposition of CC-1's case had no bearing on Defendant's

understanding that he was dealing with at least one person inextricably linked to ISIS, and,

therefore, had no bearing on the determination of probable cause.

---

[7]     Though not relevant to the magistrate judge's probable cause analysis, and therefore not relevant to this Court's analysis, it's worth noting that CC-2 was ultimately "convicted of terrorism offenses and sentenced to over 100 years of imprisonment" in connection with the aforementioned terror attack. *See* ECF No. 64 at 15 n.2.

Second, with respect to the purported omission concerning the "close family member" of Defendant, the government makes similar arguments about whether this purported omission could have been raised with his original suppression motion and the materiality of such information. The Court is persuaded for similar reasons. Again, even setting aside the procedural argument that Defendant had this information at the time of his original suppression motion, the warrant application supports probable cause because *what* the close family member said about Defendant is more important to the foundation for probable cause than *who* the close family member is, his/her relationship with Defendant, and his/her motives for making statements to law enforcement. Here, the identity of the close family member is even less important to the probable cause determination because key parts of the close family member's statements were corroborated by law enforcement investigation. *See* Exhibit A to ECF No. 38 at ¶¶ 20–22. Defendant ignores this corroboration and argues that the identity of the close family member is important because, without it, the magistrate judge was not provided with proper context nor with "any hint that [the close family member] had any reason to lie." ECF No. 60 at 3. But that's not accurate. The affidavit explicitly states that the close family member informed law enforcement that Defendant threatened to kill him/her "multiple times" and that, at least once, Defendant threatened to kill the close family member during a phone call. *See* Exhibit A to ECF No. 38 ¶ 16. Although the magistrate judge did not have information about "a heated battle for custody," he did have information about the multiple death threats Defendant made to the close family member, which is, at the very least, an equivalent "hint" that the close family member may have had a motive to lie.

Taken together, at the time of review, the magistrate judge had all the context Defendant now argues was necessary. Accordingly, the Court is satisfied that "the 'totality of the

circumstances' afforded the magistrate [judge] 'a substantial basis' for making the requisite probable cause determination." *Clark*, 638 F.3d at 93.  Stated otherwise, even if the application included that the close family member who had reported Defendant's ideological radicalization was his wife "with whom he was in a heated battle for custody of their children, and had a motive to lie to get him in trouble," ECF No. 60 at 3, when presented with the other information in the warrant application, "a totality of circumstances [would] indicate[] a 'fair probability that contraband or evidence of a crime will be found'" in the Defendant's phone and iCloud accounts that were used to direct the transmission of money at issue. *See Lauria*, 70 F.4th at 128 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Third, Defendant argues that reconsideration is warranted because the government omitted that Money Sender was unable to identify Defendant in photographs on two separate occasions. *See* ECF No. 60 at 3–4.  This is the only one that relies on information that was unavailable to him at the time of his original suppression motion, but it nevertheless fails because even if the warrant application had included Money Sender's apparent inability to identify the Defendant in photographs, there is still a substantial basis for the magistrate judge's determination that probable cause existed.  Specifically, other provisions of the warrant affidavit make clear that Money Sender's ability to identify Defendant from photographs is immaterial because text communications and financial records corroborate that Defendant directed Money Sender to send money to individuals in Türkiye, including CC-1 and CC-2. *See* Exhibit A to ECF No. 38 ¶¶ 10–14, 21–22.  Indeed, as the government has correctly identified twice now, "none of the critical information received from the Money Sender relies on his credibility at all because it is established by text communications and financial records." ECF No. 64 at 18; ECF No. 36 at 74.  In fact, no part of the warrant depends on Money Sender's ability to identify

8

Defendant in a photo array; other portions of the warrant—*e.g.*, information about what Defendant said to Money Sender, how Defendant communicated with Money Sender, and where such information is stored—are independently sufficient to establish "a fair probability" that probable cause existed with respect to the phone Defendant used to contact Money Sender. *See Gates*, 462 U.S. at 238. Therefore, although Defendant offers new facts here, the information he provides does not "alter the conclusion reached by the [C]ourt." *See Full Play Grp.*, 2022 WL 523459, at *2.

In the March 23, 2026, Order, the Court concluded that Defendant was not entitled to a *Franks* hearing because the affidavit supporting the warrant supported probable cause. *See* ECF No. 52 at 10–11; *see also Franks*, 438 U.S. at 154 (no hearing required "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause"). For the reasons stated, Defendant fails to present facts, new or otherwise, that "might reasonably be expected to alter the conclusion reached by the court." *See Full Play Grp.*, 2022 WL 523459, at *2. Accordingly, his *Franks* Motion is denied.

