**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

LRO/ADR
F. #2023R00939

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 12, 2026

By ECF

The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Mansuri Manuchekhri
Criminal Docket No. 25-88 (HG)

Dear Judge Gonzalez:

The government respectfully writes pursuant to the Court's September 24, 2026 rulings to provide additional notice of the anticipated expert testimony of Dr. Lorenzo Vidino.

*First*, attached hereto as Exhibit A is a glossary of terms Dr. Vidino may reference during his testimony along with corresponding definitions. The government reserves the right to amend and supplement this list as it prepares for trial.

*Second*, the government expects that Dr. Vidino will reference and describe the following ISIS attacks during his testimony: (i) the July 2016 truck attack in Nice, France during Bastille Day celebrations; (ii) the October 2017 West Side Highway truck attack in Manhattan; (iii) the April 2019 Easter Sunday bombings in Sri Lanka; (iv) the August 2021 suicide bombing at the airport in Kabul, Afghanistan; and (v) the January 2024 shooting at the Santa Maria Church in Istanbul, Türkiye. The government reserves the right to amend this list as necessary in advance of trial.

*Third*, with respect to the Santa Maria Church attack in Istanbul, the government anticipates that Dr. Vidino will describe the attack, which was widely reported, and ISIS's claim of responsibility for it. Among other things, Dr. Vidino will testify that multiple individuals were convicted in Türkiye for their involvement in the attack, including CC-2 and others. Though the defendant does not dispute the accuracy of that testimony—or provide any basis to question its veracity—the defendant nevertheless argues that Dr. Vidino should not be permitted to discuss the Santa Maria Church attack because he learned about it not from firsthand knowledge but rather from his extensive research on the topic.

The Court should permit Dr. Vidino's proposed testimony about the attack, including CC-2's widely reported conviction. As the government previously described in its

opposition to the defendant's motions *in limine,* ECF No. 78, terrorism experts almost never testify based on firsthand knowledge of terrorist attacks, but rather routinely base their testimony on public reporting, scholarly writing and similar sources. *See United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005) (holding that district court did not abuse its discretion in allowing expert testimony based on, among other things, books, press releases, and newspaper articles and quoting district court's opinion that "[g]iven the secretive nature of terrorists, the [c]ourt can think of few other materials that experts in the field of terrorism would rely upon"); *United States v. Dukagjini*, 326 F.3d 45, 57-58 (2d Cir. 2003) (citing *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993) ("[E]xpert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions.)); *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 332 (E.D.N.Y. 2013); *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 126 (D. Conn. 2008). In *Linde,* Judge Gershon permitted expert testimony on a very similar topic—the attribution of specific terror attacks, based upon "videos, recordings, or published writings of terrorists; terrorist organizations' official websites; newspaper articles, television news reports, and reputable books and magazines," and concluded that "[a]ny challenges to [the expert's] methodology are more appropriately raised on cross-examination." *Id.* (citing *Damrah*, 412 F.3d at 625, and *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 704 (7th Cir. 2008) ("[E]xperts don't characteristically base their expert judgments on legally admissible evidence; the rules of evidence are not intended for the guidance of experts.")).

Moreover, contrary to the defendant's arguments, the information upon which Dr. Vidino will rely is not by any means *per se* inadmissible. Courts routinely hold that newspaper articles are admissible at trial when, for example, they meet the requirements of the residual exception to the rule against hearsay, codified at Fed. R. Evid. 807. *See, e.g.*, *Kellner v. City of New York*, 811 F. Supp. 3d 325, 362-64 (E.D.N.Y. 2025) (citing *Mandal v. City of New York*, No. 02-CV-1234 (WHP), 2006 WL 3405005, at *2 (S.D.N.Y. Nov. 26, 2006)).

Under the residual exception, a statement is excluded from the rule against hearsay under the following conditions:

> (1) The statement is supported by sufficient guarantees of trustworthiness (in light of the totality of circumstances under which it was made and evidence, if any, corroborating the statement); and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

*Kellner*, 811 F. Supp. 3d at 362 (quoting Fed. R. Evid 807(a)); *see also Batista-Reyes v. Paul*, 188 F.4th 141, 156 (2d Cir. 2026) (describing two requirements of residual exception). "[T]he trial court has broad discretion in assessing the probity and trustworthiness of evidence." *Kellner*, 811 F. Supp. 3d at 362 (quoting *In re Columbia Sec. Litig.*, 155 F.R.D. 466, 475 (S.D.N.Y. 1994)).