## II.       The *Ullah* Motion

In his second motion, Defendant moves for reconsideration of his motion to dismiss Count I of the Indictment in light of the Second Circuit's recent decision in *United States v. Ullah*, 173 F.4th 399 (2d Cir. 2026). *See* ECF No. 60 at 1. Specifically, he moves for reconsideration because, in his view, "the indictment doesn't allege that Mr. Manuchekhri provided any support under ISIS's direction or control, which *Ullah* makes clear is an essential element of the offense." *Id.* at 5. The government argues that "*Ullah* said no such thing." ECF

9

No. 64 at 25. And that "*Ullah*'s ruling on the sufficiency of the evidence has no effect here in a pretrial motion to dismiss an indictment count." *Id.*

Again, the Court agrees. In *Ullah* the Circuit considered a Rule 29 challenge to the sufficiency of the evidence, but here, Defendant moves for reconsideration of his Rule 12 challenge to whether the Indictment alleges the necessary elements. *Compare Ullah*, 173 F.4th at 413 (resolving "[the] narrow legal question" of "[w]hether the evidence permitted the jury to conclude that, by committing a 'lone-wolf' terrorist attack, [d]efendant also provided 'material support or resources' to ISIS), *with* ECF No. 60 at 5 (renewing motion to dismiss for failure to properly allege that Defendant provided material support to a foreign terrorist organization). By citing a case concerning an entirely different challenge in an entirely different procedural posture than his motion to dismiss, Defendant fails to identify "an intervening change of controlling law," and his motion fails. *See Full Play Grp.*, 2022 WL 523459, at *2. If his inability to point to a change in controlling law were not enough to doom his motion (it is), it would still fail because his argument that "nothing about the government's allegations suggest that there is any evidence that [he] provided any material support under ISIS's direction or control," ECF No. 60 at 5, is clearly his second attempt at making "an evidentiary challenge in a pleadings-focused motion," ECF No. 64-1 at 11:23–24. The Court already made clear that "he does not have such an opportunity at this juncture" in its original Order, *id.* at 11:23–12:3, it is clear that he does not have that opportunity now, *see Full Play Grp.*, 2022 WL 523459, at *2 ("A motion for reconsideration 'is not a vehicle for relitigating old issues . . . or otherwise taking a second bite at the apple.'"). Therefore, Defendant's *Ullah* Motion is denied.

### III.    The Non-Delegation Motion

"To preserve the 'integrity and maintenance of the system of government ordained by the Constitution,' the non-delegation doctrine establishes that 'Congress generally cannot delegate its legislative power to another Branch.'"  *United States v. Erskine*, 717 F.3d 131, 138 (2d Cir. 2013) (quoting *Mistretta v. United States*, 488 U.S. 361, 371–72 (1989)).  Of course, "Congress simply cannot do its job absent an ability to delegate power under broad general directives," so delegation is permitted as long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform."  *Mistretta*, 488 U.S. at 372; *see also United States v. Henry*, 888 F.3d 589, 596 (2d Cir. 2018) (noting such delegation is permitted "even where violations of such regulations result in serious criminal penalties").

In his third motion, Defendant argues that the provision of Section 2339B authorizing the Secretary of State to designate foreign terrorist organizations ("FTOs") is an unconstitutional delegation of criminal lawmaking power.  *See generally* ECF No. 61.  Specifically, he argues that this delegation is unconstitutional "under an originalist understanding of the nondelegation doctrine because [Section 2339B] transfers to the Secretary of State what can only be described as legislative authority," and "because it fails to provide a sufficiently intelligible principle to cabin and direct the Secretary of State's exercise of the delegated powers."  *Id.* at 4.

As a preliminary matter, Defendant's motion is untimely.  "[A] defect in the indictment or information" must "be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."  Fed. R. Crim. P. 12(b)(3).  "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely.  But a court may consider the defense, objection, or request if the party

11

shows good cause." Fed. R. Crim. P. 12(c)(3).  Defendant concedes the untimeliness of his Non-Delegation Motion, *see* ECF No. 61 at 1 (noting "counsel realized that they were remiss in failing to bring this motion to the Court's attention initially"), but nevertheless asks the Court to consider the motion for good cause, *id.*  Despite this request, he provides no such cause, and, therefore, the Court need not consider the motion.  *See United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) ("A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause.'") (collecting cases).