Here, the limited and uncontested fact of CC-2's conviction is admissible because it comes from multiple credible sources with significant indicia of reliability. Among other things, Dr. Vidino will rely on scores of articles from Turkish and Western news outlets that consistently describe the attack and the ensuing prosecution by Turkish authorities, including multiple sources

that identify CC-2 by name, such as: the Cumhuriyet newspaper; a long-running investigative outlet known as T24; the Anadolu news agency; and multiple articles by respected journalist Abdullah Bozkurt, all described further below.[1]

- Cumhuriyet is one of Türkiye's oldest newspapers and is known for its exemplary independent reporting. It was awarded the Press Freedom Prize in 2015 by the internationally respected non-profit media watchdog Reporters Without Borders (known by its French acronym, "RSF"). The British newspaper the Guardian described Cumhuriyet as Türkiye's "newspaper of record," *see* https://www.theguardian.com/world/2017/jul/24/turkish-activists-decry-attack-press-freedom-journalists-stand-trial, and a court in this Circuit has described Cumhuriyet as a "well-known newspaper." *Republic of Turkey v. Christie's, Inc*., No. 17-CV-3086 (AJN), 2021 WL 4060357, at *4 (S.D.N.Y. Sept. 7, 2021), *aff'd*, 62 F.4th 64 (2d Cir. 2023) (describing a particular Cumhuriyet writer as a "prominent Turkish reporter considered to be one of the leading journalists on Turkish cultural heritage issues").

- T24 is an independent online news website based in Istanbul. T24 has been described by the Electronic Frontier Foundation, a respected American-based nonprofit group, as "Turkey's longest running independent digital news organization." *See* https://www.eff.org/deeplinks/2026/10/turkish-crackdown-lgbtq-organizations-threatens-freedom-expression-and-association.

- Anadolu Agency is a state-run Turkish news agency that operates in over 100 countries and provides content to other established news agencies like Reuters. It has been described by the D-8 Organization for Economic Cooperation, an intergovernmental group that includes Türkiye and other member nations, as "Turkey's premier news agency." *See* https://developing8.org/news/anadolu-agency-becomes-global-media-partner-of-the-d-8/.

- Abdullah Bozkurt is a well-known journalist who left Türkiye under political pressure and relocated to Sweden, where he and other exiled Turkish journalists founded the Stockholm Center for Freedom ("SCF"). SCF is a non-profit advocacy group whose research and reports have been cited by the United Nations Human Rights Council, the Council of Europe, and other international governmental entities.

---

[1] *See, e.g.,* Fahrettin Öztürk, *Trial Begins in Santa Maria Church Armed Attack Case*, Cumhuriyet (Jan. 6, 2025) (describing allegations against CC-2 and quoting his and other witnesses' trial testimony) (headline translated from Turkish); Cengiz Anıl Bölükbaş, *Verdict in the armed attack case on Santa Maria Church: Three defendants received two life sentences with aggravated circumstances and 143 years in prison*, T24 (Feb. 6, 2026) (reporting CC-2's 101-year sentence) (headline translated from Turkish); Büşra Alakoyun, *The sentences handed down in the case concerning the attack at Santa Maria Church were found to be lawful,* Anadolu Agency (June 27, 2026) (reporting appellate court decision upholding CC-2's sentence and other defendants' sentences) (headline translated from Turkish); Abdullah Bozkurt, *ISIS-K exploits Turkey for logistics, fighter transfers and terror attacks*, Nordic Monitor (February 12, 2024) (describing arrest of CC-2).

Not only does each of these sources stand on its own as a reliable and credible publication, but notably, the sources corroborate one another, as the information on which Dr. Vidino intends to rely is consistent across a number of news sources—including both state-run and independent reporters and news agencies. Additional reporting naming CC-2 appeared in the business publication Ekonomim, the news channel Halk TV and the English-language outlet Türkiye Today.