But even if the Court were to consider it, the motion would fail, given that the Court is persuaded by the holding from other decisions in this District have found that the mechanism for designating an FTO is constitutionally permissible.  *See, e.g.*, *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 172 (E.D.N.Y. 2008) (holding the delegation permissible because "Congress has established detailed procedures to designate organizations as FTOs[,] it retains the power to revoke such a designation when made[, and] the organization has the ability to challenge the designation"); *United States v. Augustine*, No. 18-cr-393, 2020 WL 9199944, at *11 (E.D.N.Y. Sept. 8, 2020), *report and recommendation adopted*, 2021 WL 1381060 (E.D.N.Y. Apr. 13, 2021) (finding the "detailed statutory guidance . . . coupled with procedural mechanisms to ensure Congressional oversight over the delegation process, . . . is sufficiently constrained and that section 2339B(g)(6) states an intelligible principle").  Defendant's Non-Delegation Motion is denied.

## IV.    The Discovery Motion

Finally, in his Discovery Motion, Defendant argues that the Court should order the government to produce:  (1) court documents for CC-1 and CC-2; and (2) additional information about Money Sender.  *See generally* ECF No. 62.  Specifically, with respect to documents concerning CC-1 and CC-2, Defendant argues that the Court should order the government to request documents from foreign authorities regarding CC-1 and CC-2 that are not in its possession, custody, or control pursuant to the Mutual Legal Assistance Treaty ("MLAT") between the United States and Türkiye.  *See* ECF No. 62 at 2–3.  With respect to additional information about Money Sender, he argues that the Court should compel the government to provide "information about any charges that were dropped or not filed due to [Money Sender's] assistance with the government and details of [Money Sender's] compensation" for such assistance.  *Id.* at 3.

The government asserts that, even though it has no obligation to request documents pursuant to the MLAT, it already has "made a request to Turkish authorities through the MLAT process and has not yet received any response."  ECF No. 64 at 32–33.  It also asserts that "[i]f and when the government receives any additional discoverable material, [it] will promptly produce it to the defendant."  ECF No. 64 at 33.  As to the information about Money Sender, the government asserts that information about charges dropped or not filed due to Money Sender's assistance do not exist and that it intends to provide information about Money Sender's compensation for such assistance "at the appropriate time, pursuant to its obligations to disclose impeachment material under *Giglio v. United States*, 405 U.S. 150 (1972)," if it "anticipates calling the Money Sender to testify at trial."  *Id.*

13

Of course, "[t]his Court cannot order the production of *Brady* material that does not exist," and "impeachment material need not be produced prior to trial." *United States v. Abakporo*, 959 F. Supp. 2d 382, 396 (S.D.N.Y. 2013) (denying motion to compel when the government represented it would produce *Brady* material in a timely manner "if such material is identified or discovered," and produce Jencks Act and *Giglio* material, if any, "in a timely manner prior to trial"). Given the government's representations, ECF No. 64 at 33, Defendant's Discovery Motion is, at best, premature. Practically, it is moot and, therefore, denied. *See, e.g.*, *United States v. Lettieri*, No. 21-cr-0020, 2023 WL 3741480, at *14 (W.D.N.Y. Feb. 27, 2023), *report and recommendation adopted*, 2023 WL 3736866 (W.D.N.Y. May 30, 2023) (denying "defendant's motion to compel the production of *Brady*/*Giglio* material" as moot "[g]iven the Government's representations and agreement to produce [such] evidence"); *United States v. Fallas*, No. 09-cr-342, 2010 WL 3468605, at *2 (S.D.N.Y. Aug. 19, 2010) (denying motion to compel as moot because the government "acknowledged its obligation to provide *Brady* material" and stated it would produce "any *Brady* material promptly upon learning of its existence"); *United States v. Conteh*, No. 06-cr-116, 2006 WL 3103329, at *3 (S.D.N.Y. Nov. 1, 2006) (finding defendant's motion to compel moot when "the Government's representations regarding its intended production of *Brady*, *Giglio* and Jencks Act materials were acceptable").

## CONCLUSION

For these reasons, Defendant's motions: (1) for reconsideration of the Court's denial of his suppression motion under *Franks v. Delaware*, 438 U.S. 154 (1978); (2) for reconsideration of the Court's February 17, 2026, Order denying his motion to dismiss the Indictment for failure to allege a Section 2339B violation in light of the Second Circuit's decision in *United States v.*

14

*Ullah*, 173 F.4th 399 (2d Cir. 2026); (3)  to dismiss the Indictment under the non-delegation

doctrine; and (4) to compel discovery and *Brady* material, *see* ECF Nos. 60–62, are DENIED.

The parties shall proceed to trial on all charges according to the schedule set at the

February 17, 2026, status conference.  *See* Feb. 17, 2026, Minute Order.

SO ORDERED.

/s/ *Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
August 3, 2026

15