The Court should exercise its discretion to allow Dr. Vidino to discuss CC-2's conviction under the residual hearsay exception. *First*, as discussed above, the limited information on this topic that Dr. Vidino would discuss is corroborated by multiple reliable sources, and the government is not aware of any dispute as to the key facts that have been reported (nor does the defendant assert that they are incorrect or proffer any reason to question them). Notably, a number of the sources outlined above specifically reference (and/or provide direct quotations from) the Turkish indictment and other court records. Moreover, the government expects to offer independent evidence at trial that corroborates CC-2's location in Istanbul prior to the attack, including through chat messages and remittance records demonstrating that CC-2 received money transmitted from Brooklyn, New York to Istanbul. It will also offer evidence of CC-2's association with CC-1, whose ties to ISIS will be established through his chats with the defendant, his Instagram account, and foreign government records, among other things. Thus, the information on which Dr. Vidino would rely has "sufficient guarantees of trustworthiness." *See Kellner*, 811 F. Supp. 3d at 362-64 (E.D.N.Y. 2025) (finding *New Yorker* article admissible due to the magazine's reputation and the reputation of the article's author, coupled with corroborating information); *In re Columbia Sec. Litig.*, 155 F.R.D. at 475 (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 643-44 (9th Cir. 1991) (holding that the residual exception's "circumstantial guarantees of trustworthiness" requirement was met when three independent newspapers all reported the same thing)); *Hicks v. Charles Pfizer & Co. Inc.,* 466 F. Supp. 2d 799, 809 (E.D. Tex. 2005) ("The risk of mistake or dishonesty is reduced given the multiple publications by different sources.") (citing *Larez*, 946 F.2d at 643-44)).[2] And notably, here, the government does not seek

[2] In *Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-702 (DLI), 2017 WL 4481126, at *3 (E.D.N.Y. Sept. 30, 2017) (discussed in the government's *in limine* opposition, ECF No. 78 at 19), in which the district court declined to permit reliance on news articles to prove a highly contested fact (and a necessary element of the cause of action), the court relied on the Second Circuit's decision in *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). There, the Second Circuit evaluated the increasing prevalence of law enforcement officers as expert witnesses, and determined that, there, a proffered gang expert supplied testimony about matters "outside the scope of any conceivable expertise," and improperly "summarized the results of the Task Force investigation on Long Island" by concluding that "MS-13 had committed between eighteen and twenty-three murders since 2000." *Id.* at 195. The court in *Mejia* cautioned against permitting agent-experts—there, "one of the Government's own investigators"—to supply "pronouncements on elements of the charged offense" that "serve as shortcuts to proving guilt." *Id.* at 190-91. Here, the issues involving agent-experts implicated in *Mejia* are simply not present; Dr. Vidino was not involved in investigating the case and is not a member of law enforcement. Nor does the proposed testimony here, which is not reasonably disputed, relate to ultimate issues of the defendant's involvement in the charged offenses, or singularly relay information "the Government must prove to secure a guilty verdict." *Id.* Indeed, here, the government need only prove that the defendant

to offer any of the underlying articles themselves, but rather seeks only to allow Dr. Vidino to rely on this reliable public reporting—a common and permissible basis for expert testimony. To the extent the defendant seeks to probe the foundation of Dr. Vidino's knowledge, he may of course do so on cross-examination.

*Second*, there is no better evidence that is reasonably obtainable by the government. Despite diligent efforts over the course of many months, the government has not obtained the relevant Turkish court records, which are not available to the public in Türkiye. As the government previously reported to the Court, the government made a request to Turkish authorities under the Mutual Legal Assistance Treaty ("MLAT") between the United States and Türkiye, but has yet to receive a response despite multiple attempts at outreach. Nor can the government compel foreign reporters to testify in a U.S. trial. Thus, the residual exception's requirements have been met and the Court can and should, within its broad discretion, apply it here.

For the foregoing reasons, the government respectfully submits that the Court should allow Dr. Vidino to discuss CC-2's conviction because the information is derived from the types of materials upon which experts in Dr. Vidino's field regularly rely, and because it is independently admissible under the residual exception to the rule against hearsay.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Lindsey R. Oken
Andrew D. Reich
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (HG) (by ECF)
Counsel of record (by ECF)

---

agreed to provide material support to ISIS (whether or not he actually did so), and Dr. Vidino's proffered testimony covers the same type of information—well within the scope of his expertise—offered in other terrorism trials and by other terrorism experts. Additionally, in *Mejia*, the panel found that the agent-expert's testimony violated the defendant's Six Amendment confrontation clause rights by communicating "out-of-court testimonial statements of cooperating witnesses and confidential informants"—an issue entirely not present here. *Id.* at 198.